UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────────────────────

MICHAEL T. DOLAN,

         Plaintiff,                      **MEMORANDUM OF DECISION AND ORDER**

  -v.-                                         03-CV-3285 (DRH)(MLO)

FAIRBANKS CAPITAL CORP., a Utah
corporation, FAIRBANKS CAPITAL
HOLDING CORPORATION, a Delaware
corporation, THOMAS D. BASMAJIAN
and his officers, employees, and agents,
[and] PMI MORTGAGE INSURANCE
COMPANY, Walnut Creek, CA.,

         Defendants.
─────────────────────────────────────────────

**Appearances:**

**For the Plaintiff:**
**MICHAEL T. DOLAN, PRO SE**
21 Kent Place
Smithtown, NY 11787

**For the Defendants Fairbanks Capital Corp., Fairbanks Capital Holding Corp., and Thomas D. Basmajian:**
**Ted E. May**
Sheldon May & Associates, P.C.
255 Merrick Road
Rockville Ventre, New York 11570

**For the Defendant PMI Mortgage Insurance Company:**
**Joshua R. Schwartz**
O'Melveny & Myers LLP
Times Square Towers
7 Times Square
New York, New York 10036

**HURLEY, District Judge:**

        Presently before the Court are the motions by defendants PMI Mortgage

Insurance Company ("PMI"), Fairbanks Capital Corp. ("FCC"), Fairbanks Capital Holding

Corp., ("FCHC") and Thomas D. Basmajian ("Basmajian") (collectively, "Defendants") to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motions of FCHC and Basmajian are granted in their entirety; the motions by PMI and FCC are granted in part and denied in part.

## BACKGROUND

On July 7, 2003, Plaintiff Michael T. Dolan ("Plaintiff") and former plaintiff Donna M. Dolan initiated the instant action pursuant to the "USA Patriot Act of 2001." By Memorandum of Decision and Order dated April 23, 2004, the Court dismissed the Complaint without prejudice and gave Plaintiff permission to file an Amended Complaint within thirty days. The Court noted that "[f]ailure to address the pleading concerns enunciated in this order may result in dismissal with prejudice." (Apr. 23, 2004 Mem. of Decision and Order at 2.)

On May 24, 2004, Plaintiff filed an Amended Complaint. The Amended Complaint asserts eleven causes of action against all Defendants. As best the Court can glean from its liberal interpretation, the Amended Complaint alleges that in November 2000, FCC acquired the right to service Plaintiff's residential mortgage, and continued to do so until July 2003. (Am. Compl. at 6.). The Amended Complaint further alleges that FCC committed various acts of fraud with regard to "consumers" in general, to wit, FCC received consumers' payments that were made on time, but failed to post them until after the payment deadline had expired, and then imposed late fees and other charges as a result; FCC charged consumers homeowners' insurance even though the borrowers already had insurance in place; FCC "force placed" insurance coverage on consumers by intentionally lapsing old coverage so that PMI could issue new policies; FCC charged numerous fees to consumers whom it deemed were in default that

were not authorized by the mortgage contract or were based on services that FCC never performed; and FCC engaged in dishonest and abusive tactics to collect debts and in reporting consumer payment information to credit bureaus that it knew was inaccurate. (*Id.* at 4-8.) Interspersed throughout these general allegations are claims that FCC's acts also affected Plaintiff, although no specific facts on any particular instances when this may have occurred are offered. Indeed, the *only* specific allegation as to Plaintiff is the date FCC serviced his mortgage. (*Id.* at 6.) Plaintiff asserts claims under the Patriot Act, the Clayton and Sherman Acts, the Fair Credit Reporting Act (the "FCRA"), the Federal Trade Commission Act (the "FTCA"), the Fair Debt Collection Practices Act (the "FDCPA"), the Real Estate Settlement and Procedures Act (the "RESPA"), the RICO statutes, and civil rights laws.

