# TABLE OF CONTENTS

Page

**Nature of the Motion and Prior Proceedings** .......................... 1

    Prior Proceedings .......................... 1

    Prior Pleadings .......................... 2

    The First Amended Complaint .......................... 2

    The Second Amended Complaint .......................... 2

    The Third Amended Complaint .......................... 3

**Argument** .......................... 4

    The Third Amended Complaint Does Not Meet the
    Requirements Previously Imposed by this Court .......................... 4

    The RICO Based Causes of Action are Legally
    Insufficient .......................... 10

    Plaintiff Has Failed to Allege With Any Specificity
    Damages or Fraud .......................... 11

    The Portions of the Complaint Irrelevant And Potentially
    Prejudicial To Defendants Should Be Stricken .......................... 12

**Conclusion** .......................... 13

## TABLE OF AUTHORITIES

### Statutes

| | Page |
|---|---|
| 12 U.S.C. sects.2605, 2614 | 2 |
| 15 U.S.C. sects. 1,5,13, 45, 1681 | 2 |
| 18 U.S.C. sects. 1344,1511, 1961 | 2, 7 |
| 42 U.S.. Sect. 1983 | 2 |

### Decisions

American Home Mortgage Corp. V. UM Securities Corp.,
NYLJ, 4/20/07, p. 27, col. 1 (SDNY, Casey, D.L.)          5, 6, 7
Denney v. Deutsche Bank, 443 F.3rd 253                    6
First Nationwide Bank v. Gelt Funding, 27 F.3rd 763       5, 6
First Capital Asset Management v. Satinwood, Inc.385 F.3rd 159    10
National Union Fire Insurance of Pittsburgh, Pa. v. Worley,
Skillgames LLC v. Brody, 1 AD2d 247                       11
United States v. Turkette, 452 US 576                     10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Michael T. Dolan,<br><br>                Plaintiff,<br><br>     -against-<br><br>Fairbanks Capital Corporation, a Utah<br>Corporation, and PMI Mortgage Insurance<br>Company, Walnut Creek, CA<br><br>                Defendants. | Memorandum of Law in Support of Motion of<br>Defendant Fairbanks Capital Corporation to<br>Dismiss Third Amended Complaint<br><br>03-CV-3285 (DRH)(MLO) |

## Nature of The Motion and Prior Proceedings

### Prior Proceedings

The original complaint in this action was based upon the "USA Patriot Act of 2001" and filed in July 2003.   On defendants' motion, by decision dated April 23, 2004, it was dismissed, with leave to re-plead.

An amended complaint (the first amended complaint) was then served and dismissed on defendants' motion, in part finally and in part with leave to re-plead again in this court's decision dated August 16, 2005. A second amended complaint was then served and filed in March 2006; a motion to dismiss it was made and granted in part in this Court's decision of December 2006 with leave granted to re-plead as against defendants except Basmajian and Fairbanks Capital Holding Corporation as to whom the complaint was unconditionally dismissed. Leave was granted by the Court to the remaining defendants to move to dismiss the third amended complaint by order dated April 2, 2007.

1

<u>Prior Pleadings</u>

Portions of the original complaint were, except for plaintiff's fraud and/or RICO claims as to all defendants, and as to plaintiff's Fair Debt Collection Act claims against FCC dismissed without leave to re-plead. Plaintiff was granted leave to re-plead the last described causes.

<u>The First Amended Complaint</u>

The May 2004 first amended complaint consisted of 14 single spaced pages containing some 50 paragraphs alleging claims under the "RICO" statute (18 U.S.C. sections 1961 et seq); the "Sherman Act" (15 U.S.C. Section 1 et seq); the "Federal Trade Commission Act" (15 U.S.C. section 5 and 13); the "Fair Debt Collection Practices Act" (15 U.S.C., section 45 (a) et seq); the "Fair Credit Reporting Act" (15 U.S.C. sections 1681 et seq); the "Real Estate Settlement Procedures Act of 1974" (12 U.S.C., section 2605 and 2614); the "Civil Rights Act", 42 U.S.C. sections 1983 et seq and 18 U.S.C., sections 1511 et seq); the Federal Mail Fraud Act (18 U.S.C., section 1511 et seq ); and the Bank Fraud Act (18 U.S.C., section 1344).

<u>The Second Amended Complaint</u>

This Court recognized in its prior decision dismissing the Second Amended Complaint that it consisted, almost entirely, of a "literal re-pleading of the first amended complaint" but nonetheless indicated that if viewed from a certain angle and liberally construed and in view of certain additions, Plaintiff would nonetheless be, for the most part permitted to re-plead again except that the claims against Fairbanks Capital Holding Corp. and Basmajian were dismissed without leave to re-plead. Further it was directed

that plaintiff not assert new claims in the third amended complaint without court permission.

### The Third Amended Complaint

In its December 2006 decision the Court granted only limited leave to re-plead when dismissing portions of it and specifically pointed out certain defects and "invited" plaintiff to cure them. But as was and is, the Plaintiff blithely ignored this direction and virtually re-pleaded the previously dismissed complaints in haec verba in the third amended complaint. For example reference is made to the "TILA" [apparently the federal "Truth in Lending Act"] in the list of citations of statutes. But examination of the complaint fails to reveal any such citation and as there are no page references anywhere examination of the entire complaint is required in each instance to determine if that and other references in its Table of Citations are real or delusional.

The third amended complaint (the fourth complaint if the original is counted) is only 28 pages long (although the length would, perhaps, double if the font were in the minimum size directed in this Court's 2004 amended rules (Rule I, (4)). But this Court in its discretion has given the pro se Plaintiff leeway. It contains 67 paragraphs. This may be compared to the first amended complaint which contained 50 paragraphs in 14 pages, though the type was so tiny as to be barely readable or the second amended complaint which contained, it appears, over 320 paragraphs and about 35 sections (but only three "counts"). The number of "counts" or causes of action alleged in the third amended complaint cannot be determined on the face of the pleading, since there are neither "counts" as such nor headings indicating some separation of the allegations into claims.

