**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
MICHAEL T. DOLAN,

                      Plaintiff,

   - against -

FAIRBANKS CAPITAL CORPORATION, a
Utah corporation, PMI MORTGAGE
INSURANCE COMPANY, WALNUT CREEK,
CA,

                      Defendants.
----------------------------------------------------------X

**REPORT &
RECOMMENDATION**

CV 03-3285 (DRH) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**    **PRELIMINARY STATEMENT**

This matter was referred to me by District Judge Hurley for a Report and Recommendation on Defendant Fairbanks Capital Corporation's ("FCC") motion to dismiss the Pro Se Plaintiff's Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

In order to arrive at a recommendation, it was necessary for me to review the extensive chronology of this case, and particularly the prior motions to dismiss, so that the current motion could be placed in context. Therefore, I reviewed the pleadings as well as the following documents: (1) FCC's moving papers [DE 104]; (2) Pro Se Plaintiff Michael T. Dolan's opposition papers [DE 105]; (3) FCC's counsel's affirmation in further support of its motion to dismiss [DE 106]; (4) Judge Hurley's August 16, 2005 Order, granting in part and denying in part Defendants FCC and Thomas Basmajian's motions to dismiss the Amended Complaint, and granting Plaintiff further leave to file a Second Amended Complaint [DE 44]; and (5) Judge

Hurley's December 15, 2006 Order, granting in part and denying in part Defendants FCC and PMI Mortgage Insurance Company's motion to dismiss the Second Amended Complaint, and granting Plaintiff further leave to file a Third Amended Complaint [DE 75].

Having concluded my consideration of the instant motion and the prior history of this case, and for the reasons stated below, I respectfully recommend to District Judge Hurley that FCC's motion to dismiss the Third Amended Complaint be DENIED.

## II. BACKGROUND

### A. The Original Complaint

On July 7, 2003, Plaintiff Pro Se and former plaintiff Donna M. Dolan commenced this action pursuant to the "USA Patriot Act of 2001" against FCC and "all affiliated financial services or monetary organizations functioning for or associate (sic) and staff" [DE 1]. By Memorandum of Decision and Order dated April 23, 2004, Judge Hurley dismissed the Complaint without prejudice and gave Plaintiff Pro Se permission to file an Amended Complaint within thirty (30) days [DE 11]. The Court warned that "[f]ailure to address the pleading concerns enunciated in this order may result in dismissal with prejudice." *Id.*

### B. The Amended Complaint

On May 24, 2004, Plaintiff Pro Se filed an Amended Complaint, again naming FCC as a Defendant as well as adding three additional Defendants: Fairbanks Capital Holding Corporation ("FCHC"), Thomas D. Basmajian, and PMI Mortgage Insurance Company ("PMI") [DE 12]. The Amended Complaint asserted eleven causes of action under the Patriot Act, the Clayton and Sherman Acts, the Fair Credit Reporting Act ("FCRA"), the Federal Trade Commission Act ("FTCA"), the Fair Debt Collection Practices Act ("FDCPA"), the Real Estate Settlement and

Procedures Act ("RESPA"), the RICO statute, and various civil rights laws.

The thrust of the Amended Complaint was that FCC, a company servicing various mortgage loans (including Plaintiff's), committed various acts of fraud with respect to "consumers" generally. For example, Plaintiff alleged that FCC failed to post customers' timely mortgage payments, charged consumers fraudulent fees, engaged in dishonest and abusive tactics to collect debts, and reported inaccurate consumer payment information to credit bureaus. Plaintiff also alleged that FCC intentionally lapsed customers' insurance coverage, which then allowed PMI to issue new policies, thereby "force placing" such insurance coverage upon consumers. As Judge Hurley noted, "the *only* specific allegation as to Plaintiff in the Amended Complaint" was that FCC acquired the right to service Plaintiff's residential mortgage in November 2000 and continued to do so until July 2003 [DE 75 at 3 (citing Am. Compl. ¶ 6)].

