UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

MICHAEL T. DOLAN,

                           Plaintiff,

                                                                 **MEMORANDUM & ORDER**
            v.                                                           13-CV-1552 (PKC)

SELECT PORTFOLIO SERVICING, Inc.,

                           Defendant.

-----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

       Before the Court is Defendant Fairbanks Capital Corporation's (now known as Select Portfolio Servicing ("SPS"))[1] motion for summary judgment on the claims remaining in this action, under the Real Estate Settlement Procedures Act ("RESPA") and New York's General Business Law § 349 ("NYGBL § 349").  There are no materially disputed facts in this case for purposes of the present motion, and the parties' dispute is based on the legal interpretation and effect of those facts.  Because the RESPA claim is not barred by *res judicata* or the "made-whole" doctrine, the Court denies SPS's motion with respect to that claim, and Dolan's other state-law claims Defendant did not move to dismiss.  The NYGBL § 349 claim, however, is dismissed because there is no evidence that SPS's actions were directed at, or affected, the public at large.

---

[1] The Clerk of Court is respectfully directed to amend the case caption to reflect Defendant's change of name.

*BACKGROUND*

Plaintiff Michael Dolan ("Dolan"), initially proceeding *pro se* but currently represented by pro bono counsel, asserted in this action federal claims of RICO, RICO conspiracy, antitrust, the Real Estate Settlement Procedures Act ("RESPA"), Fair Debt Collection Practices Act ("FDCPA"), Truth in Lending Act ("TILA"), and state law claims under New York's General Business Law § 349, and various common law claims.[2] All of Dolan's claims relate to a mortgage Dolan executed on his primary home in February 1998 and subsequent foreclosure proceedings that commenced against Dolan in October 2001, following his default on the mortgage.[3] Defendant SPS was the servicer, and not the holder, of Dolan's mortgage at all relevant times. The most pertinent facts for purposes of the present motion are as follows.

In the state foreclosure proceedings, initiated by the holder of Dolan's mortgage, The Money Store ("TMS"), Dolan was alleged to have defaulted on his mortgage. SPS was not a party to that action. Prior to and during the pendency of the foreclosure proceedings, Dolan entered into a series of forbearance agreements with TMS, but was unable to comply with the terms thereof. Dolan did not appear in the action to challenge the foreclosure. Through the foreclosure proceedings, Dolan's home was sold pursuant to a judgment of foreclosure, and ultimately ownership of the home was assigned to a non-party, one Anthony Rigole. Following the court-ordered sale of his home, Dolan appeared in the foreclosure action and moved to vacate the judgment and sale. He was granted an injunction and remained in possession of his home pending further proceedings.

---

[2] Dolan's remaining common law claims are for breach of contract, negligence, and breach of fiduciary duty.

[3] For the most recent full recitation of relevant facts, please see Judge Hurley's order on Defendant's last motion for summary judgment, dated March 13, 2013. (Dkt. 355.)

On April 18, 2005, the state court granted Dolan's motion to set aside the foreclosure, excused Dolan's default, and permitted him to "interpose an answer and assert counterclaims." The basis of the state court decision was that SPS, servicing agents for Dolan's mortgage—and, again not a party in that action—failed to properly credit Dolan's account in excess of $10,000.00, because of inconsistent interest rates that resulted in inaccurate crediting to his account, and because the forbearance agreements Dolan entered into were oppressive and overreaching. (Dkt. 384-2 at 3.)

By permission of the state court, Dolan filed a verified answer denying the allegations in the foreclosure complaint and interposing three counterclaims against TMS,[4] alleging violations of NYGBL § 349 (unfair and deceptive business practices), breach of the duty of good faith and fair dealing, and misrepresentation. Those were the only affirmative defenses asserted by Dolan in the foreclosure proceeding.

Following a trial on the merits, on July 6, 2012, the state court issued an order generally finding in Dolan's favor and dismissing the foreclosure action with prejudice. (Dkt. 384-2.) The state court found that Dolan had established his counterclaims for misrepresentation and breach of the duty of good faith and fair dealing. (Dkt. 384-2 at 3–4.) The court, invoking its equitable powers, ordered that TMS reinstate the mortgage at the original principal amount at the then-current interest rate, and that "[a]ll other claimed arrears and accrued interest and penalties [were] deemed cancelled." (Dkt. 384-2 at 4.)

