UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
MICHAEL T. DOLAN,

                Plaintiff,

             - against -

SELECT PORTFOLIO SERVICING,

                Defendant.
------------------------------------------------------x

**MEMORANDUM & ORDER**
03-CV-3285 (PKC) (AKT)

PAMELA K. CHEN, United States District Judge:

Before the Court is Defendant Select Portfolio Servicing's ("SPS")[1] motion for summary judgment regarding two theories of Plaintiff Michael T. Dolan's ("Plaintiff") New York State law breach of fiduciary duty claim. Specifically, SPS asks that the Court answer the following two questions in the negative: (1) whether a breach of fiduciary duty claim is cognizable based on the theory that SPS, a loan servicer, negotiated, offered, and enforced an allegedly unconscionable forbearance agreement with Plaintiff, the mortgagor; and (2) whether a breach of fiduciary duty claim is cognizable on the theory that SPS imposed "force-placed" hazard or property insurance[2] on Plaintiff without prior notice. For the reasons stated below, Defendant's motion is GRANTED IN PART and DENIED IN PART. In addition, and as explained below, the Court finds that the proposed testimony of a representative of Balboa Life and Casualty Insurance Company ("Balboa") is admissible.

---

[1] SPS was originally known as Fairbanks Capital Corporation. The Court has amended the case caption to reflect Defendant's change of name, consistent with the Court's direction in its September 18, 2014 Memorandum & Order. (Dkt. 389 at 1 & n.1.)

[2] "Force-placed insurance" means a hazard or property insurance policy purchased by a lender upon the lapse, or in the absence, of a borrower's own insurance policy. *See Griffith-Fenton v. Coldwell Banker Mortg.*, No. 13-CV-7449, 2014 U.S. Dist. LEXIS 76986, at *2–3 & n.1 (S.D.N.Y. May 2, 2014).

1

BACKGROUND

I.  Factual History[3]

   A.  Original Note and Mortgage and Subsequent Forbearance Agreements

In February 1998, Plaintiff and his wife (collectively, "the Dolans") executed a promissory note in the amount of $224,000, payable to Premier Mortgage Corp. ("Premier") and secured by a mortgage on the Dolans' primary residence. (Def. 56.1[4] ¶¶ 1–2.) The Dolans defaulted on the terms of the note and mortgage, leading them to enter into a Default Forbearance Agreement with The Money Store ("TMS")[5] in August 1999 ("First Forbearance Agreement"), which Plaintiff

---

[3] The parties' familiarity with the facts of the case is presumed, and only those facts relevant to this motion will be set forth herein. These facts are taken from the parties' submissions in connection with the instant summary judgment motion, as well as from the March 13, 2013 order of the Honorable Denis R. Hurley on Defendant's first motion for summary judgment (Dkt. 355), and this Court's September 18, 2014 order on Defendant's second motion for summary judgment (Dkt. 389).

[4] Citations to "Def. 56.1" refer to Defendant's Statement of Uncontested Material Facts Pursuant to Local Civil Rule 56.1. (Dkt. 413-18.) Citations to "Pl. 56.1" refer to Plaintiff Michael T. Dolan's Response to Defendant's Statement of Uncontested Material Facts Pursuant to Local Civil Rule 56.1. (Dkt. 415-1.) Where a party either (i) admits or (ii) denies without citing to admissible evidence facts alleged in the opposing party's Local Rule 56.1 Statement, the Court shall deem such facts undisputed. *See* Local Rules of the United States District Courts for the Southern and Eastern Districts of New York 56.1(c)–(d). *See also Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) (Local Rule 56.1 "requires a party moving for summary judgment to submit a statement of the allegedly undisputed facts on which the moving party relies, together with citation to the admissible evidence of record supporting each such fact. . . . If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (citation omitted); *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (A party's "failure to respond or contest the facts set forth [in the moving party's] Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed.") (quotation marks omitted). Thus, a standalone citation to a 56.1 Statement denotes that either the parties have, or the Court has, determined the underlying factual allegation to be undisputed. Any citations to a party's 56.1 Statement incorporates by reference the documents cited therein unless otherwise noted.

