UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
MICHAEL T. DOLAN,

                        Plaintiff,

          - against -

SELECT PORTFOLIO SERVICING,

                    Defendant.
------------------------------------------------------x

**MEMORANDUM & ORDER**
03-CV-3285 (PKC) (AKT)

PAMELA K. CHEN, United States District Judge:

      Defendant Select Portfolio Servicing ("Defendant" or "SPS") has again moved for

summary judgment, this time as to Plaintiff Michael Dolan's ("Plaintiff" or "Dolan") claims under

Section 2605 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605

("Section 2605"), and Plaintiff's force-placed insurance theory of his breach of fiduciary claim,

on the basis that Plaintiff lacks standing to pursue these claims in light of the Supreme Court's

recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).  For the reasons stated below,

Defendant's motion is GRANTED IN PART and DENIED IN PART.

*DISCUSSION*

I.    <u>Legal Standard</u>

      At the summary judgment stage, a court cannot merely rely on the allegations in a

plaintiff's complaint to establish standing; rather, "[t]o defend against summary judgment for lack

of standing, a plaintiff 'must set forth by affidavit or other evidence specific facts' supporting

standing, as is generally required under Rule 56."  *NRDC, Inc. v. U.S. FDA*, 710 F.3d 71, 79 (2d

Cir. 2013); *see also Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160,

167 (S.D.N.Y. 2006) ("[A]t the summary judgment stage the plaintiff[] need not establish that [he]

in fact ha[s] standing, but only that there is a genuine question of material fact as to the standing

elements.") (quotation marks omitted).

To satisfy constitutional standing requirements, there must be (1) a concrete and particularized, actual or imminent injury in fact to the plaintiff ("injury in fact"), (2) a causal connection between that injury and the defendant's conduct, and (3) redressability of that injury by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("A federal court's jurisdiction [] can be invoked only when *the plaintiff himself has suffered some threatened or actual injury* resulting from the putatively illegal action . . . .") (quotation marks omitted) (emphasis added). The parties' dispute in the instant motion concerns only the first element, injury in fact.

II.    The Supreme Court's Holding in *Spokeo*

Defendant argues that *Spokeo* represented a sea change in standing jurisprudence, and that the holding articulated in that case renders Plaintiff unable to pursue his RESPA claims, because he has failed to demonstrate a concrete and particularized injury in fact, and therefore lacks standing. (*See* Dkt. 423.) While the Court disagrees with Defendant's overly expansive reading of *Spokeo*, the Court nevertheless recognizes that the Supreme Court's decision in *Spokeo* clarifies what is required to demonstrate standing in the context of bare procedural statutory violations, such as the ones Plaintiff asserts here under Section 2605(b) and (c) of RESPA, with respect to the "Hello" and "Goodbye" letters. Applying *Spokeo*'s clarified standard, the Court finds that Plaintiff has failed to demonstrate standing to bring those claims.

In *Spokeo*, Plaintiff Thomas Robins sued Spokeo, a people search engine company, for allegedly disseminating inaccurate information about Robins. Robins alleged that this

dissemination of inaccurate information violated the Fair Credit Reporting Act ("FCRA").[1]
*Spokeo*, 136 S. Ct. at 1544. The district court dismissed Robins's complaint for lack of standing, but the Ninth Circuit reversed. *Id*. at 1544–45. Stating that "'the violation of a statutory right is usually a sufficient injury in fact to confer standing,'" the Ninth Circuit held that because Robins alleged that Spokeo had violated *his own* statutory rights, not just those of other people, and because his personal interests in the handling of his private information were *individualized*, rather than collective, injury in fact was sufficiently pled. *Id*. at 1546.

The Supreme Court vacated the Ninth Circuit's decision, holding that the Circuit's "analysis was incomplete," because "the injury in fact requirement [of standing] requires a plaintiff to allege an injury that is both 'concrete *and* particularized,'" and the Circuit had failed to address the concreteness prong. *Id*. at 1545 (emphasis in original). The Court explained that, while particularity requires that the injury "affect the plaintiff in a personal and individual way," concreteness requires that the injury "be '*de facto*'; that is, it must actually exist." *Id*. at 1548 (quotation marks omitted). The case was remanded to the Circuit so that it could analyze both aspects of the injury in fact requirement. *Id*. at 1545.

