UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
MICHAEL T. DOLAN,

                      Plaintiff,

          - against -

SELECT PORTFOLIO SERVICING, Inc.,

                     Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**

03-CV-03285 (PKC) (AKT)

PAMELA K. CHEN, United States District Judge:

Before the Court is *pro se*[1] Plaintiff Michael T. Dolan's motion for judgment as a matter of law pursuant to Federal Rule Civil Procedure ("Rule") 50(b), relief from judgment pursuant to Rule 60(b), or a new trial pursuant to Rule 59(a). For the reasons stated herein, Plaintiff's Motion is denied in its entirety.

## **BACKGROUND**[2]

On July 7, 2003, Plaintiff commenced this action. (Dkt. No. 1.) After extensive motion practice, including three orders on the parties' summary judgment motions (Dkt. Nos. 355, 389, 430), the lone remaining defendant was Select Portfolio Servicing, Inc. ("SPS"), against whom Plaintiff proceeded to trial on claims pursuant to Section 2605(e) of the Real Estate Settlement Procedures Act ("RESPA"), and state law claims under breach of contract, negligence, and breach of fiduciary duty theories. (Order, Dkt. No. 453.) The matter was tried over the course of 5 non-

---

[1] Although Plaintiff now appears *pro se*, he was represented by counsel, Karamvir Dahiya of the Dahiya Law Group LLC, during the summary judgment phase and at trial in this matter. (*See* Docket and Trial Transcript.)

[2] The Court assumes the parties' familiarity with the underlying facts in this matter. As such, this section summarizes only the relevant procedural history. Substantive evidence elicited during the trial relevant to specific issues is summarized in the discussion section.

consecutive days. (*See* Minute Entries dated October 5, 2016, October 6, 2016, October 7, 2016, October 11, 2016, and October 13, 2016.)

Plaintiff and his wife, Donna Dolan, testified during Plaintiff's case in chief. SPS presented two witnesses in its case: Diane Weinberger as SPS's corporate representative and James F. Lynn as its expert witness. (*See* Trial Transcript ("Tr.")). The jury returned a verdict for SPS, finding the following: that Plaintiff failed to prove by a preponderance of the evidence that SPS violated Section 2605(e) of RESPA; that Plaintiff failed to prove by a preponderance of the evidence that SPS was negligent with respect to its duties under Section 2605(e) of RESPA; that Plaintiff failed to prove by a preponderance of the evidence that SPS breached a contract between the parties by charging improper interest rates, failed to make timely tax payments from escrow funds, and charging unauthorized fees for property inspection; and, that Plaintiff failed to prove by a preponderance of the evidence that SPS violated a fiduciary duty owed to Plaintiff by charging improper interest rates and failing to make timely tax payments from escrow funds. (Verdict Sheet, Dkt. No. 473.) Judgment was entered on October 13, 2016. (Dkt. No. 475.) Plaintiff's motion was fully briefed on February 6, 2017. (*See* Dkt. Nos. 487, 489, 490.)

## DISCUSSION

### I. Rule 50(b) Motion for Judgment as a Matter of Law

"A post-trial Rule 50(b) motion for judgment as a matter of law is properly made only if a Rule 50(a) motion for judgment as a matter of law has been made before submission of the case to the jury." *Bracey v. Bd. of Educ. of City of Bridgeport*, 368 F.3d 108, 117 (2d Cir. 2004) (citing Fed. R. Civ. P. 50(a)–(b)) (citations omitted); *see also Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1155 (2d Cir. 1994) ("The rule is well established that a motion for [judgment as a matter of law] at the close of all the evidence is a prerequisite for [judgment as a matter of law]."). Although the requirement that the initial motion for judgment as a matter of law

2

be made before the case is submitted to the jury is a procedural one, "it may not be waived by the parties or excused by the district court." *Bracey*, 368 F.3d at 117 (citing *Cruz*, 34 F.3d at 1155).