## DISCUSSION

The court may not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *King v. Simpson*¸ 189 F.3d 284, 286 (2d Cir. 1999); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996). The Court must accept all factual allegations in the proposed complaint as true and draw all reasonable inferences in favor of the plaintiff. *King*, 189 F.3d at 287; *Jaghory v. New York State Dep't. of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). The Court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank*, 199 F.3d 99, 107 (2d Cir. 1999); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). Finally, when the plaintiff proceeds pro se, as in this case, the Court is obliged to construe his pleadings liberally. *See*

*McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

## I.  *Plaintiff Timely Served the Amended Complaint*

Defendants contend that the Amended Complaint should be dismissed because it was not served within thirty days pursuant to the Court's April 23, 2004 Memorandum of Decision and Order. That decision, however, gave Plaintiff thirty days to *file* an amended pleading. Pursuant to Federal Rule of Civil Procedure 4(m), Plaintiff then had 120 days to serve the Amended Complaint, which he did. Accordingly, to the extent Defendants move to dismiss on this ground, their motion is dismissed.[1]

## II.  *There is No Private Right of Action Under the FTCA*

Plaintiff's claims under the FTCA, 15 U.S.C. §§ 45 et seq., fail as a matter of law because a private person cannot sue for alleged violations of the Act. *See Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974) ("[T]he provisions of the Federal Trade Commission Act may be enforced only by the Federal Trade Commission. Nowhere does the Act bestow upon either competitors or consumers standing to enforce its provisions." ); *see also Federal Trade Comm'n v. Owens-Corning Fiberglas Corp.*, 853 F.2d 458, 464 (6th Cir. 1998) ("Congress has clearly limited the invocation of jurisdiction under the FTC Act to the Commission itself."). Accordingly, Counts I through IV, which are based solely upon the FTCA, are dismissed in their entirety. Further, to the extent Counts V through X assert claims pursuant to the FTCA, those portions of these counts are dismissed as well.

---

[1] Although not raised by the parties, the Court notes that Plaintiff's filing of the Amended Complaint on May 24, 2004 was one day late under the Court's April 23, 2004 Memorandum of Decision and Order. Given Plaintiff's pro se status, however, the Court will deem Plaintiff's filing timely and proceed to a discussion on the merits.

-4-

### III. *Plaintiff's Claims Under the FDCPA*

Counts V through VII assert claims for alleged violations of the FDCPA, 15 U.S.C. §§ 1692, et seq. Essentially, Plaintiff alleges that FCC failed to provide him with timely or clear information about the timing and amount of payment owed; falsely represented the character, amount or legal status of his debt; communicated or threatened to communicate false credit information; and collected fees unauthorized by his agreement. (*See* Am. Compl. at 10-12; Pl.'s Additional Answer in Opp'n to Mot. to Dismiss at 5 ¶ 14, 14-17.)

The FDCPA establishes a general prohibition against the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. 1692e. By its terms, the FDCPA applies only to debt collectors. *See id.* § 1692b ("Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall . . . ."). A debt collector is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). The FDCPA expressly excludes from this definition creditors seeking to collect their own debts. *Id.* § 1692a(6)(A). Moreover, an assignee of a debt is only treated as a debt collector if the debt sought to be collected was in default at the time it was obtained by such person. *Id.* 1692a(6)(F)(iii).

The threshold issue for the Court is whether the FDCPA applies to the Defendants. As an initial matter, the Court notes that there are no specific allegations directed against PMI or FCHC with regard to Plaintiff's claims under the FDCPA. In fact, PMI, which is

not included in Plaintiff's listing of "the Defendants" in his pleading, is merely identified as FCC's parent company. (Am. Compl. at 7). Similarly, Plaintiff alleges that FCC is a wholly owned subsidiary of FCHC.[2] The Second Circuit has held that "[a]s a general matter . . . a corporate relationship alone is not sufficient to bind a parent corporation for the actions of its subsidiary." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996) (citation and internal quotation marks omitted). Because there are no allegations that PMI or FCHC acted as a debt collector within the meaning of the FDCPA, counts V through VII of the Amended Complaint are dismissed as to both defendants.

Similarly, the Amended Complaint alleges that Basmajian was the CEO and Chairman of the Board of FCC at all relevant times to the pleading. (Am. Compl. at 3 ¶ 4.) Although officers and employees of the debt collecting agency may be jointly and severally liable with the agency where they have affirmatively acted, *see Teng v. Metropolitan Retail Recovery Inc.*, 851 F. Supp. 61, 67 (E.D.N.Y. 1994), there are absolutely no factual allegations as to Basmajian's involvement in any of Plaintiff's FDCPA claims. Accordingly, counts V through VII of the Amended Complaint are dismissed as to Basmajian.