3

ARGUMENT

Point I

The Third Amended Complaint Does Not
Meet the Requirements Previously Imposed by this Court

In its decision granting Plaintiff leave to serve a third amended complaint this

Court dismissed the claim based upon Fairbanks Capital Corporation's (herein "FCC")

claimed violation of the Fair Debt Collection Practice's Act (herein "FDCPA") for

Plaintiff's failure to allege that FCC was a "debt collector" within the meaning of that

statute at the dates concerned. (Decision of 12/15/06, Page 22). Now Plaintiff claims he

has cured that defect by alleging that: "Plaintiff plainly states the loan was in default and

was [sic] in the TMS [The Money Store, FCC's principal's assignor] forbearance

agreement." (Para. 4, P. 2; underlining added ) What is meant by the underlined phrase is

unclear.  Assuming that it means that it is submitted as the necessary proof of the default

as of the required date, it fails to meet the standards set by the Court. Why FCC should be

considered bound by what was in an agreement to which it was not a party is not set forth.

As to the required evidentiary allegations to support this allegation of FCC's

knowledge of Plaintiff default when began servicing the accounts, which the Court

previously directed to be included, Plaintiff asserts he made payments based upon

forbearance agreements with TMS (a third party unrelated to FCC ) and one payment to

FCC. Leaving aside the fact that elsewhere Plaintiff contradicts this claim by denying he

was in default while simultaneously including in some of his pleadings documents in

which he expressly conceded he was in default, the instant complaint still lacks the

requisite factually based allegations. The FCC drafted forbearance agreement of

December 2002 cannot, of course, cure this deficiency for it fails to demonstrate proof of

4

FCC's knowledge of the default in 2000; some years earlier. Paragraph 18 on Page 9 of

the third amended complaint repeats this argument that the 2002 forbearance agreement

proves that FCC knew of the default in 2000. This confusion and inability to make cogent

arguments which require counting dates is not unique in this pleading Paragraph 15 of the

new complaint makes much of claiming grievous error on FCC's part in asserting in a

2003 letter that Plaintiff was 32 months delinquent in mortgage payments in a bold faced

allegation that the period "from 11/22/00 to 5/30/03 *** totaled less than 31 months."

The Court is referred to any Gregorian calendar for proof that the period described equals

over 31 months, to wit, 31 months and 8 days. Plaintiff, in that same paragraph, asserts

that based upon his inability to count correctly, this accurate calculation by FCC

constitutes fraud. It is respectfully submitted that the alleged fraud attempted is by

another party to this action whose interest is adverse to FCC.

The complaint also fails, totally, to set forth as directed in the words of this court in its

December 2006 decision "with particularity and specificity, the actual harms he suffered as a

result of FCC's clearly defined acts." A recent decision of the Southern District of New York

(Casey, D.J.) (American Home Mortgage Corp. v. UM Securities Corp., NYLJ 4/20/07, p. 27,

col. 1) is almost directly on point. A copy is annexed for this Court's convenience. There the

mortgage lender was suing the mortgage broker which brought the loans to the lender and the

action was, as here, based upon alleged violations of the RICO statutes. While dismissing the

action that Court stated in language on point to the issues raised herein:

> "To satisfy RICO's standing requirements, a plaintiff must demonstrate
> (1) a violation of 18 U.S.C. sect. 1962, (2) "injury to business or property"
> and (3) "causation of the injury by the violation." First Nationwide, 27
> F.3rd at 767 [full citation being  First Nationwide Bank v. Gelt Funding
> Corp., 27 F.3rd 763 (2nd Cir. 1994)],

and, further quoting <u>Denney v. Deutsche Bank,</u> 443 F.3rd 253, 256 that

> "A RICO plaintiff 'only has standing if, and can only recover to the extent he has been injured in his business or property by the conduct constituting the RICO violation and only when his or her 'actual loss becomes clear and definite."

Other than some sort of supposed injury to his intra-familial relations allegedly caused by the strain under which Plaintiff was placed in either trying to pay or making up reasons to avoid paying the indebtedness he had voluntarily assumed, the third amended complaint fails totally to assert with any degree of specificity any actual loss sustained by him. Inasmuch he has represented himself in this action, he cannot even point to his counsel fees as a loss. In the language of the Court in <u>First Nationwide, supra</u>, quoted with approval in <u>American Home, supra,</u> "The fraud defendant is not liable for all losses, but only for those actually suffered." (<u>Id</u> at 769). As the Court stated in <u>American Home</u> plaintiff must show "that the illicit actions were a proximate cause of the injury."

It does not suffice for Plaintiff to claim that if the affected property were foreclosed he would lose an expectation of profit if and when he decided to sell the property and if and when he so decided the relevant real estate market had become less favorable to sellers (as he seems to assert). As the Second Circuit Court of Appeals held in <u>First Nationwide</u>, with respect to properties not foreclosed at the time of the action such claims "are not ripe for adjudication because it [was] uncertain whether [the mortgagee would] *** sustain any injury cognizable under RICO." (<u>Id</u> at 767).

Even if the property had been foreclosed the complaint would be insufficient absent allegations of the amount of the loan; the amount outstanding at the time of the foreclosure sale

6

and the amount, if any, recovered in surplus money proceedings or otherwise. <u>American Home Mortgage Corp.v. UM Securities Corp., supra.</u>) The "harms" specified to cure the default are, apparently that FCC tried to get Plaintiff to pay what he previously agreed in writing that he owed (Para. 7, 8) The "proof" submitted in support of these claims consist of numerous paragraphs such as the following - most of which are repeated several times in slightly different words. First, a quotation from some paper submitted by FCC in this action or by someone else in an action to which FCC was not a party stating that Plaintiff was in default under the mortgage (Complaint, Para. 12) followed by the statement "This was false." (<u>Ibid</u>) and a fraud (Para. 13) for as above explained, FCC said Plaintiff was in default for 32 months when, in fact, he was in default only for over 31 months (at which point in all likelihood he was in default in 32 monthly payments); that these actions in claiming Plaintiff was in default "destroyed Plaintiff's credibility by slander to throw off authorities"(Para. 15): an argument which carries some weight for much of his claims now are founded upon his claim that he previously lied when he acknowledged his default in writing; that a 17 page loan statement supplied by FCC was incomplete as it stated it included the period from January, 2001 to August 2003 - and did not include November or December 2000 (another example of Plaintiff's inability to cope with calculation of dates for if the statement, on its face, stated it included only the period starting January 2001 it could not, of course include November or December 2000 or it would be inaccurate) (Para. 16).