In January 2005, all four Defendants moved to dismiss the Amended Complaint, pursuant to Federal Rule 12(b)(6). By Memorandum of Decision and Order dated August 16, 2005 [DE 44], Judge Hurley: (1) granted the motions by FCHC and Basmajian to dismiss the Amended Complaint in its entirety as against them; (2) granted PMI's motion to dismiss the Amended Complaint with respect to all of Plaintiff's claims against PMI *except* for Plaintiff's antitrust claims; and (3) granted FCC's motion to dismiss the Amended Complaint with respect to all of Plaintiff claims against FCC *except* for Plaintiff's RESPA and antitrust claims. Thus, only Plaintiff's RESPA claim against FCC and his antitrust claims against both FCC and PMI survived the motion to dismiss. The Court granted Plaintiff leave to amend his FDCPA claims against FCC and to amend his fraud and RICO claims against all Defendants.

3

C.  **The Second Amended Complaint**

On March 2, 2006, Plaintiff timely filed his Second Amended Complaint against all four Defendants [DE 58]. Plaintiff asserted RICO claims, antitrust claims, violations of the FDCPA, violations of RESPA, violations of the Truth in Lending Act ("TILA"),[1] and various state law claims.

In June 2006, FCC and PMI moved to dismiss the Second Amended Complaint pursuant to Federal Rule 12(b)(6). In its Memorandum of Decision and Order dated December 15, 2006 [DE 75], the Court noted that this new pleading "raises many, if not all, of the same allegations asserted in his previous complaint" (DE 75 at 4), the thrust of which was that FCC and PMI "conspired to extract mortgage payments from [him] through abusive, unlawful and deceptive loan servicing practices." 2d Am. Compl. ¶ 10. Judge Hurley denied these motions to dismiss, with the two exceptions described below. Accordingly, upon the Court's disposition of the Defendants' motions to dismiss, the following claims remained viable: (1) Plaintiff's claims against both FCC and PMI under RICO (including claims based on extortion and loan sharking as well as conspiracy claims), antitrust claims, and violations of the TILA; and (2) Plaintiff's claims against FCC for violations of RESPA and various state laws.

Judge Hurley did, however, dismiss Plaintiff's fraud-based RICO claims against PMI and FCC because Plaintiff failed to plead the circumstances surrounding such alleged fraud with the particularity required by Federal Rule 9(b). The Court also dismissed Plaintiff's FDCPA claim

---

[1] Plaintiff's TILA claims were raised for the first time in the Second Amended Complaint, and no permission to assert such claims was requested. Because none of the Defendants made an application to dismiss this claim, however, and because Judge Hurley's preliminary review of the claim indicated that it was properly pled, the Court took no action with respect to this claim [DE 75 at 20-21].

4

against FCC because the Second Amended Complaint failed to allege that FCC was a "debt collector" within the meaning of the FDCPA.[2]

In granting Plaintiff further leave to amend "for the limited purpose of curing these [two] defects," *id.* at 21-22, Judge Hurley turned to Plaintiff's fraud-based RICO claims against both FCC and PMI and directed Plaintiff "to specifically identify any statement, whether oral or in writing, which he claims was fraudulent, allege where and when the statement was made, and identify which defendant made the statement." *Id.* at 22. With respect to Plaintiff's FDCPA claim against FCC, the Court directed Plaintiff to "specifically allege whether or not his loan was in default when acquired by FCC." *Id.* The Court expressly cautioned Plaintiff that "failure to address the pleading concerns enunciated in this order may result in dismissal of his fraud-based RICO claim and his FDCPA claim with prejudice." *Id.*

### D.  The Third Amended Complaint and Present Motion

On January 12, 2007, Plaintiff timely filed his Third Amended Complaint against FCC and PMI [DE 76]. The Third Amended Complaint addresses the two directives given by Judge Hurley in the December 15, 2006 Order, and its allegations relate exclusively to Plaintiff's fraud-based RICO claim against both FCC and PMI as well as Plaintiff's FDCPA claim against FCC.[3]

---

[2]The Court dismissed all claims made in the Second Amended Complaint against Defendants FCHC and Basmajian in their entirety, and instructed Plaintiff that his amended pleading should name only FCC and PMI as Defendants [DE 75 at 22].