The state court, however, denied Dolan's GBL claim, finding that Dolan had failed to proffer any admissible evidence that TMS had engaged in any deceptive practices "on a

---

[4] Dolan did not interpose counterclaims against SPS.

widespread basis which affects consumers generally so as to support [Dolan's] claim for violation of the [NYGBL] § 349." (Dkt. 384-2 at 3–3.)[5]

I.      Federal Litigation

On July 7, 2003, while the foreclosure action was pending and nearly nine years to the day before the state court ruled on the foreclosure motion and Dolan's counterclaims, Dolan initiated the instant action. Dolan's initial complaint cited the "USA Patriot Act of 2001." Judge Hurley, to whom this matter previously was assigned, granted Dolan leave to amend the complaint. Dolan did so, on May 24, 2004, and asserted eleven causes of action against several parties related to Dolan's mortgage, including SPS, the only remaining defendant at this stage in the litigation.

After substantial motion practice, including the most recent summary judgment order issued by Judge Hurley (Dkt. 355, dated March 13, 2013), the only remaining claims are Dolan's claims pursuant to Section 2605(b), (c), and (e) of the RESPA, and state law claims under the NYGBL § 349, breach of contract, negligence, and breach of fiduciary duty. Defendant SPS now moves for summary judgment with respect to all of those remaining claims. SPS argues for summary judgment on the basis that (1) the "made whole" or "double recovery" doctrine bars further recovery; (2) Dolan's claims are barred by *res judicata*; and (3) with respect only to Dolan's GBL claims, that Dolan has failed to proffer adequate evidence of "consumer oriented" conduct to sustain a claim.

---

[5] To maintain a GBL claim, a plaintiff must offer evidence tending to show that the alleged conduct was "consumer oriented" in such a fashion or to such a degree as to have a "broader impact on consumers at large." *Crawford v. Franklin Credit Mgmt. Corp.*, 2014 WL 3377175, at *14, --- F.3d ---- (2d Cir. July 11, 2014) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995)).

Defendant's motion was fully briefed on January 10, 2014. The Court heard oral argument on the motion on September 17, 2014.

*DISCUSSION*

II.     Analysis

    A.     Availability of *Res Judicata* Argument

At the outset, Defendant asserts that Judge Hurley's summary judgment order was entered before the state court issued final judgment in the foreclosure action, and therefore Judge Hurley had no occasion to apply *res judicata* to Dolan's claims. As Dolan points out, this is inaccurate—Judge Hurley's order postdates the state court's final judgment, and Judge Hurley references it in his order. *Compare* Dkt. 355 (dated March 13, 2013) *with* Dkt. 384-2 (dated July 6, 2012). However, although Judge Hurley had the benefit of the state court judgment, Judge Hurley did not take into account that judgment in his opinion. Rather, Judge Hurley makes only a cursory reference to the state court judgment, and in no way relies on it as preclusive. (*See* Dkt. 355 at 7–9) (referencing the state court order dated July 6, 2012). Indeed, Judge Hurley's opinion does not once use the phrase "*res judicata*." Accordingly, although Dolan argues that Judge Hurley's prior opinion effectively renders the current motion moot (and indeed sanctionable), that is not so. This is especially true because, at the time of initial briefing on the prior motion for summary judgment, SPS did not have the benefit of the final state court decision, and the issue of *res judicata* arising from the state court foreclosure action was not fully before Judge Hurley.[6]

---

[6] It bears mention, however, that SPS *did* mention the state court decision in its *reply* in the summary judgment motion. That argument, however, was in response to *Dolan*'s argument that the order of the state court had preclusive effect or evidentiary value in the instant action with respect to Dolan. In part, SPS stated that the state court foreclosure action could not be used against it because it was not a party to the prior action and did not have a full and fair