[5] Premier assigned its interest in the Dolans' note and mortgage to TMS in June 1998. (Dkt. 355 at 2.)

characterizes as a forced, rather than voluntary, agreement. (*Id*. ¶¶ 3–4; Kramer Decl.[6] Ex. C; Pl. 56.1 ¶ 4.) SPS was not a party to the First Forbearance Agreement. (Def. 56.1 ¶ 5.) The Dolans then defaulted under the terms of the First Forbearance Agreement, though Plaintiff argues that this was because the agreement was "unconscionable and overreaching." (*Id*. ¶ 6; Pl. 56.1 ¶ 6.)

In August 2000, the Dolans entered into another forbearance agreement with TMS ("Second Forbearance Agreement"). (Def. 56.1 ¶ 7.) TMS sent Plaintiff a letter dated November 7, 2000, which Plaintiff believes he received, informing Plaintiff that the note and mortgage would be serviced by SPS beginning on November 22, 2000. (Def. 56.1 ¶¶ 9–10; Kramer Decl. Ex. O at 335:23–336:10; Pl. 56.1 ¶ 9.) TMS defined "servicing" Plaintiff's mortgage as "the right to collect payments" from the Dolans. (Dkt. 355 at 3 n.3; Kramer Decl. Ex. E.) Thus, while SPS was not a party to the Second Forbearance Agreement, SPS was, according to Plaintiff, a "party" with respect to the enforcement of that agreement as of November 2000. (Def. 56.1 ¶ 8; Pl. 56.1 ¶ 8.)

At some point after SPS began servicing the Dolans' note and mortgage, the Dolans defaulted under the terms of the Second Forbearance Agreement. (Def. 56.1 ¶ 12.)[7] In October 2001, TMS commenced foreclosure proceedings against Plaintiff in New York State Court ("State Court Foreclosure Proceedings"). (Dkt. 355 at 3.) But in September 2002, the Dolans entered into another forbearance agreement, this time with SPS, as the servicing agent for TMS ("Third Forbearance Agreement"). (Def. 56.1 ¶ 13.) Under the terms of the Third Forbearance Agreement, the Dolans were to "make a down payment of $15,000.00 on or before September 16, 2002," then

---

[6] Citations to "Kramer Decl." refer to the Declaration of Steven R. Kramer in support of Defendant's motion for summary judgment. (Dkt. 413-1.)

[7] While Plaintiff disputes this, claiming that the Dolans "lived up to the contractual [obligations], but refused to continue payment once TMS/[SPS] refused to give [an] accounting," he cites no admissible evidence to refute Defendant's assertion. (Pl. 56.1 ¶ 12.) Therefore, the Court deems this fact admitted. *See* Local Rule 56.1(c)–(d); *Giannullo*, 322 F.3d at 140.

five subsequent payments, each of $4,000.00, on specific days between October 2002 and February 2003, and then regular mortgage payments from March 2003 onwards. (*Id*. ¶ 14; Kramer Decl. Ex. G ¶ 9.) In exchange, TMS agreed "to take no further action to foreclose the Mortgage." (Dkt. 355 at 4; Kramer Decl. Ex. G ¶ 8.) The Dolans made the initial $15,000.00 down payment, but did not make any of the subsequent monthly installment payments due under the Third Forbearance Agreement. (Def. 56.1 ¶ 15.)

B. Hazard or Property Insurance

The original terms of the mortgage provided that the lender's servicing agent was authorized to obtain hazard or property insurance coverage, with prior notice to be given to Plaintiff, if the Dolans defaulted on the loan or failed to maintain such insurance coverage on the residence. (Kramer Decl. Ex. B at ECF 5–6, 8.) Additionally, the Third Forbearance Agreement stated that Plaintiff needed to "provide proof of insurance coverage in form and substance satisfactory to [TMS] no later tha[n] September 30, 2002." (Kramer Decl. Ex. G ¶ 10.) According to Defendant, SPS informed Plaintiff, via correspondence dated May 4, 2001, November 23, 2001, and November 29, 2002, that it had procured hazard insurance coverage on the Dolans' primary residence due to Plaintiff's alleged non-responsiveness to prior notices regarding his failure to maintain hazard insurance coverage on that property. (Def. 56.1 ¶ 16; Exs. H–J.) Plaintiff denies receiving any such notice regarding SPS's procurement of hazard insurance. (Pl. 56.1 ¶ 16.)[8]