While thoroughly analyzing the concreteness requirement in *Spokeo*, the Supreme Court established no definition of concreteness or factors to determine whether the concreteness

---

[1] The FCRA seeks to ensure fair and accurate credit reporting through regulation of the creation and use of consumer reports by consumer reporting agencies. It requires, *inter alia*, that "companies that regularly disseminate information bearing on an individual's 'credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living'" follow reasonable procedures to assure maximum possible accuracy of consumer reports; notify providers and users of consumer information of their responsibilities under the FCRA; and limit the circumstances in which such agencies provide consumer reports for employment purposes. *See Spokeo*, 136 S. Ct. at 1545 (citing 15 U.S.C. §§ 1681a, 1681b, 1681e). Willful violations of the FCRA's requirements subject the violator to actual damages or statutory damages of between $100 and $1,000 per violation, costs and attorney's fees, and possibly punitive damages. *Id*. (citing 15 U.S.C. § 1681n(a)).

requirement is met.  On the one hand, the Court explained that "concrete" was "not [] necessarily synonymous with 'tangible,'" and that "intangible injuries can [] be concrete." *Id*. at 1549.  In this regard, the Court suggested that though it is "instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit," Congress could "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id*. (alteration in original) (quoting *Lujan*, 504 U.S. at 578) (quotation marks omitted).  Consistent with this reasoning, the Court affirmed the principle that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact.  In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id*. at 1549–50 (citing *FEC v. Akins* (*Akins*), 524 U.S. 11 (1998), and *Public Citizen v. U.S. Dep't of Justice* (*Public Citizen*), 491 U.S. 440 (1989)).

On the other hand, the Court clarified that the injury in fact requirement is not "automatically" satisfied "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 1549.  Rather, as the Court had previously held, "Article III standing *requires a concrete injury even in the context of a statutory violation*," such that the plaintiff in *Spokeo*, Robins, "could not, for example, allege a *bare procedural violation, divorced from any concrete harm*, and satisfy the injury-in-fact requirement of Article III." *Id*. (emphases added) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)).

A.     Intangible Injury in Fact

In affirming the principle that the mere violation of a statutory right could sometimes qualify as an intangible injury in fact sufficient to confer standing, the Court in *Spokeo* relied, in

part, on *Akins*. In that case, a group of voters brought suit to challenge a Federal Election Commission ("FEC") determination that the American Israel Public Affairs Committee ("AIPAC") was not a "political committee," as defined by the Federal Election Campaign Act ("FECA"), and therefore did not have to make certain disclosures regarding its membership, contributions, and expenditures that the FECA would otherwise require.[2] 524 U.S. at 13. The district court granted summary judgment in favor of the FEC, a decision that was initially affirmed by a panel of the Court of Appeals but subsequently reversed by the *en banc* Court of Appeals, on the ground that the FEC had improperly interpreted the FECA's definition of "political committee." *Id.* at 18. Before the Supreme Court, the FEC challenged the respondent-voters' standing to bring the claims at issue, a challenge which the Supreme Court rejected. *Id.* at 13–14, 18.

The Supreme Court held that the injury suffered by the respondent-voters was their inability to obtain information that "would help them (and others to whom they would communicate it) to evaluate candidates for public office . . . and to evaluate the role that AIPAC's financial assistance might play in a specific election," and that this "injury consequently seem[ed] concrete and particular." *Id.* at 21. In so holding, the Court cited *Public Citizen* for the proposition that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Id.* The Court reasoned that, just as injury in fact may be found where "large numbers of individuals suffer the same common-law injury (say, a widespread mass tort), or where large numbers of voters suffer interference with voting rights conferred by law," so too "the informational injury" at issue in *Akins*, which related directly to

---

[2] The FECA's purpose is "to remedy any actual or perceived corruption of the political process," including by imposing "extensive recordkeeping and disclosure requirements upon groups that fall within the Act's definition of a 'political committee.'" *Akins*, 524 U.S. at 14–15.

voting, "the most basic of political rights," was "sufficiently concrete and specific" to confer standing, and "the fact that [the injury] is widely shared does not deprive Congress of constitutional power to authorize its vindication in the federal courts." *Id*. at 24–25.