Here, Plaintiff did not move for judgment as a matter of law after the close of evidence. (*See* Tr. 277, 390–416.) The first time he did so was on December 21, 2016—69 days after judgment was entered. (Dkt. No. 487.) Thus, because Plaintiff failed to move under Rule 50(a) for judgment as matter of law before the case was submitted to the jury, his post-trial motion seeking relief under Rule 50(b) must be denied. *See Bracey*, 368 F.3d at 117 (finding the party's Rule 50(b) motion procedurally barred where the party never moved under Rule 50(a) and first moved for judgment as a matter of law seventeen days after judgment was entered); *Aktas v. JMC Dev. Co. Inc.*, 563 F. App'x 79, 80 (2d Cir. 2014) (affirming district court's denial of party's Rule 50(b) motion where party did not make a proper Rule 50(a)(2) motion before the case was submitted to the jury). Accordingly, Plaintiff's Rule 50(b) motion for judgment as a matter of law is denied.

## II. Rule 59(a) Motion for a New Trial

Plaintiff seeks a new trial under Rule 59(a) on the basis that the jury's verdict was against the weight of the evidence. "[A] decision is against the weight of the evidence, for purposes of a Rule 59 motion, if and only if the verdict is seriously erroneous or a miscarriage of justice." *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir. 2002). When deciding a Rule 59(a) motion, a district court "may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012). Jury verdicts, however, "should be disturbed with great infrequency." (*Id.*) In particular, when "'a verdict is predicated almost entirely on the jury's assessments of credibility, such a verdict generally should not be disturbed except in an egregious case, to correct a

3

seriously erroneous result, or to prevent a miscarriage of justice.'" *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 99 (2d Cir. 2014) (quoting *Raedle*, 670 F.3d at 418–19).

As discussed below, the Court finds that the verdict was not seriously erroneous or a miscarriage of justice, and that Plaintiff is not entitled to a new trial.[3]

A. **RESPA Claims**

Plaintiff argues that jury's verdict was against the weight of the evidence because it was evident that SPS violated RESPA in various ways. (Plaintiff's Memorandum of Law ("Pl. Br."), Dkt. No. 487 at 3–5.) Although Plaintiff's motion cites numerous instances of purported misconduct by SPS, the Court addresses only the theory that SPS violated Section 2605(e) of RESPA by failing to respond or take corrective action with respect to certain written inquiries, known as qualified written requests ("QWR"). This was the sole theory of Section 2605(e) liability presented to the jury.[4] (*See* Order, Dkt. No. 453.) To find SPS liable for violating Section 2605(e), the jury needed to find that Plaintiff sent one or more QWRs to SPS. (Jury Instruction, Dkt. No. 472 at 10); 12 U.S.C. § 2605(e)(1)(B) (eff. Sept 30, 1996 to July 20, 2011). To qualify as a QWR, the request had

---

[3] In his motion, Plaintiff again challenges the Court's ruling on issue preclusion relating to his state court action. (Pl. Br. at 12.) The Court stands by its ruling made on this issue at various points throughout this litigation, which was summarized at the final pre-trial conference held on September 28, 2016: "Plaintiff is judicially estopped from arguing issue preclusion, since he argued in opposition to summary judgment in January 2014 that the State Court Foreclosure Proceeding on which he now bases his motion was 'a different proceeding dealing with [a] different party . . . and dealing with [a] different issue,' the 'State Court action did not involve the present defendant,' and 'did not require any determination of [SPS's] liability to the Plaintiff[] for the alleged wrongdoing under . . . RESPA . . . and his state law claims for breach of contract, negligence, and breach of fiduciary duty.' [(Plaintiff's Opposition to SPS Motion for Summary Judgment, Dkt. No. 383, at 5–8.)] The Court also reiterated that Plaintiff's issue preclusion motion was and remains untimely." (Minute Entry dated September 28, 2016.)

[4] As previously mentioned, after multiple rounds of summary judgment motions and motions *in limine*, the Court dismissed all but one of Plaintiff's theories of Section 2605(e) liability. (*See* Dkt. Nos. 355, 389, 430, 441, 442, 444, 445 and 447.)