With regard to FCC, the Amended Complaint alleges that FCC acquired Plaintiff's loan in November 2000. (Am. Compl. at 6.) The Amended Complaint lacks any factual allegations, however, that the loan was in default when acquired by FCC or any other facts that could establish that FCC was a debt collector subject to the FDCPA. 15 U.S.C.

---

[2] Although the Court is limited to the pleading for purposes of the instant motion, because Plaintiff's allegation's of corporate structure are inconsistent, the Court notes that PMI has explained that FCC is a wholly owned subsidiary of FCHC and PMI is a shareholder in FCHC. (PMI's Mem. in Supp. at 2.) In any event, noting the correct corporate structure does not change the Court's analysis.

1692a(6)(F)(iii). This defect, however, could be cured upon amendment. *See Platsky v. CIA*, 953 F.2d 26, 29 (2d Cir. 1991) (stating that pro se plaintiff should be granted leave to amend pleadings when it "is not beyond doubt that the plaintiff can prove no set of facts supporting his claim") (citation and internal quotation marks omitted). In that regard, the Court notes that supplemental information provided by FCC appears to indicate that the loan was in fact in default when FCC acquired it. (*See* Aff. of Ted Eric May, dated Jan. 26, 2005, Ex. 1; Aff. of Ted Eric May, dated Mar. 15, 2005, ¶¶ 4-5.) Notwithstanding FCC's status as a debt collector, however, FCC further contends that Plaintiff's FDCPA claims must be dismissed in light of Plaintiff's vague and conclusory allegations. In this regard, FCC claims that there are no allegations of any specific prescribed communication to Plaintiff from any of the Defendants.

The Amended Complaint asserts various violations under the FDCPA, which are slightly further particularized in Plaintiff's opposition papers to the instant motions. Most of Plaintiff's allegations are mere recitations of the relevant portions of the statute, followed by general claims of FCC's violations thereof; however, if pleaded correctly, these allegations might state a legally cognizable claim. Although the Court has grave concerns that Plaintiff is merely attempting to jump on the FCC settlement bandwagon[3] and may not necessarily have been the subject of any wrongdoing, given the early stage in the litigation, and the Court's obligation to construe Plaintiff's claims liberally, the Court grants Plaintiff leave to amend with

---

[3] In opposition to the motions, Plaintiff has submitted a newspaper article and a statement by the Federal Trade Commission (the "FTC"), discussing a settlement between the FTC and the U.S. Department of Housing and Urban Development with FCC and its parent company, PMI Group Inc., involving the identical claims asserted by Plaintiff. (Pl.'s Answer in Opp'n Ex. I; Pl.'s Additional Answer in Opp'n, Ex. IV, No. 16.)

regard to his **FDCPA claims against FCC only**.  Plaintiff shall file his Second Amended Complaint within thirty days of the date of this Order.  The pleading must set out, with particularity and specificity, the actual harms he suffered as a result of FCC's clearly defined acts.  In other words, Plaintiff shall clearly delineate any actions, communications, etc., taken by FCC, whether done orally or by letter, and attach any supporting documentation.  Finally, Plaintiff is further put on notice that failure to address the pleading concerns enunciated in this order may result in dismissal of his amended pleading with prejudice.

## IV.    *Plaintiff's Claims Under FCRA*

Counts VIII through X assert violations of section 1681s-2(a) of the FCRA, alleging that Defendants furnished inaccurate information "relating to consumers to a consumer reporting agency" and failed to notify the agency upon determination that the information was inaccurate.  (Am. Compl. ¶¶ 28, 33.)  Plaintiff further alleges that "[i]n numerous instances in which consumers (DOLAN) have informed defendants that they dispute information furnished by defendants to a consumer reporting agency, defendants have not reported the disputes to any or all of the consumer reporting agencies to which they furnished or have furnished the information."  (*Id.* ¶ 37.)