In addition to the above deficiency relating to the herein suffered there is an equivalent deficiency in specifying the wrongful acts charged to FCC. The alleged wrongful acts committed by FCC (alone or with others) (consisted of submitting an accounting to him (as he demanded), which was false and in compelling him to sign a forbearance agreement, when he was not in default. The falsity of the accounting is not specified. The claim he was not in default made in

this action is not even alleged to have been raised when he was presented with the agreement or before he signed it. There is no allegation that FCC or anyone acting with FCC used physical force or the threat of physical force or mental coercion to compel him sign it.  There is no allegation that FCC or anyone acting with FCC used physical force or the threat of physical force or mental coercion to prevent him before he signed it from seeking his own counsel or, if he could not afford that the assistance of legal aid or the use of <u>pro se</u> legal action or the aid of governmental agencies to assist him.

Plaintiffs claim in essence is that he was threatened with FCC's using those legal rights available to FCC and every other creditor in like circumstances to collect Plaintiff's indebtedness. The threat complained of and the fear he faced was that if he didn't pay his mortgage he could lose his home - the same possibility every mortgagor faces if he defaults on his mortgage.  Using Plaintiffs' reasoning every creditor who threatens a defaulting creditor with legal action if payment is not made is guilty of a wrongful actionable act.

Plaintiff arguments in substance are:

1.    <u>That FCC acted wrongly when it relied upon Plaintiff's written and verified word.</u> There is no representation that FCC had previously dealt with Plaintiff so there would be some basis for an argument that due to its prior experience with him, FCC should have known not to rely upon Plaintiffs' representations, whether in writing or oral or verified or not.  In paragraph 10 of the third amended complaint Plaintiff quotes his written verified representation that "Dolan acknowledges that it (sic) is indebted to (Fairbanks) in the with (sic) arrears in the sum of $87,567.71." with the astounding admission that "This was false." Then he seeks damages for FCC's reliance upon Plaintiff's false representations.  Moreover, there is no specification of the nature of the falsity. Was it understating the amount he owed.  Did he owe $87,567.72 rather than

$86,567.71?  Conversely, was it overstating that amount for Plaintiffs owed $86,567.70 not $86,567.71?  His confession of a materially false representation is followed by the claim that he was forced to make the representation for if he did not do so, a foreclosure action would be commenced by FCC as was its right.;

        2.     That FCC acted wrongly when it advised Plaintiff that FCC would resort to its available legal remedies if Plaintiff continued in defaulting in making those payments Plaintiff had over and over again agreed to make and in which promise he defaulted over and over again. He does not claim FCC was barred by law or fact from commencement of a foreclosure action or that its commencement would be without merit. He does not state if or why or how he would be improperly barred from defending that action. Thus he seeks this Court's approval for the making of false representations if they are necessary to forestall a creditor with an otherwise valid claim;

        3.     That FCC acted wrongly in providing him with a copy of FCC's record of Plaintiff's account, as Plaintiff requested, which account was in error in some unspecified instance; and

        4.     That Plaintiff is under no obligation to allege how he was damaged by FCC's actions let alone allege this claim with any degree of specificity or to support it with same proof or even reference to documentary or other evidentiary matter.

      What is clear is that plaintiff saw a newspaper article and recognized it as an opportunity to attempt to escape his voluntarily assumed and otherwise valid obligations if he could only attract the sympathy of a court. Thus far he has succeeded.

Rather than quibbling about the above matters FCC urges the Court to examine the Third Amended Complaint for any proof (or even allegation) that FCC performed any act other than attempting to collect Plaintiff's indebtedness; a task that may be impossible to achieve and the fact that these efforts as Plaintiff claims, damaged his "credit"; his family life and his career are merely the inevitable result of his default. To add insult to injury, he asserts, FCC reported his acknowledged default in payments to credit reporting agencies and thus impaired his ability to obtain other loans.  Plaintiff's argument seems to be that FCC should have followed his lead and lied to these agencies and others.

It now seems, from the records available to FCC, that Plaintiff has been able to live in his same home, freed by court order from the obligation to pay any mortgage or for use and occupation for about six years - a status for which he should be thankful rather than about which he should complain.

THE RICO BASED CAUSES OF ACTION
ARE LEGALLY INSUFFICIENT

The "RICO based "causes" are legally insufficient for, as this Court previously recognized, such causes require at the least an allegation of a conspiracy or joinder of action between two or more parties engaged in a criminal enterprise. (18 U.S.C. 1961 [4] ; First Capital Asset Mgmt. v.  Satinwood, Inc., 385 F.3rd 159,; United States v. Turkette, 452 U.S. 576). Both the court's statement in Satinwood, supra, defining the requisite relationship as:

> "a group of persons associated together for a common purpose
>
> of engaging in a criminal enterprise" (Supra.at 173)

and in Turkette that:

> "The enterprise must be separate from the pattern of racketeering

activity and distinct from the person conducting the affairs of

the enterprise." (<u>Supra at 583</u>)

lead to the conclusion that the generalized allegations in the third amended complaint that FCC

engaged in a conspiracy or enterprise <u>with itself are</u> insufficient under the act.

The antitrust and "RESPA" claims were previously dismissed without leave to re-plead.

All that remain then, in addition to the "RICO" claims, are those based upon fraud and claimed

violation of the "FDCPA" statute.

The Court's attention is directed to the discussion of the recent decision in <u>American</u>

<u>Home</u> discussed and quoted at length above.

## <u>PLAINTIFF HAS FAILED TO ALLEGE WITH ANY SPECIFICIETY DAMAGES OR FRAUD</u>

The allegations necessary for a claim based on fraud are that the injured party "relied

upon a material misrepresentation by defendant and that it suffered an injury as a result of that

reliance." (<u>Skillgames LLC v. Brody</u>, 1 AD2d 247, 250; Accord, <u>National Union Fire Ins. Co.</u>

<u>of Pittsburgh, Pa. V. Worley</u>, 257 AD2d 228). The instant complaint lacks any allegation of any

misrepresentation upon which plaintiff relied to his damage and is thus deficient.