[3]Plaintiff's Third Amended Complaint does not specifically re-allege causes of action for violations of RICO (based upon extortion and loan sharking), RICO conspiracy, antitrust laws, the TILA, RESPA, or the various state laws – allegations that Judge Hurley found were adequately pled in the Second Amended Complaint. Because the Court granted Pro Se Plaintiff leave to submit a Third Amended Complaint for the "limited purpose" of curing the defects with his fraud-based RICO claim against both FCC and PMI, and his FDCPA claim against FCC, there is some likelihood that the Pro Se Plaintiff understood this directive to mean that the third

Presently before the Court is FCC's motion to dismiss the Third Amended Complaint pursuant to Federal Rule 12(b)(6).

**III.   STANDARD OF REVIEW**

A court may grant a motion to dismiss for failure to state a claim under Rule 12(b)(6) only when "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Levitt v. Bear Stearns & Co.*, 340 F.3d 94, 101 (2d Cir. 2003) (internal quotations and citations omitted). In reviewing such motions, a court must accept the allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). On a motion to dismiss, the function of a court is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). "The issue is not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to support the claims." *Muzio v. Incorp. Vill. of Bayville*, No. CV-99-8605, 2006 WL 39063, at *3 (E.D.N.Y. Jan. 3, 2006) (citing *New v. Ashcroft*, 293 F. Supp. 2d 256, 257 (E.D.N.Y. 2003)). Where, as here, the plaintiff proceeds *pro se*, the court is obliged to construe his pleadings liberally. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

A court, however, need not accept as true mere "conclusions of law or unwarranted deductions of fact" when deciding a motion to dismiss under Rule 12(b)(6). *First Nationwide*

---

amended pleading was to address only the issues the Court raised in its December 2006 Decision and Order. Therefore, I respectfully recommend that the surviving allegations of the Second Amended Complaint be read together with the Third Amended Complaint and that the surviving claims not be considered abandoned.

*Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994); *see also Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (noting that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss") (internal alteration excluded) (quoting *Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000)). A plaintiff's burden to set forth the grounds of his "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, __ US __, __, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (internal alteration and citation omitted). Rather, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Court remains mindful, however, that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, __ U.S. __, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam)).

In deciding a motion to dismiss pursuant to Federal Rule 12(b)(6), a court must look to the allegations on the face of the complaint, but may also consider "[d]ocuments that are attached to the complaint or incorporated in it by reference. . . ." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Gillingham v. GEICO Direct*, No. 06-CV-2915, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (noting that a court considering a motion to dismiss "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint") (internal quotation marks omitted).

## IV. DISCUSSION

### A. Fraud-Based RICO Claims

To state a valid RICO claim, a plaintiff must allege: (1) a violation of 18 U.S.C. § 1962; (2) an injury to business or property; and (3) causation of the injury by the violation. *See Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir. 1996). In order to establish a violation of Section 1962, a plaintiff must prove a "pattern of racketeering activity." *Id.* (quoting 18 U.S.C. § 1962). Section 1961(1) defines "racketeering activity" as certain criminal acts under state and federal law, including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. *See Pinnacle*, 101 F.3d at 904 (noting that "racketeering activity" includes "conduct indictable under various provisions within Title 18 of the United States Code, including mail and wire fraud"). In order to plead a "pattern," a plaintiff must plead at least two predicate acts of racketeering activity. 18 U.S.C. § 1961(5).