5

Additionally, Dolan argues that Defendant ought to be judicially estopped from arguing *res judicata* because Defendant took a contrary position earlier in the litigation. Dolan points to Defendant's briefing on the prior summary judgment motion, in which Defendant argued that the state court foreclosure judgment had no preclusive effect *with respect to Defendant*. (Dkt. 383 at 11–12.) First, it is not a contrary position to argue that there is no preclusive effect of the foreclosure judgment to Defendant, but that there is such effect as to Dolan. SPS's arguments were merely that *res judicata* could not be applied as to it, because it was not a party to the prior action. Secondly, judicial estoppel does not apply because Judge Hurley never accepted Defendant's argument as to *res judicata*. Judicial estoppel only applies where "a party assumes a certain position in a legal proceeding, *and succeeds in maintaining that position.*" *Intellivision v. Microsoft Corp.*, 484 Fed. App'x 616, 618–19 (2d Cir. 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (emphasis added)). That did not occur here because there is no indication that Judge Hurley relied on Defendant's assertion with respect to *res judicata*. In any event, Defendant's prior position with respect to *res judicata* is not the same position as it maintains here, and therefore judicial estoppel does not apply.

B. <u>Res Judicata</u>

The Court, in considering the *res judicata* effect of a New York state court judgment, must apply the New York law of *res judicata*. *See Krember v. Chem. Constr. Corp.*, 456 U.S.

---

opportunity to litigate its claims. Moreover, SPS argued that the state court orders to that point were not final adjudications on the merits, and therefore did not apply for *res judicata* purposes. (Dkt. 349 at 4.) There was nothing improper about these arguments, and SPS was entitled to make them, as *res judicata* could not have been applied offensively as to SPS, who was not a party to the prior action. Furthermore, it is not now improper for SPS to argue that the state court foreclosure action could be used *against* Dolan, who *was* a party to the prior action. That is so because Dolan had a full and fair opportunity to litigate his claims in the prior action and was obviously a party therein. This issue is discussed further immediately below, but, in short, SPS is entitled to argue that *res judicata* applies to bar Dolan's claims here and is not judicially estopped or otherwise barred from so arguing.

461, 466 n.24 (1982).[7] Generally, in New York, "[t]he doctrine of res judicata precludes a party from litigating 'a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter.'" *Josey v. Goord*, 9 N.Y.3d 386, 389 (2007) (quoting *Matter of Hunter*, 4 N.Y.3d 260, 269 (2005)). Critically, New York, a permissive counterclaim jurisdiction, does not require a party to assert all counterclaims in the prior action, with one limited exception discussed below. *67-25 Dartmouth Street Corp. v. Syllman*, 29 A.D.3d 888, 889–90 (2d Dep't 2006).

Generally, under New York's permissive counterclaim rule, a party is not required to assert all counterclaims in the original action, and instead may assert those claims later in a separate action, in the appropriate forum of the plaintiff's choosing. *See* N.Y.C.P.L.R. § 3019(a) ("A counterclaim *may* be any cause of action in favor of one or more defendants.") (emphasis added). Accordingly, under New York law, a plaintiff may elect not to assert all counterclaims in the initial action without running into the *res judicata* bar in a subsequent action. To hold otherwise would have the effect of rendering New York a compulsory counterclaim jurisdiction, because any counterclaims not asserted would be barred in subsequent actions. *See Lopez v. Delta Funding Corp.*, 2000 U.S. Dist. LEXIS 22779 (E.D.N.Y. June 6, 2000) (quoting *Mason Tenders Dist. Council Pension Fund v. Messera*, 1996 WL 351250, at *10 (S.D.N.Y. June 26, 1996) ("[I]f res judicata barred a permissive counterclaim, the 'permissive' counterclaim would,

---

[7] That New York law governs is a critical factor. The rule of *res judicata* in federal courts differs from New York law in a critical respect. In the federal system, "[t]he doctrine of *res judicata*, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been raised in that action*.'" *See Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). As a result, federal law requires that a plaintiff bring all claims or counterclaims that can be brought in a single action, making it a compulsory counterclaim jurisdiction. On the other hand, and as discussed below, New York is a permissive counterclaim jurisdiction, and a plaintiff may elect to bring claims in separate actions under appropriate circumstances.

as a practical matter, become compulsory.")). Thus, New York's permissive counterclaim rule provides that "res judicata generally will not necessarily bar claims that could have been counterclaims in a prior action," *Eubanks v. Liberty Mortgage Banking, Ltd.*, 976 F. Supp. 171, 173 (E.D.N.Y. 1997), with one limited exception.