---

[8] In disputing this fact, Plaintiff cites to findings from the State Court Foreclosure Proceedings, which were the subject of SPS's second motion for summary judgment. (Pl. 56.1 ¶ 16.) As the Court previously held, and as Plaintiff well knows, those proceedings have no *res judicata* effect in this action, as SPS was not a party in those foreclosure proceedings. (Dkt. 389 at 5–6 & n.6; *see also* Dkt. 412 (12/1/15 Pre-Trial Conference Transcript) at 32–34 (rejecting Plaintiff's reliance on State Court decision as support for breach of fiduciary duty claim, as there is "no *res judicata*; there's no way to hold [SPS] responsible for any finding," particularly since Plaintiff was "the one who argued in summary judgment that there could be no *res judicata*, because [SPS] weren't actually parties [sic]. . . .").) Indeed, as the Court noted at the December

In November 2002, SPS determined that Plaintiff was in default of the Third Forbearance Agreement, and the State Court Foreclosure Proceedings brought by TMS against Dolan were reinstated. (Dkt. 355 at 5.) SPS was not a named party in these proceedings. (*Id.*) On May 30, 2003, the mortgaged property was sold pursuant to a foreclosure order issued in the State Court Foreclosure Proceedings. Only at this point did Plaintiff—who had not previously entered an appearance in the State foreclosure action—participate, moving to vacate the judgment and subsequent sale of the property. (*Id.*) The State Court granted Plaintiff temporary injunctive relief and awarded him possession of the property pending the outcome of the State Court Foreclosure Proceedings. (*Id.*) On June 13, 2003, while those proceedings were pending, SPS sent Plaintiff a letter informing him that the note and mortgage would be serviced by Wilshire Credit Corporation beginning on July 1, 2003. (Def. 56.1 ¶ 17.)

II.   State Court Foreclosure Proceedings

In April 2005, the State Court granted Plaintiff's motion to set aside the judgment of foreclosure and sale, and, in relevant part, determined that Plaintiff had been injured by TMS and its servicing agents' failure to properly credit Plaintiff for payments made towards the principal and interest of the note and mortgage, as well as their failure to readjust the applicable interest rate thereon. (Dkt. 355 at 6–7.) In addition, the State Court determined that the forbearance agreements each contained "either egregious mistakes and/or overreaching and unconscionable clauses," in particular the Third Forbearance Agreement, which was "the singular most flagrant" agreement,

---

1, 2015 pre-trial conference, Plaintiff himself argued in opposition to Defendant's second motion for summary judgment that *res judicata* could not apply to this action, since "[t]his is a different proceeding dealing with different party [sic] and dealing with different issue [sic]," the "State Court action did not involve the present defendant," and the State Court Foreclosure Proceedings "did not require any determination of [SPS's] liability to the Plaintiff[] for the alleged wrongdoing under . . . his state law claims for . . . breach of fiduciary duty." (Dkt. 383 (Pl.'s Opposition to Def.'s Motion for Summary Judgment) at 5–8.)

5

with provisions that were "oppressive, overreaching and shock[ing] [to] the conscience of the court." (*Id*. (quotation marks omitted) (alteration omitted).)

The foreclosure action proceeded to trial, including on certain counterclaims asserted by Plaintiff. In a written order issued in July 2012, the State Court dismissed the foreclosure action, finding that TMS had presented insufficient evidence that Plaintiff had been in default on the note and mortgage at the time the State Court Foreclosure Proceedings were initiated. (*Id*. at 8–9.) As to Plaintiff's counterclaims, the State Court held that Plaintiff had established misrepresentation and breach of the duty of good faith and fair dealing as a result of "the predatory lending practices of TMS and its servicers." (*Id*. at 9 (alteration omitted).) TMS was ordered to reinstate the Dolans' mortgage, with interest set according to the provisions of the note and mortgage, and with all claimed arrears and accrued interest and penalties deemed cancelled, other than real estate taxes. (*Id*.)