Similar interests of public disclosure and fundamental rights were at play in *Public Citizen*, upon which the Supreme Court in *Spokeo* also relied. In that case, legal organizations sought to obtain, and were refused, information regarding the American Bar Association's ("ABA") reports and minutes of meetings related to potential judicial nominees, information allegedly shared with the Department of Justice ("DOJ"). These organizations sued the DOJ, arguing that under the Federal Advisory Committee Act ("FACA"), the ABA's Standing Committee on the Federal Judiciary was an "advisory committee" that had to make its minutes, records, and reports public. *Public Citizen*, 491 U.S. at 447–48.[3]

Although affirming the district court's dismissal of the case on statutory grounds, *id*. at 443, the Supreme Court, as an initial matter, considered the ABA's standing challenge, in which the ABA, as intervenors on appeal, argued that the legal organizations had not alleged "injury sufficiently concrete and specific to confer standing." *Id*. at 448 & n.6. The Court rejected the ABA's standing arguments, reasoning that "appellants are attempting to compel the Justice Department and the ABA Committee to comply with FACA's charter and notice requirements, and . . . seek access to the ABA Committee's meetings and records in order to monitor its workings and participate more effectively in the judicial selection process." *Id*. at 449. One of the organizations "ha[d] specifically requested, and been refused" certain information required by the

---

[3] The FACA's purpose was, among other things, to ensure that "Congress and the public remain apprised of [advisory committees'] existence, activities, and cost," and the FACA therefore "stipulates that advisory committee minutes, records, and reports be made available to the public," with some limited exceptions. *Public Citizen*, 491 U.S. at 446–47.

FACA, and just as "when an agency denies requests for information under the Freedom of Information Act, refusal to permit appellants to scrutinize the ABA Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue." *Id*. Relying on its decisions interpreting the Freedom of Information Act, the Court reasoned that those decisions "never suggested that those requesting information under it need show more than that they sought and were denied specific agency records," and that "[t]here is no reason for a different rule here." *Id*.

The statutes at issue in both *Akins* and *Public Citizen* were drafted to effectuate broad disclosure of information to the public. The Supreme Court, however, rejected in both cases the notion that the breadth of this disclosure rendered the interest protected and promoted by these statutes—namely, the public's interest in the integrity and transparency of the political and judicial selection process—too abstract to confer standing. As the Court explained in *Akins*, "[o]ften the fact that an interest is abstract and the fact that it is widely shared go hand in hand," but that association "is not invariable, and where a harm is concrete, though widely shared, the Court has found 'injury in fact.'" 524 U.S. at 24. The Court reasoned similarly in *Public Citizen*: "The fact that other citizens or groups of citizens might make the same complaint after unsuccessfully demanding disclosure under FACA does not lessen appellants' asserted injury, any more than the fact that numerous citizens might request the same information under the Freedom of Information Act entails that those who have been denied access do not possess a sufficient basis to sue." 491 U.S. at 449–50.

Significantly, both *Akins* and *Public Citizen* involved statutory rights intended to protect and promote public interests that, by their nature, are intangible and diffuse, and would be rendered wholly unenforceable were intangible injury, or bare procedural violations, categorically

insufficient to confer standing.  In this respect, the interests at issue in *Akins* and *Public Citizen* resemble the diffuse and less tangible interests that Congress sought to protect and promote through Section 2607 of RESPA, 12 U.S.C. § 2607 ("Section 2607"), and are dissimilar from the interests implicated by Section 2605, under which Plaintiff seeks to recover.  Indeed, because of the clear differences between the interests reflected in these two RESPA sections, the Court concludes that Congress did not intend to confer standing for mere procedural violations of Section 2605, without some allegation of actual harm.

III.    RESPA Statutory Framework

RESPA is a carefully crafted statute whose purpose is to ensure "that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a).