4

to: (1) be in writing; (2) include, or otherwise enable SPS to identify, Plaintiff's name and account; and (3) provide either a statement of the reason that Plaintiff believed his account was in error or sufficient detail to SPS regarding other information Plaintiff sought. (*Id.*)

Second, the jury needed to find that SPS failed, within sixty weekdays of receiving a QWR, to either: (1) make appropriate corrections to Plaintiff's account (including crediting of any late charge or penalties) and send Plaintiff written notification of that correction (including the contact information of a representative who could provide assistance to Plaintiff); or (2) after conducting an investigation provide Plaintiff with the contact information for a representative who could provide him assistance, and also provide either (a) a written explanation or clarification, including a statement of reasons, of why SPS believed Plaintiff's account was correct, or (b) the information Plaintiff requested or an explanation of why that information was unavailable or could not be obtained. (Jury Instruction, Dkt. No. 472 at 10–11); 12 U.S.C. § 2605(e)(2) (eff. Sept. 30, 1996 to July 20, 2011).

Plaintiff introduced two writings at trial that he claimed were QWRs to which SPS had failed to properly respond, in violation of Section 2605(e). The first was a fax, dated December 18, 2000, from Plaintiff to "Pam c/o Fairbanks Capital."[5] (Plaintiff's Trial Exhibit ("Pl. Ex.") 13.) In the fax, which attached papers showing that SPS was now servicing Plaintiff's mortgage, Plaintiff requested that Pam call him "as soon as you have set up account." (*Id.*) Significantly,

---

[5] SPS was originally known as Fairbanks Capital Corporation. The Court has amended the case caption to reflect Defendant's change of name, consistent with the Court's direction in its September 18, 2014 Memorandum & Order. (Dkt. No. 389 at 1 n.1.)

As discussed *infra*, Plaintiff sent his December 18, 2000 fax after speaking to "Pam" at SPS on the phone about Plaintiff's mortgage payment being returned to him, and that as a result of the phone call, the status of Plaintiff's mortgage account was changed from foreclosure to forbearance and his returned payment was later accepted and credited. (Tr. 47–50, 253, 287–88, 304–05, 315–16.)

5

Plaintiff admitted, on cross-examination, that his fax did not include words suggesting or indicating any error with his account, such as "wrong," "incorrect," or "false." (Tr. 260–61.)

Based on this record, it was not against the weight of the evidence for the jury to conclude that Plaintiff's December 18, 2000 fax did not qualify as a QWR, because it neither provided a statement of the reason that Plaintiff believed his account was in error, nor sufficient detail to SPS regarding other information Plaintiff sought, and that, therefore, Plaintiff's December 18, 2000 fax could not support a violation of Section 2605(e).

The second writing that Plaintiff introduced at trial was a fax, dated February 16, 2001, from Plaintiff to Fairbanks Capital. (Pl. Ex. 14.) Written on the cover sheet of the fax were the words, "Urgent Real Estate Taxes Due," and attached to it was a past-due property tax notice from the Town of Smithtown. (*Id.*) Plaintiff also introduced a letter from SPS to him, dated April 10, 2001, responding to Plaintiff's February 16, 2001 fax. (Pl. Ex. 16; Tr. 201.) SPS's letter stated, in relevant part, that SPS could not adequately address Plaintiff's inquiry without receipt of additional information and documentation from him. (*See* Pl. Ex. 16; Tr. 203, 258.) On cross-examination, Plaintiff admitted that he did not provide SPS the additional information or documentation requested in SPS's April 10, 2001 letter. (Tr. 257–58.)

Based on this record, it was not against the weight of the evidence for the jury to conclude that SPS adequately responded to Plaintiff's February 16, 2001 fax (even if found to be a QWR) on April 10, 2001, which was 53 days after receiving Plaintiff's fax.[6] (*See* Pl. Ex. 16; Tr. 203.)

---

[6] The jury was not instructed on RESPA Section 2605(e)(1)(A), which provides, in relevant part, that "[i]f any servicer of a federally related mortgage loan receives a [QWR] from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days." *Id.* (eff. Sept. 30, 1996 to July 20, 2011). To the extent Plaintiff now argues that SPS violated Section 2605(e)(1)(A), that argument is waived because Plaintiff did not object to the instructions given to the jury regarding Plaintiff's RESPA claim during trial. *See Morse v. Fusto*,

6

Accordingly, the Court finds that the jury's verdict denying Plaintiff relief on his RESPA claims was neither seriously erroneous result nor a miscarriage of justice.