Assuming *arguendo* that Plaintiff had sufficiently pled a violation of section 1681s-2(a), to wit, that Defendants furnished incorrect information regarding Plaintiff to a consumer reporting agency, that Defendants failed to correct and update the information, and that Defendants failed to notify the agency that the information is disputed by Plaintiff, Plaintiff's claims would still fail as a matter of law as there is no private cause of action under section 1681s-2(a).  *See Kane v. Guaranty Residential Lending, Inc.*, No. 04-CV-4847, 2005 WL

1153623, at *4 (E.D.N.Y. May 16, 2005); *Trikas v. Universal Card Servs. Corp*, 351 F. Supp. 2d 37, 44 (E.D.N.Y. 2005).  Rather, the FCRA limits the enforcement of this subsection to government agencies and officials.[4]  *Id.*

Further, to the extent Plaintiff's claims can be construed as asserting a claim pursuant to section 1681s-2(b), whereby furnishers of information – after receiving notice of a dispute from a consumer reporting agency – must review information provided by the consumer reporting agency, investigate, and report any inaccuracies to all consumer reporting agencies to which the furnishers provide information, Plaintiff's claim would still fail as there is no allegation that Plaintiff complied with the condition precedent imposed by the FCRA, to wit, notification of the dispute to a credit reporting agency. 15 U.S.C. 1681s-2(b)(1).  Accordingly, Counts VIII through X of the Amended Complaint are hereby dismissed.

## V. *Plaintiff's Claims Under RESPA*

Plaintiff's eleventh cause of action asserts violations of section 2605 of RESPA based upon Defendants' alleged failure to: (1) promptly post his mortgage payments; (2) apply his payments to principal, interest, escrow, and taxes in a timely fashion; and (3) timely investigate and respond to "consumers (DOLAN['s]) written requests for information about the servicing of his loan." (Am. Compl. at 12 ¶ 41.)  RESPA governs the rights and duties of mortgage servicers and borrowers with regard to federally related mortgage loans.  12 U.S.C. § 2605; *see also Louis Fink Realty Trust v. Harrison*, No. 03 Civ. 2642, 2003 WL 22595555, at *3

---

[4] While Plaintiff may not enforce the terms of 1681s-2(a) through a private cause of action, he can report violations to the FTC, which is authorized to enforce the terms of subsection(a) under the FCRA.  *See Kane*, 2005 WL 1153623, at *4.

(S.D.N.Y. Nov. 7, 2003) (same). Here, the Complaint is devoid of any allegations that either PMI or FCHC made any federally related loans to Plaintiff, serviced his loan with FCC, or collected any payments from him. Instead, Plaintiff merely relies on the corporate relatedness of these parties to FCC. As discussed above, however, a mere showing of corporate relatedness, without more, is insufficient to establish liability on the part of one corporation for conduct by a related corporation. *See De Jesus*, 87 F.3d at 69. Accordingly, Plaintiff's eleventh cause of action is dismissed as to PMI and FCHC.

Similarly, there are no allegations that Basmajian individually is a mortgage servicer under RESPA. His mere status as CEO of FCC is insufficient to hold him liable. Thus, Plaintiff's eleventh cause of action is dismissed as to Basmajian as well.

This leaves FCC, which admittedly was the servicer of Plaintiff's loan. RESPA was enacted to enable consumers to better understand the home purchase and settlement process and, where possible, to bring about a reduction in settlement costs. 12 U.S.C. § 2601. Section 2605(e) requires a covered mortgagor in receipt of a qualified written request from its borrower for information on the servicing of its loan to send a written response acknowledging receipt of the correspondence within twenty days unless the mortgagor acts in accordance with the borrower's request within that time period. *See id.* § 2605(e)(1)(A). Additionally, the mortgagor must, within sixty days, make the appropriate corrections in the borrower's account, or, after investigating, provide the borrower with a written response explaining why the account is correct or why the mortgagor cannot respond. *See id.* § 2605(e)(2).

Construing Plaintiff's allegations liberally, the Court finds that Plaintiff has sufficiently alleged a violation of section 2605 of RESPA against FCC, as Plaintiff has alleged

that FCC failed to respond to his written requests for information on his loan. Accordingly, FCC's motion to dismiss the eleventh cause of action is denied.