In addition to the specific deficiencies dealt with elsewhere in this Memorandum, there is

a general defect that applies throughout - Plaintiff's failure to demonstrate damages. The Court's

attention is directed to the discussion in <u>American Home</u>, above. All that can be gleaned from

the allegations in the present complaint is that FCC delayed improperly in responding to one of

Plaintiff's numerous inquiries for perhaps slightly over a month in 2000. How this caused

monetary damage and in what amount are unspecified. Then there is constant repetition of the

fact that in responding to one of Plaintiff's complaints FCC submitted a 17 page loan statement.

One can only guess what Plaintiff would have alleged had the statement been shorter (or longer). Meanwhile, it appears, Plaintiff remains in the subject property without having paid any mortgage payments for over seven years - a most enviable status - but one which negates his having sustained any damage whatsoever. Indeed his unjust enrichment seems evident. The only party who has profited from this status is Plaintiff - and he has profited mightily and, should this Court give its imprimatur to this conduct, he will profit more.[1]

## THE PORTIONS OF THE COMPLAINT THAT ARE IRRELEVANT AND POTENTIALLY PREJUDICIAL TO DEFENDANTS SHOULD BE STRICKEN

There are substantial portions of the complaint which are irrelevant to Plaintiff's claims; on their face without even a claim to be substantiated by any knowledge of Plaintiff and inserted solely to prejudice. These constitute a claimed description of FCC's method of doing business both with its retail customers and with other corporations - none of which has anything to do with Plaintiff in any manner. Thus the means by which Plaintiff claims FCC and other like companies buy and sell portfolios of mortgages is set forth at length although the basis for the description seems to be magazine and newspaper articles and not anything within Plaintiff's knowledge. Moreover the transactions described are not even alleged to have anything to do with Plaintiff or his dealings with FCC or how they caused damage. It is as if in a suit involving IBM, the history of mathematics were set forth. Is FCC to be required to answer these allegations when no valid or even illusory reason exists for their inclusion in the complaint except in Plaintiff's mind? For example, paragraph 37 contains, among other allegations, the following:

---

[1] The New York State foreclosure action brought by another party which acquired the mortgage evidently ended with one of the stranger decisions in modern times (one hesitates to include it in modern "jurisprudence" for there seems nothing jurisprudential about a decision which ends with a direction that the parties to the action "negotiate" with no boundary set for the negotiation either as to the period it should commence or conclude; no monetary limit fixed and one party having every incentive not to negotiate and no penalty fixed if he adhered to that position).

"Normal procedures for insurance companies do not allow double billing. An insurance company would never expect a zero % ratio on claims of high risks products either or even an unusual one, as much as they would like. And would question any loan servicer responsible, as a normal part of standard practices, to what was going on, if they were a legitimate operation. The Company would want to know how they were doing it, to expand or shut it down. Thieves steal from everyone."

Similar allegations are contained in paragraphs 26 through 37 inter alia. See, e.g., paragraph 41 in which Plaintiff alleges. "The credit card companies apply a 'universal default' on current accounts because of the misinformation found on the credit reports regarding the FCC foreclosure [a non-existent event] and charged higher interest rates unfairly on current accounts, as was done to Plaintiff . Medical records are kept private so should financial records."(3rd Amended Complaint, para.41).

Thus Plaintiff here seeks to accuse FCC of wrongdoing by notifying credit reporting agencies of Plaintiff's status, apparently thereby interfering with Plaintiff's ability to falsely obtain credit by falsely omitting disclosure of his status on the subject loan and then his profiting by defaulting on those loans also. Plaintiff thereby claims wrongdoing on FCC's part for not participating in his fraudulent schemes. These and the other like paragraphs of the 3rd Amended Complaint should be struck.

CONCLUSION

The 3rd Amended Complaint should be dismissed with prejudice.

Dated: Rockville Centre, New York          Respectfully Submitted,
      April 24, 2007

                                             SHELDON MAY & ASSOCIATES
                                             Attorneys for Defendant
                                             Fairbanks Capital Corporation
                                             Ted Eric May, Of Counsel
To:                                         255 Merrick Road
Michael T Dolan,                      Rockville Centre, New York 11570
Plaintiff, <u>pro se</u>
21 Kent Place
Smithtown, NY 11787

O'Melveny & Meyers, LLP
Attorneys for Defendant PMI Mortgage Insurance Company
Joshua R Schwartz, Of Counsel
Times Square Towers
7 Times Square
New York, NY 10036

REAL PROPERTY

# Mortgage Lender Lacks RICO Standing in Suit Over Fraud in Connection With Loan Applications

**District Judge Richard Conway Casey[1]**

AMERICAN HOME MORTGAGE CORP v. UM SECURITIES CORP., 05 Civ. 2279, Decided 04/9/07—

Plaintiff American Home Mortgage Corp. ("Plaintiff" or "American Home"), a mortgage lender for residential real estate, brings the present action alleging civil violations of the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§1662(c) and (d), and various state causes of action, including breach of contract, fraud, and negligent misrepresentation. Defendants are mortgage broker UM Securities Corporation d/b/a Dupont Funding Co. ("Dupont Funding"), Dupont Funding's manager Marc S. Eidelkind, Dupont Funding's president Walter M. Eidelkind, and law firm / settlement agent Richard M. Levy & Associates ("Levy & Associates") (collectively, "Defendants"). Presently before the court are Defendants' motions to dismiss pursuant to Rules 12(b) (6), 12(b) (1), and 9(b) of the Federal Rules of Civil Procedure. For the following reasons, Defendants' Rule 12(b) (6) motions to dismiss are GRANTED.

## I. BACKGROUND

### A. Facts

The following Facts are alleged in the amended complaint (the "Complaint").

Plaintiff is a corporation that funds mortgage loans, including those brokered by third parties. On November 12, 2003, Plaintiff and Dupont Funding entered into an agreement entitled Mortgage Broker Loan Application Package Submission Agreement. Between January 2004 and July 2004, pursuant to this submission agreement, Dupont Funding submitted loan application packages for at least nine different real properties (the "Subject Properties"). Plaintiff approved the application packages for the Subject Properties and provided mortgage loans accordingly. Dupont Funding selected Levy & Associates to assist with closing the loans.