In his December 15, 2006 Order, Judge Hurley found that Plaintiff's Second Amended Complaint contained sufficient allegations to support "extortion" and "loan sharking" as predicate acts upon to base Plaintiff's RICO claims [DE 75 at 8-9]. In addition, the Court noted that the Second Amended Complaint could be inferred as attempting to predicate a RICO claim on allegations that FCC and PMI engaged in mail fraud by "fraudulently extract[ing] inflated and false fees from [Plaintiff] under the threat of foreclosure," when "[p]resumably, these payments were demanded via mail." *Id.* at 9. The Court found, however, that Plaintiff failed to allege fraud with the particularity required by Federal Rule 9(b). *See Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir. 1999) (noting that the requirement in Federal Rule 9(b) that fraud allegations be pled with particularity applies to RICO claims for which fraud is the predicate

8

illegal act). In particular, the Court noted that RICO claims based on mail and wire fraud "should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993).

This particularized pleading requirement applies to *pro se* litigants as well as those represented by counsel. *See, e.g.*, *Rivera v. Golden Nat'l Mortgage Banking Corp.*, No. 04 Civ. 4545, 2005 WL 1514043, at *3 (S.D.N.Y. June 27, 2005) ("[T]he Court is also aware that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law.") (quoting *Iwachiw v. N.Y. City Bd. of Educ.*, 194 F. Supp. 2d 194, 204 (E.D.N.Y. 2002)). Judge Hurley granted Plaintiff leave to amend his fraud-based RICO allegations specifically to comply with Federal Rule 9(b) [DE 75 at 11].

To plead claims of mail and wire fraud sufficiently, Plaintiff must establish: (1) the existence of a scheme to defraud; (2) the use of United States mails or interstate wire communications to further that scheme; and (3) evidence that FCC did so with a specific intent to defraud. *Am. Arbitration Ass'n, Inc. v. Defonseca*, No. 93 Civ. 2424, 1996 WL 363128, at *9 (S.D.N.Y. June 28, 1996); *see also Mathon v. Feldstein*, 303 F. Supp. 2d 317, 323 (E.D.N.Y. 2004). With respect to the first prong, "the complaint must allege the existence of a fraudulent scheme with the requisite specificity," so that Plaintiff must "specify what statements were made, who made them, when and where, and the respect in which those statements were fraudulent." *Am. Arbitration Ass'n, Inc.*, 1996 WL 363128 at *9. Regarding the second prong, "there is no need to specify the time and place of each mail or wire communication as long as the mechanics of the underlying scheme are pled with particularity." *Id.* Plaintiff, however, "must specifically

9

allege the nature of each mail or wire communication, and identify the role of the communications in furthering defendants' fraudulent scheme." *Id.*

   1. **Mail Fraud Allegations**

FCC asserts that the Third Amended Complaint does not contain sufficiently particularized allegations of mail fraud. Def. Mem. at 7-10. Based upon a review of the Third Amended Complaint, the Court notes that Plaintiff sets forth the following items as alleged instances of mail fraud:

   (A) FCC "[d]emanded payment by use through mail." 3d Am. Compl. ¶ 7.

   (B) On September 24, 2002, Plaintiff and FCC entered into a forbearance agreement, which stated that Plaintiff owed $87,567.71 on his mortgage, and provided that so long as Plaintiff made timely payments pursuant to a schedule set forth in the agreement, the foreclosure of Plaintiff's home would be held in abeyance. *Id.*, Ex. 5. Plaintiff alleges that the amount of arrears stated in this forbearance agreement ($87,567.71) was "a complete falsehood." *Id.* ¶ 9. Plaintiff further alleges that this agreement was mailed to his home. *Id.*

   (C) An August 23, 2003 letter, which was mailed from FCC to the New York State Attorney General, allegedly contained a false statement that "[a]t the time of transfer [of Plaintiff's loan from FCC to Whilshire Credit Corporation], Mr. Dolan's loan was 32 months delinquent." *Id.* ¶ 14, 15, Ex. 11.

   (D) A seventeen-page loan activity statement, which was attached to the August 23, 2003 letter mailed from FCC to the New York State Attorney General, fraudulently failed to reflect Plaintiff's November or December 2000 payments. *Id.* ¶ 14, 16, Ex. 11.