The exception to New York's permissive counterclaim rule bars a subsequent lawsuit that amounts to "an attack on a judgment" previously issued by the state court. *Beckford v. Citibank N.A.*, 2000 WL 1585684, at *3 (S.D.N.Y. 2000). Under this exception, a plaintiff will be barred from asserting a claim in a subsequent action where the plaintiff remained silent in the prior action, only to attack that judgment in a subsequent action on that same basis. *See Eubanks*, 976 F. Supp. at 173 ("Only a defendant who is silent in the first action and then tries to bring a second action that would undermine 'the rights or interests established in the first action' is barred under New York's res judicata rule.") (citing *Henry Modell and Co. v. Minister, Elders and Deacons of the Reformed Protestant Dutch Church*, 68 N.Y.2d 456, 462 n.2 (1986)); *see also Sweet Constructors, LLC v. Wallkill Med. Dev., LLC*, 106 A.D.3d 810 (2d Dep't 2013) ("New York's permissive counterclaim rule allows counterclaims to be raised through separate litigation even if interposed as a defense in prior litigation, as long as a party defendant does not remain silent in one action, then bring a second suit on the basis of a pre-existing claim for relief *that would impair the rights or interests established in the first action*.") (emphasis added). As a result, "New York's res judicata rule thus has a narrower effect on a defendant who then brings her claim in a separate action than it does on the plaintiff who brings successive claims that arise from the same transaction." *Id.*

Here, of course, Dolan is not attacking the judgment of the state court—Dolan *prevailed* in the state court action against TMS, the mortgagee to Dolan's mortgage. Dolan's cause of

action here would in no way impair the rights established between the parties in the prior action. Accordingly, it is plain that the New York law of *res judicata*, and the limited exception to the permissive counterclaim rule, does not bar Dolan's claims here.[8]

III. Defendant's Counterarguments

A. "Made Whole" Doctrine

Defendant argues that the "made whole" doctrine applies, and that Dolan therefore cannot "double recover" via this lawsuit. (Dkt. 380 at 8–9; Dkt. 385 at 2–4.) This argument fails. Dolan has not necessarily been made whole because Dolan's RESPA claims were not before the state court, and Dolan asserted no counterclaims against SPS in the state court action. RESPA provides for relief beyond the relief Dolan obtained in state court, relief which may be obtained from SPS, the mortgage servicer, from whom Dolan did not recover in the state court action. RESPA provides that a plaintiff may recover "any actual damages to the borrower" as well as "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f). Accordingly, Dolan may not have been made whole in the prior action to the extent that these damages are available to him, but were not present before nor awarded by the state court in the foreclosure action.

In the cases cited by Defendant relating to the "made whole" doctrine, the doctrine was applied to bar a plaintiff from double recovering *for the same claim*. In *Waehner v. Frost*, the court granted the defendant's motion to reduce the plaintiff's recovery against it by the amount

---

[8] Defendant did not challenge Dolan's other state-law claims on a basis other than *res judicata*, only challenging Dolan's NYGBL claim on the substantive basis that no evidence had been adduced with respect to the consumer-oriented nature of Defendant's conduct. Because the Court finds that the doctrine of *res judicata* does not apply to this action, the Court denies Defendant's motion with respect to Dolan's state law claims, other than his NYGBL § 349 claim, discussed *infra*.

plaintiff recovered in arbitration against another party in the same action and on the same claim. 770 N.Y.S.2d, 596 599 (N.Y. Sup. Ct. Saratoga Cnty. 2003). In *Whalen v. Kawasaki Motors Corp.*, 92 N.Y.2d 288, 292 (1998), the New York Court of Appeals set off a verdict as to one defendant in the amount that plaintiff recovered from another defendant *in the same case and on the same claim*. Nothing in these cases suggests that, merely because Dolan was successful on his counterclaims against TMS in a prior action, that Dolan is barred from recovering from SPS on a separate cause of action in another action.