III. <u>Federal Litigation</u>

On July 7, 2003, while the State Court Foreclosure Proceedings were pending, Dolan initiated the instant action, originally proceeding *pro se*, but now represented by pro bono counsel. After extensive motion practice, including two orders on the parties' summary judgment briefing (Dkts. 355 & 389), the lone remaining defendant is SPS, against whom Plaintiff is proceeding to trial on claims pursuant to Section 2605(b), (c), and (e) of the Real Estate Settlement Procedures Act ("RESPA"), and State law claims under breach of contract, negligence, and breach of fiduciary duty theories.

Pursuant to the leave given at a pre-trial conference held on December 1, 2015, SPS now moves for summary judgment with respect to certain aspects of Plaintiff's breach of fiduciary duty claim, as articulated by Plaintiff in the parties' proposed third amended joint pre-trial order ("3rd

6

JPTO"). (Dkt. 421 at 3–4.) Specifically, SPS argues that it is entitled to summary judgment as to (1) whether SPS's negotiation, offer, and enforcement of the Third Forbearance Agreement can give rise to a breach of fiduciary claim, and (2) whether the alleged imposition of "force-placed" insurance without prior notice to Plaintiff can give rise to a breach of fiduciary duty claim.

*LEGAL STANDARD*

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* at 248.

In ruling upon a summary judgment motion, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli*

7

*v. City of N.Y.*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998) (collecting cases). Nor is a mere "scintilla of evidence" in support of the nonmoving party sufficient; rather, "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotation marks omitted) (alteration in original); *see also Miner v. Clinton Cty.*, 541 F.3d 464, 471 (2d Cir. 2008) (nonmoving party must offer "some hard evidence showing that its version of the events is not wholly fanciful") (quotation marks omitted); *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (nonmoving party cannot avoid summary judgment simply by relying "on conclusory allegations or unsubstantiated speculation") (quotation marks omitted). For this reason, where, "after adequate time for discovery and upon motion . . . a party [] fails to make a showing sufficient to establish the existence of an element essential to that party's case, [] on which that party will bear the burden of proof at trial," summary judgment is proper. *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

Plaintiff alleges, in his operative complaint, that SPS "assumed fiduciary duties with respect to monies it held in escrow for Plaintiff," and breached those duties "by failing to make timely tax payments from escrowed funds" and "by failing to timely process or account for escrow funds." (Dkt. 58 (Second Amended Complaint) ¶¶ 286–90.)[9] In the parties' proposed 3rd JPTO,

---

[9] While Plaintiff filed a Third Amended Complaint, the Court treats the Second and Third Amended Complaints as one operative complaint, consistent with the history of this case and Judge Hurley's September 30, 2008 Order adopting in full the September 8, 2008 Report and Recommendation of the Honorable A. Kathleen Tomlinson. (*See* Dkt. 186 at 5–6 n.3, *adopted in*

however, Plaintiff, for the first time, broadened his breach of fiduciary duty claim to encompass not only this escrow fund theory, but also the theory that SPS breached its fiduciary duty by negotiating, offering, and enforcing the Third Forbearance Agreement, and by allegedly force-placing expensive insurance on the Dolans in connection with their mortgage, without prior notice. (Dkt. 421 at 3–4.) Defendant's instant summary judgment motion seeks dismissal of these two new breach of fiduciary duty theories. Plaintiff argues, in opposition, that "this motion and its assertions are barred by issue preclusion." (Pl. Opp.[10] at 1. *See also id*. at 5 ("[Whether] the Movant, SPS[] violated their fiduciary obligation towards Dolan has already been decided in [earlier State Court proceedings].").)

I. <u>Issue Preclusion</u>

As an initial matter, and consistent with the Court's prior ruling on Defendant's second summary judgment motion, the Court rejects Plaintiff's assertion of issue preclusion based on decisions rendered in the State Court Foreclosure Proceedings. Issue preclusion, or collateral estoppel, bars relitigation of an issue that was fully and fairly litigated in a prior proceeding, and applies only where (1) the identical issue was raised in the prior proceeding; (2) that issue was actually litigated and decided in the prior proceeding; (3) the party against whom issue preclusion is being asserted had a full and fair opportunity to litigate the issue; and (4) resolution of the issue was "necessary to support a valid and final judgment on the merits." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 918 (2d Cir. 2010). Plaintiff has failed to meet his burden of establishing each of these elements.

---

*full*, Dkt. 189 at 4 n.2 ("[T]he Court finds that the surviving allegations of the Second Amended Complaint shall be read together with the Third Amended Complaint . . . .").)