A.    Section 2607

Section 2607 precludes the provision or acceptance of "any fee, kickback, or thing of value" in exchange for a referral "incident to or a part of a real estate settlement service involving a federally related mortgage loan."  12 U.S. § 2607(a).  The section similarly prohibits the provision or acceptance of any fee-splitting arrangement as to "any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan."  *Id*., § 2607(b).  Violators of this provision are penalized by a fine up to $10,000 or imprisonment up to one year, or both, and are also jointly and severally liable to the individual charged for the real estate settlement service "in an amount equal to three times the amount of any charge paid" for that service.  *Id*., § 2607(d).

While the Second Circuit has not addressed what is required to demonstrate standing under

Section 2607, at least three Circuits have considered whether standing to pursue claims under this provision requires a showing of actual harm, namely a showing that the plaintiffs have been *over*charged as a result of the kickback or fee-splitting arrangement at issue. Each of those courts determined that no such overcharge allegation was required to establish standing. *See Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010) (holding that plaintiff established injury sufficient to confer standing because RESPA's plain language made clear that a violation of Section 2607 provided for damages "three times the amount of *any charge paid*," and therefore did not "limit liability to instances in which a plaintiff is overcharged") (quotation marks omitted) (emphasis in original); *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 759–60 (3d Cir. 2009) ("[t]he plain language of RESPA section 8 [2607] does not require plaintiffs to allege an overcharge," as the subsection providing for damages stipulates an amount triple "the amount of *any charge paid*" for the settlement service, and did not mention "overcharge") (emphasis in original); *Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979, 984–86 (6th Cir. 2009) (because the plain language of Section 2607 does not require an overcharge, but instead provides for damages in an amount three times "*any charge paid*," a plaintiff does not have to "allege a concrete injury such as an overcharge in order to have standing for a RESPA violation") (emphasis in original).[4] Thus, the plain language of Section 2607 reflects Congress's intent to protect an interest that is, by nature, intangible—the public's interest in exposing corruption in the real estate financing industry—and implicates the same policy considerations that prompted the Supreme Court in *Akins* and *Public Citizen* to find standing for plaintiffs alleging bare statutory violations.

---

[4] The Supreme Court's holding in *Spokeo* arguably calls into question the continued vitality of these decisions. But to the extent they remain good law after *Spokeo*, the Court finds them persuasive with respect to construing the plain language of Section 2607 to provide for damages in the absence of actual harm.

B.    Section 2605

Section 2605(b) provides that loan servicers, such as SPS, must notify a borrower, in writing, of any transfer of the servicing of a loan within 15 days *before* the effective date of the transfer—a so-called "Goodbye Letter."  *Id*., § 2605(b).  The Goodbye Letter must include certain information, such as (1) the effective date of the transfer; (2) contact information for the transferee loan servicer; (3) contact information for either an individual or a department that can answer questions related to the transfer, for both the transferee and transferor loan servicers; (4) the date on which the transferor servicer will cease accepting payments and the date on which the transferee servicer will begin accepting payments; (5) information concerning the effect the transfer may have on the terms or continued availability of "mortgage life or disability insurance" or any other type of optional insurance, and what action the borrower must take to maintain coverage; and (6) a statement that the transfer does not affect any term or condition of the underlying security instruments—in this case, the note and the mortgage—other than terms "directly related" to the servicing thereof.  *Id*., § 2605(b)(3).  At the other end of the transfer, Section 2605(c) provides that "[e]ach transferee servicer to whom the servicing of any federally related mortgage loan is . . . transferred shall notify the borrower of any such . . . transfer"—a so-called "Hello Letter"—within 15 days *after* the effective date of transfer.  *Id*., § 2605(c).  The Hello Letter must include all of the information required in the Goodbye Letter.  *Id*., § 2605(c)(3).