B.  **Negligence Claim**

To prevail on his claim that SPS negligently serviced his residential mortgage, Plaintiff needed to prove that SPS owed Plaintiff a duty, SPS breached that duty, and Plaintiff suffered an injury proximately caused by SPS's breach. The jury was instructed that prior to the trial, the Court had found that SPS owed a duty to Plaintiff to properly service his residential mortgage by complying with RESPA Section 2605(e). (Jury Instructions, Dkt. No. 472 at 11.) The jury was further instructed that it had to find that SPS had violated RESPA Section 2605(e) in order to find that SPS had breached its duty to Plaintiff. (*Id.*) As discussed *supra*, the jury found that SPS did not violate Section 2605(e) either with respect to Plaintiff's December 18, 2000 or February 16, 2001 faxes. Therefore, the jury's finding that Plaintiff did not prove his negligence claim was not against the weight of the evidence.

Moreover, Plaintiff did not adduce sufficient evidence to prove that SPS's alleged violation of Section 2605(e), based on the December 18, 2000 or February 16, 2001 faxes, caused him to suffer an injury. Regarding the December 18, 2000 fax, Plaintiff testified that on or about December 18, 2000, he called SPS after his initial mortgage payment to SPS was returned. (Tr. 253.) After the phone call, in which Plaintiff spoke to "Pam," Plaintiff sent the December 18, 2000 fax, which attached papers showing that SPS was now servicing Plaintiff's mortgage. (Tr.

---

804 F.3d 538, 552 (2d Cir. 2015), *cert. denied*, 137 S. Ct. 126 (2016) ("The Federal Rules require that an objection . . . 'that is traced to an alleged error in the jury instruction or verdict sheet,' . . . must be made . . . 'before the jury retires to deliberate.' . . . The 'failure to object to a jury instruction or the form of an interrogatory prior to the jury retiring results in a waiver of that objection.'") (quoting *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 56–57 (2d Cir. 2002)).

7

47–50; Pl. Ex. 13.) SPS's corporate witness, Ms. Weinberger testified at trial that in response to Plaintiff's phone call, Plaintiff's account was changed from foreclosure to forbearance status. (Tr. 315–16.) Plaintiff's returned mortgage payment was later accepted and credited, and no late fees were charged. (Tr. 287–89, 304–05.) Thus, even assuming that the December 18, 2000 fax qualified as a QWR, Plaintiff failed to demonstrate that he suffered any injury as a result of SPS's purported failure to properly respond to that communication.

Regarding Plaintiff's February 16, 2001 fax, Plaintiff now argues in his motion that, as a result of SPS's failure to properly respond to that purported QWR, the Town of Smithtown imposed a penalty on Plaintiff for late property tax payments. (Pl. Br. at 5.) However, Plaintiff offered no evidence at trial regarding the imposition of any such late-payment penalty. Thus, even assuming that the February 16, 2001 fax qualified as a QWR, Plaintiff failed to demonstrate that he suffered any injury as a result of SPS's purported failure to properly respond to that communication.

Accordingly, the Court finds that the jury's verdict denying Plaintiff relief on his negligence claim was neither a seriously erroneous result nor a miscarriage of justice.[7]

### C. Breach of Contract

Plaintiff's breach of contract claim was premised on SPS misapplying his mortgage payments, charging improper late fees, improper interest rates, and unauthorized property inspections fees, and failing to timely pay his property taxes in contravention of the Forbearance Agreements. The Court addresses each of these theories in turn, and finds that the Court's and the jury's findings on Plaintiff's breach of contract claim was not against the weight of the evidence.

---

[7] To the extent Plaintiff argues that SPS was negligent by not boarding his loan properly, the Court found that Plaintiff had not provided any competent evidence supporting his claim. (Tr. 565–69, 573–76.) Thus, that issue was not submitted to the jury.