## VI. *Plaintiff's Remaining Claims*

Although not delineated as separate causes of action, Plaintiff asserts RICO, civil rights, and antitrust claims, as well as claims under the Patriot Act. The Court will address Plaintiff's claims in turn.

### A. *Plaintiff's RICO Claims*

Plaintiff alleges that Defendants "operate[] a racketeering enterprise using schemes to extort money and property from consumers such as [they] did to [Plaintiff.]" (Am. Compl. at 6.) According to the Amended Complaint, as part of this "enterprise," FCC engaged in a variety of improper mortgage servicing practices, including charging improper fees and interest, improperly foreclosing on people's homes, and "force placing" insurance on customers' accounts. (*Id.* at 6-8.)

To state a valid RICO claim, a plaintiff must allege: (i) a violation of 18 U.S.C. § 1962; (ii) an injury to business or property; and (iii) causation of the injury by the violation. *See Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir. 1996). In order to establish a violation of section 1962, a plaintiff must prove, inter alia, a "'pattern of racketeering activity.'" *Id.* (quoting 18 U.S.C. § 1962). "Racketeering activity includes the commission of specified state-law crimes, conduct indictable under various provisions within Title 18 of the United States Code, including mail and wire fraud, and certain other federal offenses." *Id.* In order to prove a pattern, a "plaintiff must plead at least two predicate acts and must show that the predicate acts are related and that they amount to, or pose a threat of,

continuing criminal activity." *GICC Capital Corp. v. Technology Fin. Group, Inc.*, 67 F.3d 463, 465 (2d Cir. 1995) (citation omitted).

To the extent Plaintiff bases his RICO claim on fraud, he fails to allege fraud with the degree of particularity required by Federal Rule of Civil Procedure 9(b). "In the RICO context, Rule 9(b) calls for the complaint to 'specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992) (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)). In the instant case, Plaintiff has not met this burden. Although Plaintiff's name appears throughout the Complaint, the only specific factual allegation related to him is that FCC acquired and began servicing his mortgage loan in November 2000. (*Id.* at 6.) "Rule 9(b) is not is not satisfied by a complaint in which defendants are clumped together in vague allegations." *Lesavoy v. Lane*, 304 F. Supp.2d 520, 530 (S.D.N.Y. 2004) (citations and internal quotation marks omitted). Accordingly, to the extent Plaintiff asserts RICO claims, his claims are dismissed. However, Plaintiff is hereby granted leave to amend with respect to his RICO claims, as well as any common law fraud claims. *De Jesus*, 87 F.3d at 71-72 ("[W]e have found it an abuse of discretion to dismiss allegations of fraud without granting a party leave to file an initial amendment of its complaint to comply with Rule 9(b)."). Although Plaintiff has already had once chance to amend his pleading, because his original Complaint did not assert claims for fraud, he has not previously had an opportunity to cure these deficiencies. Plaintiff shall file his Second Amended Complaint within thirty days of the date of this Order. The pleading must set out, with particularity and specificity as to each defendant, the

-12-

actual harms he suffered as a result of Defendants' clearly defined acts, in compliance with Rule 9(b) as set forth above.

### B.    *Antitrust Claims*

Plaintiff alleges that FCC engaged in a scheme with PMI to "knock out competition (monopolize) and control market-share for insurance purposes." (Am. Compl. at 5 ¶ 18.)  In this regard, Plaintiff alleges that FCC "would lapse coverage [and] not notify (DOLAN) consumers, creating the need for new coverage, that the parent company PMI would then provide" and that Defendants operated this scheme to "restrain competition in [the] relevant market." (*Id.*)

An antitrust complaint is insufficient if it simply contains "conclusory allegations which merely recite the litany of antitrust." *Sage Realty Corp. v. ISS Cleaning Servs. Group, Inc.*, 936 F. Supp. 130, 135 (S.D.N.Y. 1996); *John's Insulation, Inc. v. Siska Constr. Co.*, 774 F. Supp. 156, 163 (S.D.N.Y. 1991).  Rather, an antitrust complaint must "adequately . . . define the relevant product market, . . . allege antitrust injury, [and] . . . allege conduct in violation of the antitrust laws." *Sage Realty*, 936 F. Supp. at 135 (quoting *Re-Alco Indus., Inc. v. National Ctr. for Health Educ., Inc.*, 812 F. Supp. 387, 391 (S.D.N.Y. 1993)).