Plaintiff alleges that Defendants were engaged in a conspiracy to defraud Plaintiff by fraudulently obtaining loans for the Subject Properties. To perpetrate this fraud, according to the complaint, Defendants engaged in the following: misrepresenting the market values of the Subject Properties; submitting fraudulent documentation—including contracts, property appraisals, and disclosure statements containing forged signatures—to American Home; using as borrowers "straw buyers" who did not actually intend to occupy the properties; misrepresenting the amount of cash brought by the borrowers to closing; providing HUD-1 settlement statements that did not reflect the actual receipt and disbursement of funds for each relevant transaction. Plaintiff alleges that as a result of Defendants' conduct, it "has suffered and will continue to suffer actual and consequential damages in that, among other things, the Subject Loans' values have been substantially diminished." (Compl. ¶16.) Plaintiff states that based on the paperwork submitted by Defendants in connection with the loan applications, Plaintiff believed that the properties' market value exceeded the loan amount, and that it "would not have otherwise allowed these loans to fund." (Id. ¶135.)

The Complaint identifies nine Subject Properties, and of these, it includes descriptions of five Subject Properties.[2] For each of these properties, American Home ordered a review appraisal 6 to 11 months after the original appraisal submitted by Defendants. According to Plaintiffs, the review appraisals revealed inaccuracies and value overstatements in the original appraisals.

Plaintiff alleges that it has foreclosed on only one of the Subject Properties, the property located at 1455 Bushwick Avenue, Brooklyn, New York ("1455 Bushwick"). A public foreclosure sale of 1455 Bushwick was held in the Supreme Court, Kings County, New York on September 22, 2005. The original appraisal submitted by Defendants valued this property at $574,500. (Id. ¶¶44, 46.) Plaintiffs allege that the original appraisal "materially overstated the value of 1455 Bushwick." (Id. ¶49.) Plaintiffs do not allege the amount by which the original appraisal allegedly overstated the value. (Id.) Nor does the Complaint state the amount of the loan provided by Plaintiff for 1455 Bushwick.

to Rule 12(b) (1) rather than 12(b) (6)."), with Lerner v. Fleet Bank, N.A., 318 F.3d 113, 117 (2d Cir. 2003) ("[W]e [affirm] not under Fed. R. Civ. P. 12(b) (1), for lack of jurisdiction, as the district court did, but rather under Fed. R. Civ. P. 12(b) (6), for failure to state a claim.... RICO standing is not a jurisdictional prerequisite the absence of which would divest the district court of the original jurisdiction required to support supplemental jurisdiction."). Most recently, the Court of Appeals endorsed the concept that RICO standing is not a jurisdictional issue but rather is part of the merits analysis of Rule 12(b) (6), see Lerner v. Fleet Bank, N.A., 318 F.3d 113, 129-130 (2d Cir. 2003), and the court described this reasoning as a holding; see id.; Denney v. Deutsche Bank AG, 443 F.3d 253, 266 (2d Cir. 2006). Therefore, this Court will consider whether Plaintiff has stated a claim pursuant to 12(b) (6).[3]

Under Rule 12(b) (6), the Court "must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997). The Court will not grant dismissal unless it appears beyond doubt that the plaintiff can prove no set of Facts which would entitle him to relief on his claims. Id. At this stage in the litigation, "the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996).

### B. RICO Standing

Courts have articulated several conditions, based on the language of §1964(c), that a civil plaintiff must meet to satisfy RICO's standing requirements. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 767 (2d Cir. 1994). "A RICO plaintiff 'only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the RICO violation,' and only when his or her 'actual loss becomes clear and definite.'" Denney, 443 F.3d at 266 (quoting First Nationwide, 27 F.3d at 767-69). In general, "RICO standing is a more rigorous matter than standing under Article III." Id.

To satisfy RICO's standing requirements, a plaintiff must demonstrate (1) a violation of 18 U.S.C. §1962, (2) "injury to business or property," and (3) "causation of the injury by the violation." First Nationwide, 27 F.3d at 767. The injury element requires a plaintiff to show that the defendant actually injured plaintiff's business or property. 18 U.S.C. §1964; Sedima v. Imrex Co., 473 U.S. 479, 496-97 (1985) ("A defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured."); First Nationwide, 27 F.3d at 768 ("The fraud defendant is not liable for all losses that may occur, but only for those actually suffered."). With regard to the causation element, a plaintiff must allege that the defendant's RICO violations proximately caused plaintiff's injury, "i.e., that there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct." First Nationwide, 27 F.3d at 769 (internal citations removed). It is not enough to show that the defendants' actions were a but-for cause; a plaintiff must show that the illicit actions were a proximate cause of its injury. Id.; see also Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 266 (1992) (holding that §1964(c) includes a proximate cause requirement).

In First Nationwide v. Gelt Funding Corp., the Second Circuit considered the RICO claims of a bank that alleged a mortgage broker had fraudulently induced the bank to provide mortgage loans. The Court of Appeals held that, with regard to loans that the bank had not yet foreclosed, the bank's claims were "not ripe for adjudication because it [was] uncertain whether [the bank would] sustain any injury



all claims over which F.3d at 130 (explaini

**U.S. — SDNY**

# Partial F Backloa

[Footno
District Judge Shira /

IN RE CITIGROUP P 5296, Decided 04/04/0

### Appearances

For Plaintiffs: Edgar New York, New York

Brad N. Friedman, E Milberg Weiss Bersh New York, New York

William D. Frumkin, Sapir & Frumkin LLP White Plains, New Yo

Richard S. Schiffrin, Joseph H. Meltzer, Ed Edward W. Ciolko, Sc Schiffrin & Barroway, Radnor, Pennsylvania

For Defendants: Myro Proskauer Rose LLP New York, New York

### I. INTRODUCTION

Michael Lonec, Robert S. Fas of themselve individuals, fi that the Citibuilder Cash Employee Retirement In ed ("ERISA"), 29 U.S.C. § declaratory relief as well and Order dated Decemb mary judgment for defen ment for plaintiffs with r raised in their Complaint (1) the Plan's unorthodo loading rules and kept ac determined by statute; (2) criminatory under ERISA statutory notice requirem made to the Plan in 2000 defendants to reform the

By Opinion and Order certified a class of plainti were participants in the F 1, 2000, their beneficiarie currently subject to the P ERISA. Defendants now m age discrimination and bi al Rule of Civil Procedure appeal pursuant to 28 U.S Court's rulings pending a case and another case cu cuit. For the reasons state are denied. The Court als its prior summary judgme notice claims under ERIS/

### II. LEGAL STANDARD

#### A. Final Judgments Und

Rule 54(b) states, in rel When more than one cl action...or when multip may direct the entry of more but fewer than all an express determinatic delay and upon an expr judgment.