   (E) An escrow statement dated October 29, 2003, which was mailed from FCC to Plaintiff, fraudulently failed to reflect Plaintiff's December 2000 payment, which Plaintiff alleges negatively affected his "mortgage amortization, escrow and default status" as well as his credit. *Id.* ¶ 13, Ex. 9.

   (F) A "Key Loan Transactions" spreadsheet, which was attached to a November 10, 2003 letter mailed from FCC to Plaintiff, allegedly: (i) did not reflect Plaintiff's November 2000 payment, and (ii) demonstrated that "FCC double-billed Plaintiff

on June 21, 2001 for insurance on a force-placed policy." *Id.* ¶ 14, 21, 34, Ex. 10.[4]

Allegation (A) fails to sufficiently particularize when or where payments were "demanded" of Plaintiff through the mail system, and fails to specify the fraudulent nature of these demands. Accordingly, this allegation does not meet Plaintiff's burden under Rule 9(b) and cannot survive as a viable allegation of mail fraud.

Allegation (B) specifically asserts that the amount of arrears detailed in the September 24, 2002 forbearance agreement between Plaintiff and FCC is false, and that this agreement was used as part of a scheme to extort money from Plaintiff under threat of foreclosure. Thin though it may be, I find that this allegation of fraud is sufficiently particularized and makes a connection to an overall scheme by FCC to wrongfully collect money from Plaintiff. Accordingly, this allegation is sufficient to withstand a motion to dismiss.

Allegation (C) specifies the alleged false statement (i.e., that Plaintiff's loan was 32 months delinquent when the servicing of that loan was transferred from FCC to Wilshire), as well as the "who," "where," and "when" elements with respect to this statement. Plaintiff has also sufficiently alleged that this statement was made to "cover up the frauds in servicing, and [to] try to degrade and destroy Plaintiff's credibility by slander to throw off authorities . . . and to dissuade authorities from pursuing Plaintiff's complaints," 3d Am. Compl. ¶ 15, thus furthering FCC's alleged scheme. Accordingly, this allegation is sufficient to withstand a motion to dismiss.

---

[4] Plaintiff's allegations of fraud in paragraphs 7, 10, 12, 18, 39, and 49 of the Third Amended Complaint cannot suffice to establish mail or wire fraud because Plaintiff fails to allege the use of the United States mail service or a telephone or other wire communication. *See Rivera*, 2005 WL 1514043 at *3.

Allegations (D), (E), and (F) relate to statements Plaintiff claims are assertedly false by omission in three separate documents prepared by FCC that allegedly fail to reflect payments Plaintiff made in November and/or December 2000. These allegations are pled with adequate particularity, and Plaintiff sufficiently alleges a connection between these fraudulent omissions – which indicate FCC's attempt to cover up its failure to properly apply these payments to his loan – and an overall fraudulent scheme by FCC. Accordingly, these allegations are sufficient to sustain Plaintiff's claim based upon mail fraud.

For the reasons stated above, Plaintiff has pleaded a claim for mail fraud with sufficient particularity. Accordingly, I respectfully recommend that FCC's motion to dismiss Plaintiff's RICO claim based upon mail fraud be DENIED.

### 2. Wire Fraud Allegations

FCC does not specifically address the adequacy of the allegations of wire fraud contained in the Third Amended Complaint. Plaintiff sets forth the following as alleged instances of wire fraud: (1) FCC "threaten[ed] Plaintiff over the phone, 'to pay them or FCC will foreclose on you and sell your house'" (3d Am. Compl. ¶ 7); (2) the forbearance agreement between FCC and Plaintiff, entered into on September 24, 2002, contained false arrears amounts and was faxed to Plaintiff's home (*Id.* ¶ 9); (3) FCC's customer service representatives "continuously" made "false statements and demands" for payments under threat of foreclosure (*Id.* ¶ 11); and (4) in February 2002, FCC customer services representatives stated that FCC had falsely and intentionally raised the amount of arrears owed "to keep [Plaintiff] from refinancing" (*Id.* ¶ 45).