Moreover, Dolan's recovery here, against SPS, who was not a party to the prior action, would not constitute the sort of duplicative or "windfall" recovery which is against New York public policy. The cases cited by Defendant demonstrate why this is so. Those cases, and the New York CPLR provisions to which they refer, illustrate the "collateral source rule," which "prohibits recovery of damages for losses which have been *replaced or indemnified by certain sources*." (Dkt. 380 at 8) (citing *Waehner*, 770 N.Y.S.2d at 599) (itself citing *Fisher v. Qualico Contr. Corp.*, 98 N.Y.2d 534, 537 (2002)) (emphasis added). In *Phelan v. Local 305 of United Ass'n of Journeymen*, 973 F.2d 1050 (1992), the Second Circuit noted that "[w]hen a plaintiff receives a payment from one source for an injury, defendants are entitled to a credit of that amount against any judgment obtained by the plaintiff as long as both payments *represent common damages*." *Phelan*, 973 F.2d at 1063 (emphasis added). Here, Defendant SPS was not adjudged to have caused the same common damages as TMS in the prior action. *See Twenty First Century L.P. I v. LaBianca*, (2001 WL 761163, at *5 (E.D.N.Y. May 2, 2001) ("A payment by any person made in compensation of a claim for a *harm for which others are liable as tortfeasors* diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether

10

or not it is so agreed at the time of payment or the payment is made before or after judgment.") (emphasis added).[9] Dolan's RESPA and common law claims may merit damages separate and apart from, or indeed beyond, those damages that were awarded against TMS in the foreclosure proceeding. In short, the "made whole" doctrine does not operate to bar Dolan's claims under these circumstances.

Moreover, the collateral source rule does not bar Dolan's recovery because SPS did not insure, nor is there any suggestion that it indemnified, TMS for the conduct in the prior litigation. Absent a showing that SPS contributed to the source of Dolan's recovery in the prior action, the collateral source rule does not apply. *See, e.g.*, *Oden v. Chemung Cnty. Indus. Dev. Agency*, 87 N.Y.2d 81, 85 (1995) ("The collateral source rule . . . is based on the premise that a negligent defendant should not, in fairness, be permitted to reduce its liability by the proceeds of insurance or some other source to which that defendant has not contributed.").

B. Privity

Defendant argues, although somewhat obliquely, that SPS was in privity with TMS at the time of the state court foreclosure action, and therefore the judgment of the state court foreclosure case applies to SPS. For Defendant's argument to prevail, Defendant would have to show that the present litigation therefore constitutes an impermissible "attack" on the state court judgment, which established the rights between the parties, *and* that SPS was a party to the prior action by way of its privity with TMS. *See Beckford v. Citibank N.A.*, 2000 WL 1585684, at *3 (S.D.N.Y. 2000); *Eubanks v. Liberty Mortgage Banking, Ltd.*, 976 F. Supp. 171, 173 (E.D.N.Y. 1997).

---

[9] Therefore, as discussed at oral argument, there may come a time when Defendant can argue that any recovery Dolan makes in this action should be offset against any damage award against Defendant. However, that time is not now, where the issues are whether Defendant faces any liability on any of Dolan's claims.

"To establish privity, 'the connection between the parties must be such that the interests of the nonparty can be said to have been represented in the prior proceeding." *Behette v. 122 Hoyt Street Corp.*, 26 Misc. 3d 1210(A) (Sup. Ct. N.Y. Cnty. 2010); *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277 (1970) (privity includes those "who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action"). *See Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 423 (S.D.N.Y. 2008) ("New York law provides that privity extends to parties 'who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action.'") (quoting *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270 (1970)).

Defendant could be right that SPS was in privity with TMS at the time of the state court action, but that is not dispositive of the instant motion for at least two reasons. First, Defendant has not established that SPS's interests were represented by TMS in the foreclosure action. After all, SPS was merely the servicer of the mortgage, not the owner, and therefore the parties have separate interests and legal relationships vis-à-vis Dolan. Indeed, had SPS been named in the state court action, SPS's and TMS's interests could well have been at odds, given that each could have sought to blame the other for the conduct for which TMS was ultimately found liable.[10]

Second, the primary case on which Defendant relies, *Yeiser v. GMAC Mortg. Corp.*, is inapposite for one primary reason: there, the plaintiff *lost* in state court and later attempted to

---

[10] It almost certainly is not the case that the state foreclosure action "established the rights between the parties" because SPS was not a defendant in that action. Thus, even if SPS is found to have been in privity with TMS, the prior state court judgment did not establish SPS's rights or obligations with respect to Dolan, because the state court did not order SPS to do anything and awarded Dolan no damages from SPS.