[10] All citations to "Pl. Opp." refer to Plaintiff's Affirmation in Opposition to Defendant's Motion and in Support of Summary Judgment for Plaintiff. (Dkt. 415.)

9

Contrary to Plaintiff's assertion that SPS is "collaterally estopped from relitigating the question of whether their conduct violated a fiduciary duty" (Pl. Opp. at 9), the issue of whether SPS owed Plaintiff a fiduciary duty was not raised in the State Court Foreclosure Proceedings, and therefore was not actually litigated or decided in those proceedings, nor was a resolution of that issue necessary to support a valid and final judgment on the merits. First, SPS was not a party in the State Court Foreclosure Proceedings. Second, Dolan did not assert a breach of fiduciary duty claim in the State Court Foreclosure Proceedings; rather, he asserted counterclaims of, *inter alia*, misrepresentation and breach of the duty of good faith and fair dealing, and only as to *TMS*, and not *SPS*. (Dkt. 415-3 at ECF 1, 3.) Indeed, as Plaintiff himself strenuously argued in opposition to Defendant's second motion for summary judgment, "[t]his is a different proceeding dealing with different party [sic] and dealing with different issue [sic]," the "State Court action did not involve the present defendant," and the State Court Foreclosure Proceedings "did not require any determination of [SPS's] liability to the Plaintiff[] for the alleged wrongdoing under . . . his state law claims for . . . breach of fiduciary duty." (Dkt. 383 (Pl.'s Opposition to Def.'s Motion for Summary Judgment) at 5–8.)[11] For this reason, Plaintiff's claim that "SPS received a 'full and

---

[11] Plaintiff asserts that a representative of SPS "appeared in the State Court to testify in support of [the] foreclosure proceeding." (Pl. Opp. at 9 & n.1; *see also id.* at 5–6 (alleging SPS testified at a two-day hearing in February 2005).) But Plaintiff cites no evidence to support this assertion. Indeed, the State Court decisions themselves, attached as Exhibits A and B to Plaintiff's Rule 56.1 Statement (Dkts. 415-2 & 415-3), provide no indication that any *SPS* witness testified, or that any evidence was adduced by *SPS* itself on its own behalf. And even were the Court to accept this assertion, it is nonetheless insufficient to support a finding of issue preclusion, for the reasons previously stated, namely that the existence of *SPS*'s fiduciary duty to Plaintiff was not raised, and therefore was not actually litigated or decided, in the State Court Foreclosure Proceedings.

fair' opportunity to litigate their claims in their foreclosure action" (Pl. Opp. at 9) is simply incorrect.[12]

## II. Law on Breach of Fiduciary Duty

The question remains, however, whether Plaintiff's new theories state a cognizable breach of fiduciary duty claim under New York law. A plaintiff asserting a breach of fiduciary duty claim under New York law must prove that (1) a fiduciary duty exists; (2) there was a knowing breach of that duty; and (3) damages resulted from said breach. *See Barnett v. Countrywide Bank, FSB*, 60 F. Supp. 3d 379, 390 (E.D.N.Y. 2014). While "[t]he ordinary financial relationship between a mortgagor and a loan servicer does not automatically give rise to a fiduciary relationship," such a relationship may exist "where it is created by specific contractual language or additional special circumstances." *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 U.S. Dist. LEXIS 135758, at *69–70 (E.D.N.Y. Sept. 24, 2014) (quotation marks omitted).

As Judge Hurley found in ruling on Defendant's first summary judgment motion, the language of the mortgage itself gives rise to a fiduciary duty, one that "obligates TMS – and . . . [SPS] as agent for [TMS] – to make specified payments, including tax payments, from the escrow funds." (Dkt. 355 at 40 (quotation marks and citation omitted).) Thus, to determine whether Plaintiff can proceed with his breach of fiduciary duty claim on the theories of negotiation, offer,