In contrast to Section 2607, the conduct that Section 2605 seeks to regulate does not implicate the type of diffuse, intangible injury at issue in *Akins* and *Public Citizen,* but rather seeks to redress actual damages caused by the failure of one private party, *i.e.*, a loan servicer, to provide specific information to another private party, *i.e.*, a borrower.  RESPA provides that violators of Section 2605(b) and (c) "shall be liable to the borrower for each such failure in . . . an amount

equal to the sum of . . . any *actual damages* to the borrower as a result of the failure[] *and any additional damages*, as the court may allow, in the case of a pattern or practice of noncompliance" with Section 2605's requirements, "in an amount not to exceed $2,000." *Id.*, § 2605(f). Thus, unlike Section 2607, the plain language of Section 2605 indicates that an allegation of actual damages is necessary to state a claim for liability. *See Bonadio v. PHH Mortg. Corp.*, No. 12-CV-3421, 2014 U.S. Dist. LEXIS 20719, at *14 (S.D.N.Y. Jan. 13, 2014) ("Although RESPA permits recovery of both actual and statutory damages, proof of actual damages is mandatory to recover on a § 2605[] violation, and a § 2605[] claim cannot stand on statutory damages alone.") (quotation marks omitted) (alteration omitted); *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-CV-3291, 2012 U.S. Dist. LEXIS 55284, at *15 n.9 (E.D.N.Y. Apr. 18, 2012) (While "[i]t is not entirely clear whether RESPA permits a plaintiff to recover statutory damages without proving the existence of actual damages," "[t]he word 'additional' suggests that RESPA might not permit recovery of statutory damages alone.").

In reaching this conclusion, the Court recognizes that standing and damages are not synonymous. But just as various Courts of Appeal utilized the plain language of Section 2607's liability provision to determine whether Congress intended to confer standing only on plaintiffs who were overcharged due to alleged kickback or fee-splitting schemes, the Court now finds that Section 2605's liability provision makes clear that Congress intended to confer standing only on those individuals who suffered harm, meaning actual damages, from a loan servicer's failure to comply with the requirements of Section 2605.[5]

_____

[5] This conclusion is bolstered by the Supreme Court's discussion in *Spokeo* about how Congress's purpose in enacting the consumer reporting statute at issue there, the FCRA, would not be served by permitting individuals to sue where the violation of the statute resulted in no harm. *Spokeo*, 136 S. Ct. at 1550. The Supreme Court cited two examples relevant here: first, that even if a consumer reporting agency failed to provide the required notice under the FCRA, "that

IV.   Plaintiff's Claims of Bare Violations of Section 2605(b) and (c) Must Fail

Plaintiff alleges that he was injured because SPS "failed to provide accurate or timely information to Plaintiff . . . concerning his account," *i.e.*, what fees and charges were being imposed (Dkt. 58 ¶ 199), and that "[a] homeowner has a right to know who the new servicer is and timing of the service, so that he or she could get information about [his or] her loan or charges" (Dkt. 425 at 3).[6]   At oral argument, Plaintiff made clear that his claims are based solely on bare procedural statutory violations of Sections 2605(b) and (c) by SPS and that he is not alleging any actual damages resulting from these violations.   (6/27/16 Oral Argument Tr. at 14:14–16 ("THE COURT:  Are you alleging that simply because the statute was violated [Dolan] gets to collect? MR. DAHIYA:  Yes . . . ."); *id.* at 16:8–18 (Dolan's counsel represented that Dolan's claim was that "Mr. Dolan gets to recover solely based on the violation of the RESPA statute that [he is]

---

information regardless may be entirely accurate," and second, that even if the disseminated information was inaccurate, "not all inaccuracies cause harm or present any material risk of harm," *i.e.*, "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm."  *Id.*  Plaintiff's claims under Section 2605(b) and (c) implicate precisely these examples, such that violations of these provisions, divorced from any concrete harm, are insufficient to support standing under *Spokeo*.

[6] There are very few allegations articulating Plaintiff's harm from SPS's purported violation of RESPA, and even these allegations relate, not to the violations of Section 2605(b) and (c), but to SPS's alleged violations of Section 2605(e).  (*See, e.g.,* Dkt. 58 ¶ 199 (SPS "routinely failed to respond to Plaintiff['s] written disputes or requests for information made pursuant to RESPA . . . and otherwise failed to provide accurate or timely information to Plaintiff . . . concerning his account").)  Section 2605(e) governs a loan servicer's duty to respond to Qualified Written Requests ("QWRs") from borrowers.  At oral argument on June 27, 2016, the Court denied Defendant's motion for summary judgment with respect to Plaintiff's claims under Section 2605(e) (*see* 6/27/16 Minute Entry for 6/27/16 Oral Argument), and now clarifies that its holding as to those claims rejects any argument by Defendant that, under *Spokeo*, Plaintiff lacks standing because he fails to allege any injury in fact.  The gravamen of Plaintiff's entire case is that SPS's failure to provide him with accurate information regarding, *inter alia*, his mortgage and the amounts due thereon, including by failing to respond to his QWRs, directly resulted in his defaults under the mortgage and the Forbearance Agreements.  Plaintiff's claims under Section 2605(e) therefore remain in the case, and Plaintiff shall be permitted to pursue them at trial.