8

1. Misapplication of Payments

The Court, after hearing testimony from both parties' witnesses, concluded that Plaintiff had not adduced sufficient competent evidence for a reasonable juror to find that SPS had breached the Forbearance Agreements by misapplying Plaintiff's mortgage payments. (Tr. 574–76.) Thus, the Court granted SPS a directed verdict on Plaintiff's misapplication of payments breach of contract claim. (*Id.*) After reviewing the record, the Court finds that granting a directed verdict for SPS on this claim was not against the weight of the evidence. Plaintiff and Ms. Weinberger testified that the Forbearance Agreement dated August 11, 2000, gave SPS the discretion to allocate Plaintiff's mortgage payments as it saw fit. (Tr. 245, 297; Defendant's Trial Exhibit ("Def. Ex.") E.) Ms. Weinberger also gave testimony, in which she interpreted a document referred to as the "Key Loan Transaction Statement"[8] ("KLT"), by explaining, "bucket by bucket" and line by line, how some of Plaintiff's mortgage payments were applied. (*See* Tr. 286–301; Def. Ex. J.) The evidence adduced by SPS—namely, the August 11, 2000 Forbearance Agreement, the KLT, and Ms. Weinberger's testimony—amply demonstrated that Plaintiff's mortgage payments had not been misapplied. Therefore, the Court finds that its grant of a directed verdict for SPS on this claim was not against the weight of the evidence.

2. Charging Improper Late Fees

The Court also granted SPS a directed verdict on Plaintiff's theory that SPS improperly charged him late fees. (Tr. 574–76.) Plaintiff argues that the Court's ruling was in error because he purports that if his mortgage payment is timely, he should not be charged late fees, and when a mortgage is in foreclosure, with an accelerated loan, there are no late fees. (Pl. Br. at 7.) In other

---

[8] The Key Loan Transaction Statement was created by SPS to summarize in a "succinct way . . . a running balance [of] payments and financial disbursements and monies received" from Plaintiff. (Tr. 282.)

words, Plaintiff argues that because his mortgage was in foreclosure at some point, it was improper for SPS to assess late fees against him after that point. As Plaintiff's own argument makes clear, establishing the date of the foreclosure proceedings was critical to determining the propriety of the late fees that Plaintiff was assessed. Yet, Plaintiff never adduced any evidence regarding the date of the foreclosure proceedings at trial. Nor did he provide expert testimony or any other testimony to establish how late fees were to be calculated. Plaintiff simply adduced no competent evidence supporting his claim that the late fees were improper. Moreover, Ms. Weinberger testified that the late fees were charged after Plaintiff stopped making mortgage payments as required under the August 11, 2000 Forbearance Agreement. (Tr. 319.)

Accordingly, after a review of the record, the Court finds that its grant of a directed verdict for SPS on Plaintiff's improper late fees claim was not against the weight of the evidence.

### 3. Charging Improper Interest Rates

At trial, Plaintiff offered only his own testimony in support of his claim that SPS had charged improper interest rates on Plaintiff's mortgage. (Tr. 33–35, 65–74.) In SPS's case, Ms. Weinberger and SPS's mortgage services and banking expert, Mr. Lynn, explained how SPS had calculated the applicable interest rate, which was based on the terms of Plaintiff's note. (Tr. 305–08, 419, 422–37.) Further, on cross-examination, Plaintiff conceded that the interest rate SPS had charged him was based on the applicable rate when the payment was due, not when the payment was made. (Tr. 250.) The jury was entitled to evaluate the credibility, experience, and expertise of SPS's witnesses and to credit their testimony in finding that Plaintiff had not proven that SPS charged improper interest rates. *See ING Glob.*, 757 F.3d at 99 (where evidence offered at trial largely consists of witness testimony, "the finding and the verdict which followed are particularly ill-suited to after-the-fact second guessing").

Accordingly, the Court finds that the jury's verdict denying Plaintiff relief on his improper interest claim was not seriously erroneous or a miscarriage of justice. *See id.* (affirming denial of motion for a new trial where the jury's finding largely turned on the credibility of the testifying witnesses).

    4.    <u>Failing to Timely Make Tax Payments Claim</u>

As discussed earlier, Plaintiff failed to proffer any evidence regarding injury he suffered as a result of his property taxes not being paid on time, thereby failing to prove the injury prong of his breach of contract claim. Moreover, the KLT statement showed that Plaintiff did not have sufficient funds in his escrow account[9] to pay his property taxes prior to February 2001, when he received notice that his taxes were past due. (*See* Pl. Ex. 14.) Thus, the jury's verdict that Plaintiff had not proven that SPS breached their contract by failing to timely pay Plaintiff's property taxes was not against the weight of the evidence.