Here, Plaintiff's antitrust claims are based on attempted monopolization and conspiracy.[5]  To state a claim for attempted monopolization, a plaintiff must allege that: (1) the

---

[5]  In order to state a claim for actual monopolization under Section 2 of the Sherman Act, a plaintiff must establish "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).  Plaintiff makes no such allegations.

Defendants engaged in predatory or anticompetitive conduct; (2) with a specific intent to monopolize; and (3) a dangerous probability of achieving monopoly power. *Spectrum Sports, Inc. v. McQuillen*, 506 U.S. 447, 456 (1993)

Here, the relevant product market is apparently the home insurance market, which Plaintiff alleges FCC and PMI attempted to monopolize by forcing PMI policies on consumers without their knowledge and consent. In his opposition papers, Plaintiff states that PMI "is one of the largest of only seven insurance companies that make up [the] entire primary mortgage insurance industry." (Pl.'s Answer in Opp'n at 15.) Absent further briefing by Defendants, the Court declines to dismiss this claim as to FCC and PMI.[6] However, because there are no antitrust allegations with respect to FCHC or Basmajian, to the extent Plaintiff asserts antitrust claims against these defendants, they are dismissed.

C.  *Civil Rights Claims*

Plaintiff alleges that "[t]his is a [d]efamation [and] [d]eprivation of procedural and substantive due process action[], guaranteed under [the] fourteenth amendment by the Civil Rights Act (42 U.S.C. [§] 1983)." (Am. Compl. at 2 ¶ 5.) In order to state a claim under section 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law. *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). The only possible state action Plaintiff describes are foreclosure proceedings allegedly initiated by FCC. Foreclosure proceedings do not constitute state action for purposes of section 1983. *See Harper v. Federal Land Bank*, 878 F.2d 1172, 1178 (9th Cir. 1989) ("[T]he fact that a state

---

[6] The memoranda of law submitted by Defendants FCC, FCHC, and Basmajian did not address Plaintiff's antitrust claims.

permits the use of foreclosure procedures and subsequent sheriff sales as the execution of a judgment is not sufficient to constitute state action."); *Birbeck v. Southern New England Production Credit Ass'n*, 606 F. Supp. 1030, 1044 (D. Conn. 1985) ("Even if the defendants had resorted to a foreclosure action in state court, there would not have been a cognizable claim under section 1983 since no state action is involved when a state merely opens its tribunals to private litigants."). Thus, to the extent the Amended Complaint can be construed as asserting claims pursuant to 42 U.S.C. § 1983, these claims are dismissed.

### D. The Patriot Act

Plaintiff's mere recitation of the Patriot Act, (Am. Compl. at 2 ¶ 8), absent any allegations in support of a violation thereof, is clearly insufficient to state a claim thereunder. Accordingly, to the extent Plaintiff seeks to assert claims under this Act, his claims are dismissed.

## CONCLUSION

For the foregoing reasons, the motions by defendants Fairbanks Capital Holding Corp. and Thomas D. Basmajian to dismiss the Amended Complaint are **GRANTED** in their entirety. The motion by PMI Mortgage Insurance Company to dismiss the Amended Complaint is granted with respect to all of Plaintiff's claims except his antitrust claims. The motion by defendant Fairbanks Capital Corp. to dismiss the Amended Complaint is granted with respect to counts I through X of the Amended Complaint. To the extent the Amended Complaint asserts claims under 42 U.S.C. § 1983, the Patriot Act, or the RICO statute, Plaintiff's claims are dismissed. Thus, Plaintiff's RESPA claims against FCC, as well as his antitrust claims against FCC and PMI, survive these motions.

Plaintiff is granted leave to amend with regard to his **FDCPA claims against FCC only and his fraud and/or RICO claims against all Defendants**. Plaintiff shall file a Second Amended Complaint in accordance with this decision within thirty days.

**SO ORDERED.**

Dated: Central Islip, N.Y.
August 16, 2005

/s
Denis R. Hurley,
United States District Judge