The Second Circuit has p

packages for the Subject Properties and provided mortgage loans accordingly. Dupont Funding selected Levy & Associates to assist with closing the loans.

Plaintiff alleges that Defendants were engaged in a conspiracy to defraud Plaintiff by fraudulently obtaining loans for the Subject Properties. To perpetrate this fraud, according to the complaint, Defendants engaged in the following: misrepresenting the market values of the Subject Properties; submitting fraudulent documentation—including contracts, property appraisals, and disclosure statements containing forged signatures—to American Home; using as borrowers "straw buyers" who did not actually intend to occupy the properties; misrepresenting the amount of cash brought by the borrowers to closing; providing HUD-1 settlement statements that did not reflect the actual receipt and disbursement of funds for each relevant transaction. Plaintiff alleges that as a result of Defendants' conduct, it "has suffered and will continue to suffer actual and consequential damages in that, among other things, the Subject Loans' values have been substantially diminished." (Compl. ¶16.) Plaintiff states that based on the paperwork submitted by Defendants in connection with the loan applications, Plaintiff believed that the properties' market value exceeded the loan amount, and that it "would not have otherwise allowed these loans to fund." (Id. ¶135.)

The Complaint identifies nine Subject Properties, and of these, it includes descriptions of five Subject Properties.[2] For each of these properties, American Home ordered a review appraisal 6 to 11 months after the original appraisal submitted by Defendants. According to Plaintiffs, the review appraisals revealed inaccuracies and value overstatements in the original appraisal.

Plaintiff alleges that it has foreclosed on only one of the Subject Properties, the property located at 1455 Bushwick Avenue, Brooklyn, New York ("1455 Bushwick"). A public foreclosure sale of 1455 Bushwick was held in the Supreme Court, Kings County, New York on September 22, 2005. The original January 31, 2004 appraisal submitted by Defendants valued this property at $574,500. (Id. ¶¶44, 46.) Plaintiffs allege that the original appraisal "materially overstated the value of 1455 Bushwick." (Id. ¶49.) Plaintiffs do not allege the amount by which the original appraisal allegedly overstated the value. (Id.) Nor does the Complaint state the amount of the loan provided by Plaintiff for 1455 Bushwick.

In connection with the instant suit, Plaintiff filed its initial complaint on February 18, 2005 and its amended complaint on October 25, 2005. By letters dated October 21 and 31, 2005, Defendants requested that their previously filed motions to dismiss the first complaint be applied to the amended complaint and pleadings. The Court granted that request on November 3, 2005.

The amended complaint alleges seven causes of action, including two under RICO and five under state law. Of the two RICO counts, one count alleges a substantive RICO violation, under 18 U.S.C. §§1962(c) and 1964(c), and one count alleges RICO conspiracy, under 18 U.S.C. §§1962(d) and 1964(c). Defendants have moved to dismiss all counts.

## II. DISCUSSION

### A. Standard of Review

Defendants argue for dismissal of Plaintiff's RICO claims on the ground that Plaintiff lacks standing to sue under the RICO statute.

Pursuant to 18 U.S.C. §1962(c), it is a violation of law to conduct or participate in the affairs of an enterprise through a pattern of racketeering. Section 1962(d) makes it a crime to conspire to commit such a violation. In addition to criminal penalties, the RICO statute provides a private civil cause of action in 18 U.S.C. §1964(c), which states: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

The Second Circuit has made contradicting statements regarding whether RICO standing issues are jurisdictional, and thereby best considered under Rule 12(b) (1) of the Federal Rules of Civil Procedure, or not jurisdictional, and thereby best considered under Rule 12(b) (6). Compare Moore v. PaineWebber, Inc., 189 F.3d 165, 169 n.3 (2d Cir. 1999) ("Because loss causation is an element of standing to sue under the RICO statute, the appropriate ground of dismissal for failure to plead loss causation would seem to be the lack of subject matter jurisdiction rather than the plaintiffs' failure to state a claim.... Dismissal would then be pursuant

entitled to offer evidence to support the claims.' Brannam v. Meacham, 77 F.3d 626, 628 (2d Cir. 1996).

### B. RICO Standing

Courts have articulated several conditions, based on the language of §1964(c), that a civil plaintiff must meet to satisfy RICO's standing requirements. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 767 (2d Cir. 1994). "A RICO plaintiff 'only has standing if, and can only recover to the extent that, he has been injured in his business or property by th e conduct constituting the RICO violation, and only when his or her 'actual loss becomes clear and definite.'" Denney, 443 F.3d at 266 (quoting First Nationwide, 27 F.3d at 767-69). In general, "RICO standing is a more rigorous matter than standing under Article III." Id.

To satisfy RICO's standing requirements, a plaintiff must demonstrate (1) a violation of 18 U.S.C. §1962, (2) "injury to business or property," and (3) "causation of the injury by the violation." First Nationwide, 27 F.3d at 767. The injury element requires a plaintiff to show that the defendant actually injured plaintiff's business or property. 18 U.S.C. §1964; Sedima v. Imrex Co., 473 U.S. 479, 496-97 (1985) ("A defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured."); First Nationwide, 27 F.3d at 768 ("The fraud defendant is not liable for all losses that may occur, but only for those actually suffered."). With regard to the causation element, a plaintiff must allege that the defendant's RICO violations proximately caused plaintiff's injury, "i.e. that there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct." First Nationwide, 27 F.3d at 769 (internal citations removed). It is not enough to show that the defendants' actions were a but-for cause; a plaintiff must show that the illicit actions were a proximate cause of its injury. Id.; see also Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 266 (1992) (holding that §1964(c) includes a proximate cause requirement).