Without exception, Plaintiff fails to identify specific dates on which these alleged telephone conversations (and fax transmissions) took place or where the phone calls took place.

*See Mathon*, 303 F. Supp. 2d at 324. With respect to the allegations concerning telephone calls, Plaintiff fails to identify the customer representatives with whom he spoke. The pleading requirements of Rule 9(b) are designed to provide a defendant with sufficient information to formulate a defense. FCC, who makes the instant motion to dismiss, is entitled to some indication as to the identities of the customer service representatives mentioned or, if nothing else, the dates of the telephone calls so that it might determine which representatives were on duty. *See Am. Arbitration Association, Inc.*, 1996 WL 363128 at *10; *Mathon*, 303 F. Supp. 2d at 323 ("To plead wire fraud with particularity as required by Fed. R. Civ. P. 9(b), the plaintiff must identify the number of telephone calls that were made, the dates on which they were made, the identity of the persons making them, and the nature of the alleged misrepresentation.") (citing *Qantel Corp. v. Niemuller*, 771 F. Supp. 1361, 1369 (S.D.N.Y. 1991)). Plaintiff has not done so here, despite having been given multiple opportunities to provide this information. Accordingly, Plaintiff's allegations regarding his telephone conversations with FCC's customer service representatives cannot sustain a claim for wire fraud.

On the other hand, Plaintiff's allegation with respect to the September 24, 2002 forbearance agreement between Plaintiff and FCC, which was faxed to Plaintiff's home, is sufficiently particularized and makes a connection to an overall intentionally fraudulent scheme by FCC to wrongfully collect money from Plaintiff. Accordingly, this allegation is sufficient to withstand a motion to dismiss the wire fraud claim.

For these reasons, Plaintiff has pleaded a claim for wire fraud with sufficient particularity as to the September 24, 2002 forbearance agreement faxed to Plaintiff's home. Accordingly, I respectfully recommend that FCC's motion to dismiss Plaintiff's RICO claims based upon wire

13

fraud be DENIED.

### 3. FCC's Arguments as to the Sufficiency of Plaintiff's Allegations of Damages

FCC contends that the Third Amended Complaint fails to specify the "actual harms" suffered as a result of FCC's "clearly defined acts." Def. Mem. at 5. To the contrary, the Court finds that Plaintiff specifically alleges that the September 24, 2004 forbearance agreement between FCC and Plaintiff contained a false statement (e.g., that Plaintiff owed $87,567.71 of arrears) and that Plaintiff paid $15,000 to FCC under threat of foreclosure. 3d Am. Compl. ¶ 9, 10, Ex. 6. FCC's reliance on *American Home Mortgage Corporation v. UM Securities Corporation*, 05 Civ. 2279 (RCC), N.Y.L.J., Apr. 20, 2007 at 27 (S.D.N.Y. Apr. 9, 2007), a case in which the plaintiff mortgage lender brought RICO claims against the defendant mortgage broker based upon an alleged conspiracy by the defendant to defraud the plaintiff by fraudulently obtaining loans for nine different properties, is misplaced here. In *American Home Mortgage Corporation*, the court found the plaintiff had failed to allege that the purported fraud proximately caused any loss sustained by the plaintiff, and further failed to allege any facts that would allow the court "to assess the extent of the misrepresentations or the amount of the loss." *Id.* Here, by contrast, Plaintiff has specifically identified several alleged misrepresentations and fraudulent omissions made by FCC and has articulated that the alleged fraudulent scheme caused him to pay at least $15,000 in order to avoid foreclosure.

### B. <u>FDCPA Claims</u>

The FDCPA prohibits the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. By its terms, the FDCPA applies only to debt collectors. *See id.* § 1692b ("Any debt collector communicating

with any person other than the consumer for the purpose of acquiring location information about the consumer shall . . . "). A debt collector, in turn, is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). The FDCPA expressly excludes from this definition creditors seeking to collect their own debts. *Id.* § 1692a(6)(A). Moreover, an assignee of a debt is only treated as a debt collector if the debt sought to be collected was in default at the time it was obtained by such person. *Id.* § 1692a(6)(F)(iii).