12

assert claims against the same parties, claims that were defenses to the foreclosure. *Yeiser*, 535 F. Supp. 2d 413. In *Yeiser*, the court concluded that "Plaintiffs are clearly seeking alternative relief in federal court based on the same series of transactions involved in the foreclosure proceeding" and that, because plaintiff *could have* brought the claims as defenses or counterclaims in the action for foreclosure, *res judicata* barred the litigation. *Id.* at 422. That Dolan is bringing a *different* claim against a *different* party critically distinguishes this case from *Yeiser*, where the plaintiff sought to assert in federal court the *same* claims against the *same* parties from the state foreclosure action.[11]

C. Dolan's NYGBL § 349 Claim

Dolan's NYGBL § 349 claim, however, is dismissed because Dolan has failed to adduce sufficient evidence to sustain such a claim. A claim for unfair and or deceptive business practices under NYGBL § 349 requires evidence that the defendant's conduct was "consumer oriented" in that it was directed toward the consuming public at large or is harmful to a general public interest, and not just the individual plaintiff. *See Allahabi v. New York Life Ins. Co.*, 98-CV-4334, 1999 WL 126442, at *2 (S.D.N.Y. Mar. 10, 1999) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995)) ("[A]s a threshold matter, [a plaintiff must] charge conduct of the defendant that is consumer-oriented.") "Consumer-oriented conduct does not require a repetition or pattern of deceptive conduct, but a plaintiff must nevertheless 'demonstrate that the acts or practices have a broader impact on consumers at large.'" *Id.* (citing *Oswego*, 85 N.Y.2d at 25). Here, like in *Allahabi*, although Dolan's conflict

---

[11] Furthermore, to the extent that the court in *Yeiser* failed to apply New York's permissive counterclaim doctrine, the Court declines to rely upon it. *Yeiser*, 535 F. Supp. 2d at 422 (finding that the plaintiff was barred from asserting claims that he could have asserted "as defenses or counterclaims in the action for foreclosure").

with the mortgagee and servicing agent "are the sort that could potentially arise between any [mortgagee and mortgagor], the specific allegations here are 'unique to the parties' and do not have any 'broader impact in consumers at large.'" *Id.* (citing *Oswego*, 85 N.Y.2d at 26). It is well-settled that such allegations of a private dispute between two parties are inadequate to state a claim under NYGBL § 349. *See id.* (collecting cases).

Dolan has provided no evidence that Defendant's conduct in the mortgage dispute was directed towards or affected anyone other than Dolan. Dolan's allegations with respect to his NYGBL § 349 claim all are in the context of private negotiations and forbearance agreements between him and the bank. Dolan makes no allegations—aside from conclusory assertions of consumer orientation—that Defendant's conduct had a "broader impact on consumers at large" or that Defendant engaged in similarly deceptive practices affecting all mortgages of a particular type. *See id.*; *see also Teller v. Bill Hayes, Ltd.*, 213 A.D.2d 141, 146 (2d Dep't 1995) (quoting *Oswego*, 85 N.Y.2d at 25) ("single-shot, private contract disputes, unique to the parties, for example, would not fall within the ambit of [GBL § 349]") (internal alterations and quotations omitted). Indeed, the state court found, in dismissing Dolan's claim under the NYGBL against TMS, that there was no evidence tending to show that any conduct in connection with Dolan's foreclosure affected or was directed at the public at large. For the above reasons, Dolan's NYGBL § 349 claim is dismissed.

*CONCLUSION*

For the reasons set forth above, Defendant's motion for summary judgment is denied, except as to Dolan's NYGBL § 349 claim, which is dismissed.

SO ORDERED:

  /s/ Pamela K. Chen  
PAMELA K. CHEN  
United States District Judge

Dated: September 18, 2014  
       Brooklyn, New York