---

[12] Furthermore, contrary to Plaintiff's argument, it would be improper for the Court to take "judicial notice" of the State Court Foreclosure Proceedings decisions. (Dkt. 412 at 33:15–21 (Plaintiff's counsel argued "judicial notice ought to be tak[en]" of the State Court findings).) The Court may not take judicial notice of State Court opinions for the truth of their factual findings, but only for the fact that such litigation occurred and such opinions issued. *See Global Net. Communs., Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006); *Clark v. Cty. of Nassau*, No. 06-CV-0841, 2007 U.S. Dist. LEXIS 11720, at *8 n.3 (E.D.N.Y. Feb. 20, 2007) ("A court may take judicial notice of an opinion issued in a prior proceeding, but 'only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion.'"). *See also Int'l Star Class Yacht Racing Ass'n v. Tommy Hiilfiger U.S.A., Inc.*, 146 F.3d 66, 70–71 (2d Cir. 1998) (judicial notice not applicable to findings of fact in earlier opinion).

and enforcement of the Third Forbearance Agreement, and imposition of force-placed insurance without prior notice, the Court must determine whether there are any additional fiduciary duties, other than the one identified by Judge Hurley, upon which Plaintiff's new theories can be based, or whether the fiduciary duty identified by Judge Hurley itself encompasses those theories.

A. Other Fiduciary Duties

The Court finds no contractual language, nor any special relationship between the parties, that would give rise to a broader fiduciary duty than the one identified by Judge Hurley. Such a fiduciary duty may exist in a lender-borrower relationship, but only upon a showing that the lender "enjoyed an *unusual* advantage resulting from the confidence that [the borrower] placed in [the lender], or [a] showing that [the lender] assumed control and responsibility *outside the terms provided for in the contract*" between the parties. *Zorbas v. U.S. Trust Co.*, 48 F. Supp. 3d 464, 480–81 (E.D.N.Y. 2014) (quotation marks omitted) (alteration omitted) (emphases in original).

Plaintiff has made no showing that SPS "enjoyed an *unusual* advantage" over Plaintiff resulting from the confidence Plaintiff reposed in SPS. *See id.* at 481–82 (emphasis in original). While Plaintiff argues conclusorily that he "placed trust and confidence in [SPS]," that he was "scared" and "didn't want to be homeless with [his] wife and children" (Pl. Opp. at 3), his "subjective beliefs and conclusory allegations that a 'special' relationship existed are insufficient to establish a fiduciary duty." *Zorbas* at 486–87. Indeed, as Defendant correctly notes, "Plaintiff ignores the economic reality that every defaulting party loses leverage in negotiation." (Def. Reply[13] at 3.) It appears, rather, that the relationship between Plaintiff and Defendant was the typical mortgagor-loan servicer relationship where the mortgagor has defaulted.

---

[13] All citations to "Def. Reply" refer to Defendant's Reply Memorandum of Law in Further Support of the Motion by SPS for Summary Judgment. (Dkt. 416.)

Moreover, while Plaintiff argues that SPS "had complete control over the foreclosure proceeding and could extract any kind of settlement, [] which they did" (Pl. Opp. at 11), any "control and dominance" exercised by SPS over Plaintiff in foreclosure proceedings was "authorized" by the mortgage itself, and therefore "cannot also serve as the extra-contractual source of fiduciary duty." *Zorbas*, 48 F. Supp. 3d at 480–81. (*See* Kramer Decl. Ex. B ¶ 21 (mortgage provided that, "if borrower fails to keep promises and agreements" enumerated in contract, "Lender may require that [Plaintiff] pay immediately the entire amount then remaining unpaid," and then "bring a lawsuit to take away all of [Plaintiff's] remaining rights in the Property and have the Property sold . . . known as 'foreclosure and sale'").) Therefore, for Plaintiff's new theories to state a breach of fiduciary duty claim, they must be encompassed within the fiduciary duty identified by Judge Hurley.

B.  SPS's Negotiation, Offer, and Enforcement of the Third Forbearance Agreement

As previously stated, Judge Hurley found the existence of a fiduciary duty with respect to managing the escrow funds as stated in the mortgage. (Dkt. 355 at 40.) But Plaintiff's theory with respect to the negotiation, offer, and enforcement of the Third Forbearance Agreement does not allege a breach of this duty. Indeed, Plaintiff's statement of claims in the 3rd JPTO makes clear that the negotiation, offer, and enforcement of the Third Forbearance Agreement is separate and distinct from his theories that are premised upon the fiduciary duty identified by Judge Hurley, *i.e.*, that SPS "failed to give [a] proper accounting of the monies collected" in the escrow account, "failed to properly credit Dolan" for money paid into the escrow account, failed to properly allocate money Dolan paid "for weeks and in one instance for two months," and failed to "timely make