alleging" and "[he] do[es]n't have to [] show any injury beyond that"); *id*. at 21:25–22:8 (according to Plaintiff's counsel, Plaintiff "ha[s] been saying" "that any statutory violation should prompt discovery and in a way absolve the plaintiff of having to show injury . . . that the bare procedural violation or the deficiency in a letter [under Section 2605] did not"). *See also* Dkt. 425 at 3 (because Dolan's claims under RESPA seek to redress an interest that was "Congressionally granted," the violation of those rights "*in itself* amounts to a concrete injury") (emphasis added).) These claims all fail for lack of standing.[7]

---

[7] Plaintiff broadly argues that *Spokeo*'s approval of *Public Citizen* and *Akins* supports his theory that the mere violation of a statute that requires disclosure of any type of public or consumer information is sufficient to confer standing on a plaintiff who was denied access to that information. (*See* Dkt. 425 at 2–3 (*Public Citizen* and *Akins* stand for the proposition that "an informational injury—the personal denial of access to information required by statute—is a concrete injury under Article III.").) However, this argument plainly ignores the Supreme Court's reiteration in *Spokeo*, in the context of an alleged violation of a statute involving an "informational" consumer-related injury, that a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 136 S. Ct. at 1549 (quoting *Summers*, 555 U.S. at 496)). The argument also fails to recognize the materially different language of Sections 2605 and 2607.

The Court is aware of the Eleventh Circuit's recent decision in *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 (11th Cir. July 6, 2016), in which the Eleventh Circuit concluded that a plaintiff had standing to assert claims under the Fair Debt Collection Practices Act ("FDCPA") simply by alleging that she had not received all information to which she was entitled under the statute, even in the absence of any allegations of "tangible economic or physical harm." *Id*. at *10–11. The Eleventh Circuit reasoned that "the Supreme Court has made clear [that] an injury need not be tangible to be concrete," and that the injury of not receiving a disclosure to which someone is entitled was "one that Congress has elevated to the status of a legally cognizable injury through the FDCPA." *Id*. at 11 & n.2 (holding that this was not a "procedural violation," but the violation of a "substantive right to receive certain disclosures"). The Court is not bound by this decision, and respectfully disagrees with it, based on this Court's conclusion that the cases cited in *Spokeo* as examples of intangible harm sufficient to confer standing, *i.e.*, *Akins* and *Public Citizen*, involved interests of much greater and broader significance to the public than those at issue in *Church* and, more relevantly, under Section 2605 of RESPA. In short, the Court rejects the view that *Spokeo* established the proposition that *every* statutory violation of an "informational" right "automatically" gives rise to standing. *See Spokeo*, 136 S. Ct. at 1549 (holding that plaintiff alleging FCRA violation "could not . . . allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III").

First, the allegations that SPS failed to provide Plaintiff information about his account or the fees that he was being charged have nothing to do with the required disclosures in the Hello and Goodbye Letters or SPS's alleged failure to provide those letters. *See Lujan*, 504 U.S. at 560–61 (standing requires a "causal connection" between the alleged injury and the defendant's conduct). Rather, those allegations speak to an injury, if at all, from the failure to provide information under Section 2605(e), in response to Plaintiff's QWRs—meaning in response to specific questions from Plaintiff regarding his account—rather than the largely procedural information required by Section 2605(b) and (c). (*See, e.g.,* 6/27/16 Oral Argument Tr. at 59:21–60:1 ("[W]hen you switch servicers as [Dolan] did then, [Dolan] was looking to get what the loan was from SPS," "was looking to get accurate information," *i.e.*, "[w]hat [his] payments were being applied to[,] the amount of money[,] and so on").)