    5.    <u>Charging Unauthorized Property Inspections Fees</u>

At trial, Plaintiff offered the mortgage agreement and his testimony as evidence that SPS charged him for property inspections for which he did not receive notice, in breach of the mortgage agreement and note. (Tr. 37; Pl. Ex. 1.) Ms. Weinberger testified that Plaintiff was charged for exterior inspections of the property, which were allowed under the mortgage for loans that were delinquent. (Tr. 311–12, 318.) Given the evidence before it, *e.g.*, the mortgage agreement and Ms. Weinberger's testimony, the jury was entitled to credit Ms. Weinberger's explanation regarding the inspections that SPS conducted and the resulting fees. *See ING Glob.*, 757 F.3d at

---

[9] Ms. Weinberger testified that the SPS escrow account for Plaintiff's mortgage held funds to cover certain expenses related to servicing the mortgage, including property taxes. As discussed *supra*, by the terms of the August 11, 2000 Forbearance Agreement, SPS had the discretion to allocate Plaintiff's mortgage payments as it saw fit. (Tr. 245, 292–94, 297.) Thus, SPS was not required to prioritize Plaintiff's property taxes over other expenses that Plaintiff owed.

99. Accordingly, the Court finds that the jury's verdict denying relief on Plaintiff's inspection fees claim was not seriously erroneous or a miscarriage of justice, and therefore was not against the weight of the evidence.

### D. Breach of Fiduciary Duty Claim

To prevail on his claim for breach of fiduciary duty, Plaintiff needed to prove that there was a fiduciary relationship between Plaintiff and SPS, that SPS breached its fiduciary duty to Plaintiff, and that SPS's breach proximately caused Plaintiff to suffer an injury. (Jury Instructions, Dkt. No. 472 at 13.) Before trial, the Court found that SPS owed Plaintiff a fiduciary duty to properly manage funds paid by Plaintiff and held in escrow by SPS. (*Id.*) Thus, the jury only needed to determine the breach and injury elements of this claim. (*Id.*) Plaintiff's breach of fiduciary duty claim was premised on three theories: (1) SPS had charged improper interest rates; (2) SPS had failed to make timely tax payments from Plaintiff's escrow funds; and (3) SPS required Plaintiff to pay for mortgage insurance that was unnecessary or excessive, *i.e.*, "force-place insurance." (Order, Dkt. No. 453; Verdict Sheet, Dkt. No. 473; Tr. 576-578.) At trial, the Court granted a directed verdict for SPS on Plaintiff's force-place insurance claim. (Tr. 544–47.)

With respect to Plaintiff's improper interest rate theory, as discussed earlier, Plaintiff failed to establish at trial that SPS had charged him improper interest rates. Thus, it was not against the weight of the evidence for the jury to find that SPS did not breach its fiduciary duty to Plaintiff in this manner.

With respect to Plaintiff's untimely property tax payment theory, as previously discussed, the KLT statement showed that there were no funds in Plaintiff's escrow account in February 2001 that could have been used to pay Plaintiff's property taxes, which were past due at that point. (Pl. Ex. 14; Def. Ex. J.) Moreover, Plaintiff adduced no evidence at trial regarding any injury he suffered because of the untimely payment of his property taxes. Therefore, it was not against the

12

weight of the evidence for the jury to find that SPS did not breach its fiduciary duty to Plaintiff based on the untimely payment of Plaintiff's property taxes.

With respect to Plaintiff's force-place insurance claim, Plaintiff offered almost no evidence at trial to support his theory that the insurance that SPS procured while servicing Plaintiff's mortgage was either unnecessary or excessive. Further, Plaintiff admitted during his testimony that he did not have insurance when SPS began servicing his mortgage. (Tr. 264–65.) He also admitted that SPS provided him an opportunity to submit proof of insurance, but that he failed to do so, and that under the terms of the Third Forbearance Agreement dated September 23, 2002, SPS was allowed to obtain insurance on the property. (Tr. 264–65; Def. Ex. F.) Plaintiff also did not provide any competent testimony, expert or otherwise, that the amount charged by SPS for the insurance they procured was excessive. Moreover, Ms. Weinberger testified that the insurance rates were set by the State Tax Commission, not by SPS. (Tr. 316–17.) Mr. Lynn testified that lender-placed insurance policies could be activated or canceled retroactively; thus, Plaintiff was not "double-charged" for insurance during the months when SPS first began servicing his loan. (Tr. 439–42.)