In First Nationwide v. Gelt Funding Corp., the Second Circuit considered the RICO claims of a bank that alleged a mortgage broker had fraudulently induced the bank to provide mortgage loans. The Court of Appeals held that, with regard to loans that the bank had not yet foreclosed, the bank's claims were "not ripe for adjudication because it [was] uncertain whether [the bank would] sustain any injury cognizable under RICO," and with regard to those loans that had been foreclosed, "the complaint [did] not adequately allege proximate cause." First Nationwide, 27 F.3d at 767. Where a defendant allegedly used fraud to obtain a loan, the Court explained, "any amounts paid on the debt reduce the amount the plaintiff can claim as damages resulting from the fraud" because the defendant is liable only for those losses actually suffered by the plaintiff. Id. The plaintiff's injuries remain unknown and unknowable, therefore, until "it is finally determined whether the collateral is insufficient to make the plaintiff whole, and if so, by how much." Id. Thus, a plaintiff is unable to show any injury, and therefore lacks standing under RICO, based on loans that have not yet been finally foreclosed. Id.

Here, as in First Nationwide, Plaintiff does not have RICO standing to assert claims based on the unforeclosed loans and properties.[4] See id. Plaintiff may not maintain a RICO action based on the "novel theory that" [the lender] was damaged simply by being undersecured when, with respect to those loans which had not yet foreclosed, the actual [monetary] damages it will suffer, if any, have not been determined. Id. Plaintiff asserts, however, that its lost opportunities to sell the unforeclosed loans on the secondary market, which it argues resulted from the alleged fraud, does constitute an ascertainable loss. While this might be true in theory, Plaintiff has not provided any facts that would allow the Court to assess such losses. And certainly Plaintiff has not shown a "clear and definite" injury arising from resaleability (or the lack thereof) of the loans on the secondary mortgage market.[5] See Denney, 443 F.3d at 266 (no clear and definite injury where extent of damage unknown); cf. Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 24 (2d Cir. 1990) (holding that "injury in the form of lost business commissions...is too speculative to confer standing because [plaintiff] only alleges that he would have lost commissions in the future, and not that he has lost any yet"); Dornberger v. Metro. Life Ins. Co., 961 F. Supp. 506, 521 (S.D.N.Y. 1997) (stating that §1964(c) "requires a showing of some actual, out-of-pocket financial loss").

Nor does Plaintiff have standing to assert a RICO claim as to the one foreclosed loan for 1455 Bushwick. Plaintiff has not alleged the loan amount for the 1455 Bushwick property,

that the Citibul
Employee Retire
ed ("ERISA"), 29
declaratory reli
and Order dated
mary judgment
ment for plaintif
raised in their C
(1) the Plan's un
loading rules and
prescribed by sl
criminatory und
statutory notice
made to the Plan
defendants to re

By Opinion an
certified a class...
were participant
1, 2000, their ber
currently subjec
ERISA. Defendan
age discriminatio
al Rule of Civil Pr
appeal pursuant
Court's rulings p
case and another
cuit. For the reas
are denied. The C
its prior summary
notice claims und

## II. LEGAL STANDA

### A. Final Judgme

Rule 54(b) stat
When more tha
action...or whe
may direct the e
more but fewer
an express dete
delay and upon
judgment.

The Second Circu
deciding whether

Generally, a dist
that there is no
exists some dan
delay which wo
example, where
in recovering a
and duplicative
ing the prosecut
claim were rever
claims. The dist
position should
substantial defe
discretion.

The Second Circuit
the historic federa
that a Rule 54(b) c
power should be "
infrequent harsh c
hardship or injust

### B. Interlocutory

Appeals of inter
by 28 U.S.C. §1292
appealed must "(1
over which there i
ion," and the mov
appeal would mate
the litigation." [I]
criteria as a unitar
and discussing int
uniformly cite all t
any particular cas

In addition, leav
movant demonstr
stances" sufficient
piecemeal litigatio
basic policy of po
entry of a final jud
to 'extraordinary c
protracted and ex
a vehicle to provid

the sum by which Defendants overstated the property value, or the amount of the loan—if any—that was unrecoverable through foreclosure. That is to say, despite alleging that it has foreclosed on the 1455 Bushwick property, Plaintiff has failed to allege a definite loss with respect to the loan. Plaintiff has not established the "clear and definite" injury necessary for RICO standing. See Denney, 443 F.3d at 266.

Further, Plaintiff has not adequately alleged that the purported fraud was the proximate cause of any loss sustained in connection with its loan foreclosure for the 1455 Bushwick property. In evaluating the proximate cause requirement with regard to a fraudulently induced loan, courts consider a number of factors such as "the magnitude of the misrepresentations, the amount of time between the loan transaction and the loss, and the certainty with which the loss can be attributed to defendant's conduct." First Nationwide, 27 F.3d at 773. Here, the Court is not able to evaluate these factors because the Complaint provides no Facts that would allow the Court to assess the extent of the misrepresentations or the amount of the loss. Simply put, Plaintiff has not "allege[d] loss causation with sufficient particularity such that [the Court] can determine whether the factual basis for its claim, if proven, could support an inference of proximate cause." See First Nationwide, 27 F.3d at 770.

In sum, Plaintiff has not sufficiently alleged injury or proximate cause and therefore lacks RICO standing. Accordingly, Plaintiff has failed to state a claim under Rule 12(b) (6).[6]

### C. Plaintiff's State Law Claims

In addition to its RICO claims, Plaintiff alleges various state-law claims, including, inter alia, breach of contract, fraud, and negligent misrepresentation. (Compl. ¶¶146-193.) Because the Court is dismissing Plaintiff's federal law RICO claims and because the remaining claims concern only state law, there is no longer any independent basis for federal jurisdiction in this action. The Court declines to exercise supplemental jurisdiction over the remaining claims. See 28 U.S.C. §1367(c) (3) ("The district court may decline to exercise supplemental jurisdiction over a claim [if] the district court has dismissed all claims over which it has original jurisdiction."); Lerner, 318 F.3d at 130 (explaining that a lack of RICO standing "does not

divest the district court of original jurisdiction" but that "[i]n most circumstances, a district court should decline supplemental jurisdiction if all federal claims have been dismissed at the pleading stage").

### III. CONCLUSION

Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b) (6) is GRANTED. The Court declines to exercise supplemental jurisdiction over the remaining state-law claims.