The Court has already found that the allegations in Plaintiff's Second Amended Complaint, which are largely echoed in the Third Amended Complaint, were sufficiently particularized to allege a violation of the FDCPA against FCC [DE 75 at 13]. Specifically, Plaintiff alleges, *inter alia*, that FCC, as the entity which began servicing Plaintiff's mortgage on November 22, 2000, falsely represented the character, amount, or legal status of his debt, wrongfully threatened to foreclose, and communicated or threatened to communicate false credit information. *See, e.g.*, 3d Am. Compl. ¶ 7 (alleging that FCC did not apply Plaintiff's November 22, 2000 payment to the note and mortgage and did not apply Plaintiff's December 2000 payment to the mortgage or real estate taxes, thereby yielding the false impression that Plaintiff was in arrears);¶ 8, 13 (alleging that FCC threatened Plaintiff with foreclosure if he did not make payments on fraudulently created arrears); ¶ 39 (alleging that FCC communicated false information regarding Plaintiff's arrears, delinquencies, and foreclosures to various credit rating agencies, which negatively impacted his credit score); *see also TMS Mortgage, Inc., d/b/a The*

15

*Money Store v. Michael T. Dolan*, Index No. 26575-01 (Sup. Ct. Suffolk County 2005) (Willen, JHO) (finding FCC used false and deceptive means to collect Plaintiff's debt) (copy attached to Second Amended Complaint).

In response to Judge Hurley's direction to specify whether Plaintiff's loan was in default at the time it was transferred to FCC, thus making FCC a "debt collector" within the meaning of the FDCPA, Plaintiff alleges in the Third Amended Complaint that his "loan was in default" and that on August 11, 2000, he had entered into a forbearance agreement with The Money Store ("TMS"), which was the holder and owner of the note and mortgage on Plaintiff's home. 3d Am. Compl. ¶ 4, Ex. 1. Plaintiff attached to the Third Amended Complaint a copy of the "Default Forbearance Agreement" between him and TMS. That document reflects that Plaintiff was indebted to TMS in connection with loan number 40295412 and that the loan was in default. It also sets forth a monthly payment schedule running from August 14, 2000 through August 25, 2002 – a schedule that Plaintiff would have to meet in order to avoid foreclosure. *Id.* at Ex. 1. Plaintiff further alleges that FCC "took over the servicing" of his mortgage from TMS on November 22, 2000, and that Plaintiff's loan was still in default at the time. *See id*. ¶ 4. Plaintiff attached to the Third Amended Complaint a copy of a November 7, 2000 letter from TMS to Plaintiff stating that the servicing of his mortgage loan (referenced as "Loan #0040295412") "is being transferred from HomEq-The Money Store to Fairbanks Capital Corp." as of November 22, 2000. *Id.* at Ex. 1.

FCC asserts that the Third Amended Complaint fails to specifically allege that Plaintiff's loan was in default when FCC acquired it. According to FCC, Plaintiff's allegation that his loan was in default and thus the subject of the forbearance agreement with TMS does not constitute an

16

allegation "of FCC's knowledge of Plaintiff['s] default when [FCC] began servicing [Plaintiff's] accounts." Def. Mem. at 4. FCC argues that Plaintiff has failed to set forth "[w]hy FCC should be considered bound by what was in an agreement to which it was not a party." *Id.* The Court rejects this argument as meritless. Based on the allegations on the face of the Third Amended Complaint and the documentation attached to that pleading, it is clear that Plaintiff has alleged that his loan defaulted, that he entered into a forbearance agreement with TMS to prevent foreclosure on his home, and that on November 22, 2000, the servicing of his loan was assigned to FCC. Moreover, the loan number on the August 11, 2000 forbearance agreement is identical to the loan number referenced in the November 7, 2000 letter informing Plaintiff that FCC was taking over the servicing of his loan. The Court rejects FCC's contention that it was unaware of the default status of a loan that it began servicing in November 2000 simply because it "was not a party" to the August 11, 2000 forbearance agreement between TMS and Plaintiff.