13

payments regarding property taxes" from the escrow account, among others. (Dkt. 421 at 3–4.)[14]

Rather, Plaintiff's arguments with respect to this theory about the Third Forbearance Agreement are premised on an argument that the Court has already rejected, namely that there exists a fiduciary duty beyond the one Judge Hurley identified. The essence of this theory is that there existed a fiduciary relationship between Plaintiff and SPS because "Dolan signed the unconscionable Forbearance Agreement with [SPS] fearing loss of his home, thus empowering [SPS] and becoming vulnerable in all aspects." (Pl. Opp. at 10–11; *see also id.* at 3 (SPS "offered an unconscionable and overreaching forbearance agreement to Dolan to save their home and Dolan with no choice signed the agreement"); *id*. at 5 (SPS "inequitably abused" the trust Dolan reposed in it "by wrongfully using its position of superiority in order to obtain an unconscionable advantage over the Dolan[s]").) However, Plaintiff has failed to show that these alleged circumstances created a fiduciary duty beyond the one identified by Judge Hurley. Plaintiff's theory appears to be, "in effect, merely [an] attempt[] to expand the very limited circumstances in which a fiduciary duty may be imposed" between a creditor and a debtor. *See Gorham-Dimaggio v. Countrywide Home Loans, Inc.*, 592 F. Supp. 2d 283, 295 (N.D.N.Y. 2008). "Courts have consistently rejected this sort of attempt to impose a heightened obligation on all aspects of the debtor-creditor relationship simply because the mortgagee makes payments from an escrow account on behalf of

---

[14] For this reason, Plaintiff's reliance on *Heller v. First Town Mortgage Corp.*, No. 97 Civ. 8575, 1998 U.S. Dist. LEXIS 14427 (S.D.N.Y. Sept. 14, 1998) (Pl. Opp at 3–4) is unavailing. In that case, the court denied defendant's motion to dismiss plaintiff's breach of fiduciary duty claim where it found a fiduciary duty with respect to "funds held in escrow," and plaintiff's theory was that defendant "required that the plaintiff pay more into an account than the contract or federal law permitted, and . . . on top of that [defendant] got to keep the interest on this extra money." *Id*. at *26–27. Plaintiff's theory in *Heller* is most closely analogous to Dolan's other theories of breach of fiduciary duty, such as the claim that SPS failed to credit or properly allocate payments made into the escrow account, rather than Dolan's separate theory regarding the Third Forbearance Agreement.

the mortgagor," *id*., and the Court does so here. Therefore, the Court grants Defendant's motion for summary judgment as to the theory of the negotiation, offer, and enforcement of the Third Forbearance Agreement as a basis for Plaintiff's breach of fiduciary duty claim.

    C.    <u>Force-placed Insurance</u>

Plaintiff's theory regarding force-placed insurance, however, presents a different situation. Plaintiff argues that SPS, "as an escrow holder, breached its fiduciary duty to Dolan by charging him unnecessary and excessive force-placed insurance . . . without prior notice," for which, Plaintiff alleges, SPS "received unearned kickbacks." (Pl. Opp. at 12; *see also id*. (SPS "had a fiduciary duty in connection with managing [the] escrow account, which duty was breached when [] it charged for excessive insurance and [received] related commissions in an act of self-dealing . . .") (quotation marks omitted).) The mortgage required Plaintiff to maintain hazard or property insurance, but provided that, if he failed to do so, SPS could "obtain insurance coverage to protect Lender's rights in the Property," and could "do and pay for whatever [was] necessary to protect the value of the Property." SPS, however, was required to "give [the Dolans'] notice" before taking any such action. (Kramer Decl. Ex. B ¶¶ 5, 7.) SPS admits that it "purchased a hazard insurance policy on [the Dolans' primary residence], the annual premium of which was charged to the Dolans' account." (Def. Mot.[15] at 3.) This theory does state a claim for breach of fiduciary duty. *See Casey v. Citibank, N.A.*, 915 F. Supp. 2d 255, 265 (N.D.N.Y. 2013) (finding that plaintiff "plausibly allege[d] that defendant[] breached [its fiduciary] duty by using the escrow funds to pay premiums for force-placed [] insurance that was unauthorized and excessive").[16] Indeed, this

---

[15] All citations to "Def. Mot." refer to Defendant's Memorandum of Law in Support of SPS's Motion for Summary Judgment. (Dkt. 413-19.)

[16] Defendant's reliance on *Griffith-Fenton v. Coldwell Banker Mortg.*, No. 13-CV-7449, 2014 U.S. Dist. LEXIS 76986 (S.D.N.Y. May 2, 2014) is misplaced. Defendant cites *Griffith-*

15

conclusion is consistent with Judge Hurley's finding that SPS had a fiduciary duty to properly manage the escrow funds, which would encompass a duty not to use these funds to pay for excessive or unnecessary insurance premiums, especially for the purpose of obtaining kickbacks.[17] Accordingly, the Court denies Defendant's motion for summary judgment as to this force-placed insurance theory.

III.  Testimony of Balboa Witness

Plaintiff seeks to call at trial a witness from Balboa. (3d JPTO at 13.)[18] Defendant's own evidence indicates that Balboa was the insurance company from which Defendant procured the insurance that is the subject of Plaintiff's force-placed insurance theory. (Kramer Decl. Exs. H–J.) To the extent Plaintiff seeks to proffer testimony from this Balboa witness to demonstrate that

---

*Fenton* for the proposition that "SPS's duty to notify Plaintiff of its intention to impose force-placed insurance on the subject property arose from the mortgage contract, not by fiduciary duty." (Def. Reply at 3–4; *see also* Def. Mot. at 9 (analogizing to *Griffith-Fenton* for proposition that "[n]othing in the record is suggestive that SPS owed to Mr. Dolan a degree of confidence and trust so high that it was required, as his fiduciary, to notify him prior to imposing force-placed insurance").) But this understates Plaintiff's theory, which is premised not only on the fact that Dolan alleges he was not provided notice of the imposition of force-placed insurance—which the Court agrees sounds in breach of contract—but also on the allegations that Defendant improperly obtained excessive and unnecessary insurance in exchange for kickbacks and charged the premiums for this insurance to Plaintiff's escrow account, thereby breaching Defendant's fiduciary duty to manage that account. Notably, in *Griffith-Fenton*, the court found that there were "no allegations supporting a plausible inference that plaintiff's relationship with defendants [was] anything other than contractual in nature," 2014 U.S. Dist. LEXIS 76986, at *21; whereas, here, Judge Hurley found that the mortgage created a fiduciary duty on SPS's part to properly manage the escrow funds relating to Plaintiff's mortgage.

[17] The Court notes that, while Plaintiff asserts that Defendant purchased the allegedly excessive and unnecessary insurance in order to obtain kickbacks, at trial, Plaintiff will be required to demonstrate a good faith basis for this assertion and proffer some evidence to support this claim before he will be permitted to raise this issue in any opening statement, or question any witness, on this topic.

[18] At the April 28, 2016 pre-trial conference, the Court advised the parties that it would determine the admissibility of this testimony in conjunction with the instant motion for summary judgment. (See 4/28/16 Minute Entry for 4/28/16 Pre-Trial Conference.)

16

cheaper insurance was available and/or that the Balboa insurance was not necessary to protect Plaintiff's property or Defendant's interest in the property, the Court finds such testimony to be relevant and admissible. (*See* 3rd JPTO at 13 (describing Balboa witness testimony); *cf*. Kramer Decl. Ex. B ¶ 7 (Section 7 of the mortgage permitted SPS to "do and pay" for only what was "necessary to protect the value of the Property and Lender's rights" therein).)

## *CONCLUSION*

For the reasons stated above, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Plaintiff shall be permitted to proceed to trial on his breach of fiduciary duty claim on the theory that Defendant charged premiums to his escrow account for excessive, unnecessary, and unauthorized force-placed insurance, and Plaintiff shall be permitted to proffer the testimony of a Balboa witness in connection with that claim. Plaintiff, however, is foreclosed from presenting a breach of fiduciary duty claim on the theory that Defendant negotiated, offered, and enforced the Third Forbearance Agreement.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: June 22, 2016
      Brooklyn, New York