Second, as previously discussed, the Court reads *Spokeo* as affirming the principle that a claim of a bare procedural statutory violation will be insufficient to confer standing, except in situations where Congress clearly intended to create a right to bring suit regardless of the existence or non-existence of actual harm, such as the Supreme Court found with respect to the statutes at issue in *Public Citizen* and *Akins*. While the Court finds that Congress intended to create such a right in Section 2607, it concludes that Congress did not in Section 2605. Plaintiff, therefore, lacks standing for his Section 2605(b) and (c) claims relating to SPS's alleged failure to provide him with RESPA-compliant Hello and Goodbye Letters. Accordingly, the Court grants Defendant's motion and dismisses Plaintiff's claims under Section 2605(b) and (c) of RESPA for lack of standing.[8]

---

[8] SPS has also moved for summary judgment with respect to Plaintiff's negligence claim, since that claim "rise[s] and fall[s]" with Plaintiff's RESPA claims. (*See* Dkt. 423 at 1 & n.2.) These claims do, indeed, rise and fall together. (*See* Dkt. 355 at 38–39 (denying summary

## V.    Defendant's Supplemental Argument Regarding Plaintiff's Force-Placed Insurance Theory

The Court denies Defendant's Hail Mary supplemental motion for summary judgment on the basis of *Spokeo* as to Plaintiff's force-placed insurance theory of breach of fiduciary duty.  (*See* Dkt. 432.)  On June 22, 2016, the Court denied Defendant's summary judgment motion as to that claim.  (Dkt. 430.)  In a transparent attempt to circumvent that decision, Defendant now seeks to "*supplement* its motion to include Plaintiff's new [force-placed insurance] claim" in light of *Spokeo*, arguing that "[t]o the extent the [force-placed] insurance premium was allegedly 'excessive,' any arrearage resulting from corporate advances was wiped out when Plaintiff prevailed in the state court action," and thus Plaintiff lacks standing to bring this claim.  (Dkt. 432 (emphasis added).)  This is nothing more than a rehashing of the same argument that Defendant previously made and the Court previously rejected.  Furthermore, this argument has nothing to do with standing principles implicated by or clarified in *Spokeo*; indeed, there is no federal statute that Plaintiff alleges was violated so as to give rise to his State law breach of fiduciary duty claim, the claim under which Plaintiff has articulated his force-placed insurance theory.   Rather, Defendant's supplemental motion is merely an attempt to disguise what is essentially a motion to reconsider the Court's previous summary judgment order, which the Court rejects.[9]

---

judgment as to Plaintiff's negligence claim because "genuine issues of material fact exist as to whether [SPS] breached the duties it owed to plaintiff under Section 2605 of RESPA"); *see also* 12/1/15 Pre-Trial Conference Tr. at 48:9–15 (RESPA and negligence claims "rise and fall together," meaning "[a] violation of RESPA would prove negligence").)   However, because Plaintiff's RESPA claim under Section 2605(e) survives this summary judgment motion, the Court denies SPS's motion for summary judgment as to Plaintiff's negligence claim.

[9] The same is true for any attempt on Defendant's part to also now move for summary judgment on Plaintiff's breach of contract action on the basis of *Spokeo*.  (*See* Dkt. 432 (arguing that "same analysis" that was applied to Plaintiff's force-placed insurance theory "holds true for Plaintiff's breach of contract cause of action").)  This motion is a wholly inappropriate attempt to relitigate Judge Hurley's earlier summary judgment opinion.  (*See* Dkt. 355 at 36–37.)  To the

*CONCLUSION*

For the reasons stated above, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Defendant's motion is GRANTED as to Plaintiff's claims under Section 2605(b) and (c) of RESPA; Plaintiff shall be precluded from pursuing those claims at trial.  However, Defendant's motion is DENIED, yet again, as to Plaintiff's force-placed insurance theory of breach of fiduciary duty.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: August 2, 2016
       Brooklyn, New York

---

extent Defendant has moved for summary judgment on Plaintiff's breach of contract claim, that motion is likewise denied.