Accordingly, based on the record, the Court finds that its directed verdict for SPS on Plaintiff's force-place insurance claim was not against the weight of the evidence.

## III.  Rule 60(b) Relief from Judgment

"Rule 60(b) provides for relief from judgment on any of several grounds specified in five numbered subparts, *see* Fed. R. Civ. P. 60(b)(1)–(5), and under a sixth, catch-all provision allowing for relief for 'any other reason,' Fed. R. Civ. P. 60(b)(6)." *Empresa Cubana Del Tabaco v. Gen. Cigar Co. Inc.*, 385 F. App'x 29, 31 (2d Cir. 2010). Rule 60(b)(6) "is a 'grand reservoir of equitable power to do justice in a particular case.'" *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (quoting *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986)). "Relief [under Rule 60(b)(6)] is warranted where there are extraordinary circumstances, or where the judgment may work an extreme and undue

hardship, and should be liberally construed when substantial justice will thus be served." *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) (quoting *Matarese*, 801 F.2d at 106) (quotation marks omitted). The Second Circuit has cautioned, however, "that a Rule 60 motion 'may not be used as a substitute for appeal' and that a claim based on legal error alone is 'inadequate.'" *Id.* at 176 (quoting *Matarese*, 801 F.2d at 107). "'A motion for relief from judgment is generally not favored.'" *Rossi v. Stevens*, 651 F. App'x 55, 56–57 (2d Cir. 2016) (quoting *Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004)). The burden of proof is on the party seeking relief from the judgment when deciding a Rule 60(b)(6) motion. *Id.*

Here, Plaintiff complains that the jury's verdict and the Court's various rulings were incorrect. Plaintiff's motion raises not only the issues presented to the jury and the Court's rulings during the trial, but also the Court's decisions made during the summary judgment and motions *in limine* stages, and rulings made in connection with Plaintiff's multiple motions for sanctions. In sum, Plaintiff simply reiterates *all* of the issues that he raised during the course of the entire litigation and challenges *all* of the Court's rulings on these issues.

The Second Circuit routinely finds that Rule 60(b)(6) motions that simply seek to relitigate all issues presented in an action or argue that the district court's decisions were wrong are not sufficiently "extraordinary" to warrant relief under Rule 60(b)(6). *See Tapper v. Hearn*, 833 F.3d 166, 172 (2d Cir. 2016) (affirming denial of Rule 60(b)(6) motion after finding that party had not established "extraordinary circumstances," where the motion was primarily based on "the same injuries they have alleged in their complaint"); *Brown v. Ionescu*, 380 F. App'x 71, 72 (2d Cir. 2010) (denying Rule 60(b)(6) motion where "the essence of [the party's] argument is simply that the jury reached the wrong result") (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate

an issue already decided.") and *Matarese*, 801 F.2d at 106–07 (holding that, while relief is appropriate in "extraordinary circumstances" or "where the judgment may work an extreme and undue hardship," Rule 60(b)(6) "may not be used as a substitute for appeal")); *United Airlines*, 588 F.3d at 177 (holding that district court abused its discretion where it granted a Rule 60(b)(6) motion that "essentially boil[ed] down to a claim that the decision was wrong," because such grounds were not sufficiently extraordinary to justify Rule 60(b)(6) relief).

Accordingly, because Plaintiff has not established "extraordinary circumstances" justifying relief or that the judgment may work "extreme and undue hardship" to Plaintiff, he has failed to establish that relief is warranted pursuant to Rule 60(b)(6), and therefore, his Rule 60(b) motion is denied.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's motion for judgment as a matter of law pursuant to Rule 50(b), relief from judgment pursuant to Rule 60(b), or a new trial pursuant to Rule 59(a) is denied in its entirety.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 29, 2017
      Brooklyn, New York