So Ordered: New York, New York

---

1. The Honorable Richard Conway Casey passed away on March 22, 2007. Prior to his death, Judge Casey completed a substantial portion of the work on this opinion. In his honor and on his behalf, I issue this opinion in his name.

2. The Complaint includes descriptions of 918 Gerard, 1455 Bushwick, 409 Chauncey, 878 East 94th, and 269 Melrose. (Compl. ¶¶36-71.) It does not include detailed allegations regarding the other four of nine Subject Properties: 146 Jefferson, 82 Madison, 724 Madison, and 12 Agate. The Complaint also identifies six additional properties described as "part of a larger conspiracy to defraud American Home." (Id. ¶13.)

3. Of course, the distinction between Rules 12(b) (1) and 12(b) (6) makes little practical difference for assessing the RICO standing issues, as the standards for both rules are identical. Moore, 189 F.3d at 169 n.3. That said, there is some significance to the distinction between the rules because a dismissal under Rule 12(b) (1) divests a district court of original jurisdiction over the federal claims and leads to an automatic dismissal of pendent state claims. A dismissal under Rule 12(b) (6) is a dismissal for failure to state a claim, not for lack of jurisdiction, and therefore a district court may, if it chooses, exercise supplemental jurisdiction over remaining state claims. See Lerner, 318 F.3d at 128.

4. Tellingly, in the factual background section of its memorandum of law, Plaintiff explains how defendants allegedly benefitted from the "criminal enterprise by virtue of the increased business generated," but Plaintiff does not describe any injury that it experienced. (Pl's Mem. Opp. Dupont Funding Mot. at 6.)

5. Likewise, Plaintiff's arguments regarding the expenses of servicing defaulted loans and the legal fees it faces are unavailing.

6. Having dismissed Plaintiff's RICO claims under Rule 12(b) (6), it is unnecessary for the Court to consider the 12(b) (1) or 9(b) motions. ▨

---

**U.S. · SDNY** **EMPLOYMENT**

# Partial Final Judgment Denied on Discrimination, Backloading Rulings as to Plan Violating ERISA

[Footnotes Deleted for Publication]

**District Judge Shira A. Scheindlin**

IN RE CITIGROUP PENSION PLAN ERISA LITIGATION, 05 Civ. 5296, Decided 04/04/07—

Appearances

For Plaintiffs: Edgar Pauk, Esq.
New York, New York

Brad N. Friedman, Esq.
Milberg Weiss Bershad & Schulman, LLP
New York, New York

William D. Frumkin, Esq.
Sapir & Frumkin LLP
White Plains, New York

Richard S. Schiffrin, Esq.
Joseph H. Meltzer, Esq.
Edward W. Ciolko, Esq.
Schiffrin & Barroway, LLP
Radnor, Pennsylvania



Southern District

Judge Scheindlin

cases." The decision whether to grant an interlocutory appeal from a district court order lies within the district court's discretion.

"In regard to the first prong, the 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." The question must also be "controlling" in the sense that reversal of the district court's order would terminate the action, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome.

As to the second prong, the "substantial ground for a difference of opinion" must arise out of a genuine doubt as to whether the district court applied the correct legal standard in its order. The requirement that such a substantial ground

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Michael T. Dolan,<br><br>          Plaintiff,<br><br>-against-<br><br>Fairbanks Capital Corporation, a Utah Corporation, and PMI Mortgage Insurance Company, Walnut Creek, CA<br><br>          Defendants. | Affirmation in Support of Defendant Fairbanks Capital Corporation Motion to Dismiss the Third Amended Complaint<br><br>03-CV-3285 (DRH)(MLO) |

TED ERIC MAY an attorney duly admitted to practice before this Court, affirms the following to be true under penalties of perjury:

1.    I am a member of the firm of Sheldon May & Associates, attorneys for defendant Fairbanks Capital Corporation (the other related defendants which we represented having had the portions of the action directed against them dismissed on prior motions).

2.    This affirmation is submitted in support of a motion to dismiss the third amended complaint (the fourth complaint if one counts the original complaint) as to Fairbanks.

3.    Leave of the Court was granted to make this motion by order dated April 2, 2007; a copy of which is annexed.

4.    With respect to the causes of action based upon claimed violations of the Truth in Lending Act and the Real Estate Settlement Procedures Act, which the Court did not specifically pass upon in its prior decisions, leave is requested of this Court permitting defendant FCC to move for summary judgment dismissing these claims. It has recently been learned by the undersigned that the co-defendant PMI Mortgage Insurance

did not, in fact, issue the mortgage insurance on this loan during the pertinent periods of time. In fact Balboa Life and Casualty Company (a non-party) did.  But proof of this cannot, as we understand it, be raised on a motion such as the instant motion, which is for dismissal for legal insufficiency for it requires proof of these facts. The undersigned cannot affirm these facts which are based upon information furnished by FCC and beyond the undersigned's personal knowledge.


Dated: April 26, 2007
      Rockville Centre, New York

Ted Eric May, Esq.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| MICHAEL T DOLAN,<br><br>Plaintiff,<br><br>-against-<br>FAIRBANKS CAPITAL CORP. A Utah corporation, FAIRBANKS CAPITAL HOLDING CORP.,a Delaware corporation, THOMAS D. BASMAJIAN and his officers, employees and agents, PMI MORTGAGE COMPANY, Walnut Creek, CA,<br><br>Defendants. | File No. 03-CV-3285<br>(DRH) (JHO)<br><br>Affidavit of Service |
|---|---|

I, the undersigned, hereby certify that on April 26, 2007, I caused a true and correct copy of the Memorandum of Law and Affirmation in Support of Motion of Defendant Fairbanks Capital Corporation to Dismiss Third Amended Complaint, to be served by Federal Express and by First Class Mail on the parties identified below:

Michael T. Dolan (Plaintiff pro se)
21 Kent Place
Smithtown, New York 11787

O'Melveny & Myers, LLP (Defendant PMI)
7 Times Square
New York, New York 10036

Kara Loewenstein

Sworn to before me this
26 day of April, 2007

Notary Public

Ted Eric May
Notary Public, State of New York
Registration No. 02MA5087205
Qualified in Nassau County
Commission Expires October 27, 2009