Therefore, the factual allegations set forth in and documentation attached to the Third Amended Complaint are sufficient to satisfy the pleading requirement that FCC was a "debt collector" within the meaning of the FDCPA. *See Farber v. NP Funding II L.P.*, No. CV-96-4322, 1997 WL 913335, at *3 (E.D.N.Y. Dec. 9, 1997) ("Courts interpret [the FDCPA] to mean that those who are assigned a defaulted debt are not exempt from the FDCPA if their principal purpose is the collection of debts or if they regularly engage in debt collection"); *Cirkot v. Diversified Fin. Sys., Inc.*, 839 F. Supp. 941, 944-45 (D.Conn. 1993) (finding defendant to be a "debt collector" under FDCPA because it acquired the debt after default and its principal purpose was the provision of debt collection services) (collecting cases).

Because Plaintiff has sufficiently alleged FCC was a "debt collector" and has made sufficiently particularized allegations that FCC violated the FDCPA, I respectfully recommend to Judge Hurley that FCC's motion to dismiss this cause of action be DENIED.

### C. FCC's Motion to Strike

FCC maintains that "[t]here are substantial portions of the complaint which are irrelevant to Plaintiff's claims; on their face without even a claim to be substantiated by any knowledge of Plaintiff and inserted solely to prejudice," and asks the Court to strike certain paragraphs from the Third Amended Complaint. Def. Mem. at 12-13.

Federal Rule 12(f) permits the court, upon timely motion or its own initiative, to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored, and should be granted only when "there is a strong reason for doing so." *M'Baye v. World Boxing Ass'n*, No. 05 Civ. 9581, 2007 WL 844552, at *4 (S.D.N.Y. Mar. 21, 2007) (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)). A party seeking to strike portions of the complaint must "state with particularity the grounds for [its] motion and set forth the nature of relief or type of order sought." *Arias-Zeballos v. Tan*, No. 06 Civ. 1268, 2006 WL 3075528, at *9 (S.D.N.Y. Oct. 26, 2006) (internal quotation marks omitted). To prevail on such a motion, a defendant must demonstrate that: (1) no evidence in support of the allegations would be admissible; (2) the allegations are irrelevant; and (3) permitting the allegations to stand would prejudice the defendant. *M'Baye*, 2007 WL 844552 at *4 (quotation marks omitted).

FCC requests that the Court strike paragraphs "26 through 37 *inter alia*" and paragraph 41 of the Third Amended Complaint on the grounds that such paragraphs bear no relevance to

Plaintiff's claims in this action. Def. Mem. at 12-13. Applying the principle that "[a]llegations should be struck as irrelevant . . . only when they have no possible relevance . . . and are clearly prejudicial to" FCC, and mindful that the Court is required to view a *pro se* pleading leniently, *Garcia v. Court Employment Project (Cases)*, No. 95 Civ. 2623, 1995 WL 422266, at *2 (S.D.N.Y. July 17, 1995), I nonetheless respectfully recommend that the following allegations be struck from the Third Amended Complaint: (1) all but the first sentence of paragraph 30; (2) Paragraphs 31, 32, 36, and 37; and (3) all but the first sentence of paragraph 41.

## V. CONCLUSION

For all the reasons set forth in this Report, it is my recommendation to District Judge Hurley that FCC's motion to dismiss the Third Amended Complaint be DENIED. I further recommend the allegations specified in Section IV(C) herein be struck from the Third Amended Complaint.

**Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections.** *See also* **Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF, except in the case of a party proceeding** *pro se*. **A** *pro se* **party must file his/her objections in writing with the Clerk of the Court within the prescribed time period noted above. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Denis R. Hurley, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the (10) day period for filing**

objections. **Failure to file objections will result in a waiver of those objections for purposes of appeal.** *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED**.

Dated: Central Islip, New York
September 8, 2008

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge